IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TP-LINK SYSTEMS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| NETGEAR, INC., | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant. | ) | |

## <u>COMPLAINT</u>

Plaintiff TP-Link Systems Inc. ("TP-Link") brings this action to address an unlawful smear campaign conducted by Defendant Netgear, Inc. ("Netgear") to falsely cast TP-Link and its products as infiltrated by the Chinese government. The accusation is baseless. TP-Link is a U.S.-based company incorporated and headquartered in California that has no ties with the Chinese government. Moreover, it invests significantly in the security of its products to combat infiltration by any unauthorized actors be they from the United States, China, or any other country. Netgear's campaign of falsehoods is designed to disparage TP-Link and generate unfounded fears regarding security of TP-Link products, including to give Netgear an unfair advantage in the marketplace that it otherwise could not enjoy through fair, head-to-head competition with TP-Link based on product quality and security. Netgear's false assertions violate federal and state laws as well as breach a contractual agreement between the parties. TP-Link welcomes fair competition. But it will not countenance Netgear's conduct. TP-Link brings this action to stop Netgear's unlawful disparagement and hold Netgear accountable for its misconduct. Given TP-Link's track record of consistently making and selling reliable, secure, and high-performing networking products that have enjoyed tremendous success in the U.S. marketplace, Netgear's misconduct has injured and threatens injury to well over a billion dollars in sales, for which it will be held accountable.

**NATURE OF THE ACTION**

1.     TP-Link and Netgear compete in the marketplace for networking and smart home products (such as wireless Wi-Fi Internet routers and related products), including in the United States.  TP-Link makes and sells award-winning Wi-Fi routers with consumer-demanded features, such as high performance, high-quality, and advanced security, at a reasonable price.  Netgear markets its Wi-Fi routers as supposedly providing "best-in-class WiFi," and it sells them at higher prices than competitors, including TP-Link.  While the market has rewarded TP-Link's technologically advanced and fairly priced products, Netgear's products have not gained the same traction.

2.     Instead of competing on the merits, Netgear has sought to expand its market share by capitalizing on anti-Chinese sentiment and fear of cyberattacks.  Netgear has made false and misleading accusations and spread untrue rumors, including that TP-Link—the leader in the U.S. Wi-Fi router market—has played a "role" in Chinese cyberattacks and is an untrustworthy "China-based" company.  These assertions are false and offensive.

3.     To put an end to Netgear's false and misleading statements, TP-Link negotiated and paid for a contractual agreement with Netgear that settled patent-related lawsuits they had filed against each other and that prohibits these types of statements.  Under the contract, Netgear was required to stop making disparaging claims about TP-Link.

4.     After entering into the contractual agreement, Netgear violated the parties' bargain. Rather than compete fairly, Netgear resorted to its previous tactic of making disparaging (including false and misleading) statements about TP-Link and TP-Link's business (including TP-Link's products), which have harmed and continue to harm TP-Link's business and reputation and constitute a breach of Netgear's contractual commitments.

5.     TP-Link brings this action to stop Netgear's unlawful campaign of disparagement and to obtain redress for the harm Netgear has caused to TP-Link.

## THE PARTIES

6.     Plaintiff TP-Link Systems Inc. is a corporation organized and existing under the laws of the State of California, with its global headquarters and principal place of business at 10 Mauchly, Irvine, California 92618.   TP-Link is a global leader in high-quality, reliable networking and smart home solutions.   TP-Link itself makes, sells, and is responsible for all of its networking and smart home products.   TP-Link is committed to delivering innovative products that enhance consumers' lives by providing faster and more reliable connectivity, with industry leading security, and it has consistently ranked as the world's top provider of Wi-Fi devices.

7.     Defendant Netgear, Inc. is a corporation organized and existing under the laws of the State of Delaware.   Netgear has its principal place of business at 350 East Plumeria Drive, San Jose, California 95134.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action and the parties.

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, because this action arises under and depends on the laws of the United States and presents substantial questions of federal law.   As set forth herein, Netgear has misrepresented the nature, characteristics, qualities, and/or geographic origin of TP-Link's goods, services, and/or commercial activities in commercial advertising or promotion, in violation of (at a minimum) Section 43(a) of the federal Lanham Act, codified in Section 1125(a) of Title 15 of the United States Code.

10.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the additional claims TP-Link brings in this action.   As set forth herein, Netgear's false and misleading

statements about TP-Link and TP-Link's business—including disparaging and untrue statements about TP-Link's structure, ownership, product offerings, and actions—violate a clause of an August 2024 settlement agreement between the parties (the "2024 Agreement").[1]  TP-Link therefore seeks a judgment that Netgear breached the 2024 Agreement based on Netgear's disparaging statements.  This same misconduct by Netgear also forms the basis of TP-Link's request for a judgment that Netgear defamed TP-Link in violation of applicable state law.  Because all of TP-Link's claims arise from the same improper conduct by Netgear, the state law claims set forth herein are so related to the federal Lanham Act claim stated in this action that they form part of the same case or controversy under Article III of the United States Constitution.

11.    This Court has personal jurisdiction over Netgear because, among other reasons, Netgear is incorporated in Delaware and thus resides in this District.

12.    This Court also has personal jurisdiction over Netgear because Netgear stipulated to this Court's personal jurisdiction in the 2024 Agreement.  That agreement's Forum Selection Clause states:

> This Agreement will be interpreted in accordance with and governed by federal law, where applicable, and the laws of the State of Delaware, without giving effect to any choice of law rules.  All disputes and litigation regarding this Agreement and matters connected with its performance will be subject to the exclusive jurisdiction of the state and federal courts in the State of Delaware, and each Party irrevocably consents and submits to personal jurisdiction in those courts for purposes of this Agreement.  The prevailing Party in any lawsuit to enforce this Agreement shall be entitled to recover its fees and costs.[2]

13.    In addition, this Court has personal jurisdiction over Netgear because Netgear maintains a registered agent for service of process in Delaware and, on information and belief, engages in continuous and systematic business activities within this District.

---

[1] *See* 2024 Agreement § 8 ("Netgear-Violated Clause").

[2] 2024 Agreement § 14.3 ("Forum Selection Clause").

14.     Venue is proper in this District.  As set forth above, the 2024 Agreement's Forum Selection Clause states in relevant part that Netgear "irrevocably consents and submits" to litigate all disputes regarding the 2024 "Agreement and matters connected with its performance" exclusively in "the state and federal courts in the State of Delaware."[3]  Venue also is proper in this District under 28 U.S.C. §§ 1391(b) and (c) at least because Netgear is incorporated in Delaware and thus resides in this District and because the 2024 Agreement is governed by Delaware law.[4]

## FACTUAL BACKGROUND

### TP-Link Makes and Sells Market-Leading Products

15.     TP-Link participates in the market for networking and smart home products, including wireless Wi-Fi Internet routers and related devices.  TP-Link's Wi-Fi routers are among the best, most fairly priced networking products in the U.S. marketplace.

16.     Wi-Fi routers generally are used to allow multiple devices to share an Internet connection.  For example, a cable modem with a wired Internet connection can be attached to a router that wirelessly connects multiple mobile devices to the Internet.  The wireless connection between the router and the mobile devices is made using the 802.11 wireless standard, referred to as "Wi-Fi."

17.     TP-Link products are widely recognized in the industry for their high performance and reasonable pricing.  For example, industry publications have praised TP-Link products as "An Excellent Wi-Fi Router for Most Homes" that "stands out for its impeccable stability, faster-than-average speeds and Wi-Fi 6 compatibility"[5] and have listed multiple TP-Link models among the Best Wi-Fi Routers (including "Best Premium Wi-Fi 6E Router," "Best Wi-Fi Router for Most

---

[3] 2024 Agreement § 14.3.

[4] *See id.*

[5] https://www.cnet.com/home/internet/tp-link-archer-ax21-review.

People," and "Best Mesh Wi-Fi System").[6]  The success of TP-Link's products in the marketplace is a testament to the significant investments TP-Link has made over the course of many years in both researching and developing its technology as well as building an in-house supply chain.

18.    TP-Link is committed to product security excellence and has made significant investments in security programs such as threat detection, vulnerability management, and secure development practices.  TP-Link works to identify potential vulnerabilities in its products and issues security updates and patches for supported products to protect against emerging threats.  As a result of TP-Link's security efforts, TP-Link's product lines have among the lowest rates of known exploited vulnerabilities in the industry.

19.    TP-Link's share of router sales in the United States is less than 10%.

**Netgear Struggled to Compete With TP-Link's Fairly Priced Products**

20.    Although Netgear competes with TP-Link in the networking and smart home product market, Netgear's products have been received differently in the marketplace than TP-Link's products.  Netgear has targeted the high-price market segment with products that it offers at a higher price point than TP-Link's products.

21.    The availability of TP-Link's high-performance, reliable, and reasonably priced products challenged Netgear's premium pricing approach.  For example, industry publications have criticized Netgear products as "tough to recommend for most households"[7] and as having a "laughable" price that "we can't recommend."[8]  Rather than compete on the merits using lawful

---

[6]  https://www.pcmag.com/picks/the-best-wireless-routers;
https://www.rtings.com/router/reviews/best/mesh-wifi-system.

[7]  https://www.cnet.com/home/internet/netgear-orbi-axe11000-wi-fi-6e-mesh-router-review.

[8]  https://www.tomshardware.com/networking/routers/netgear-orbi-970-wi-fi-7-mesh-router-review.

strategies, Netgear chose to undermine TP-Link's business by engaging in a smear campaign intended to deceive the consuming public about TP-Link and TP-Link's business.

**TP-Link and Netgear Reached Agreement for Netgear to End Its Disparagement Crusade**

22.    In August 2024, as part of a settlement of multiple patent-related lawsuits filed by TP-Link and Netgear against each other, TP-Link sought to put an end to Netgear's effort to disparage TP-Link and TP-Link's business.  TP-Link insisted on including in that contractual agreement a provision prohibiting Netgear from making any disparaging or derogatory assertions about TP-Link's business (in light of Netgear having previously engaged in a campaign of disparaging assertions regarding potential bans on TP-Link products and regarding alleged China-related security concerns with TP-Link products).  Although Netgear initially resisted this provision, it ultimately agreed to it in return for monetary compensation from TP-Link.  In particular, TP-Link paid Netgear $135 million pursuant to the 2024 Agreement and at least a substantial portion of that payment was due to Netgear's promise in the Netgear-Violated Clause.

23.    The resulting Netgear-Violated Clause in the parties' 2024 Agreement states that Netgear would not make or publish the type of false and misleading statements about TP-Link or TP-Link's business exemplified in this Complaint.[9]  TP-Link expected that this agreement would end Netgear's barrage of false and misleading statements about TP-Link and TP-Link's business.

24.    Despite signing the 2024 Agreement, Netgear returned to the exact conduct prohibited by that Agreement: disparaging TP-Link and TP-Link's business and competing unfairly rather than on the merits of the parties' products.  In so doing, Netgear has breached its contractual obligations and deprived TP-Link of the benefit of the bargain for which TP-Link negotiated and paid $135 million.

---

[9]  *See* 2024 Agreement § 8.

**Netgear's Disparaging and Derogatory Statements**

25.     Despite the parties' Agreement, Netgear has engaged in an extensive campaign aimed at undermining TP-Link's business and reputation in the marketplace by falsely and misleadingly disparaging TP-Link and TP-Link's products.  Exemplary instances of Netgear's misconduct are set forth below.  The campaign has included the communication of disparaging falsehoods directly and by proxy.

26.     In the months following the parties' Agreement, Netgear continued to engage in extensive public relations efforts to disparage TP-Link.  On information and belief, as part of this unlawful campaign to damage TP-Link and TP-Link's business with a barrage of false and misleading assertions, Netgear encouraged, facilitated, contributed to, and supplied the content for disparaging statements made about TP-Link by others, including members of the media and other commentators.  On information and belief, Netgear has fed false and misleading information to third parties such as media personnel, operatives, consultants, and other businesses to act as mouthpieces for Netgear's smear campaign.  On information and belief, Netgear also has retained prominent industry personalities and influential commentators to propagate its false messages about TP-Link.  Netgear's efforts have been successful, prompting the media and others to spread this disinformation, thereby harming TP-Link's reputation.

27.     For example, Rob Joyce—a purported cybersecurity consultant who owns and operates the consulting firm Joyce Cyber LLC—published false and misleading statements on social media, in published interviews, and in other public forums that TP-Link's technologies are controlled by the Chinese Communist Party, that TP-Link products serve as a platform for the People's Republic of China to launch cyberattacks and present a security threat, and that these products get automatic software updates from the People's Republic of China.  As another example, "Chief Cyber Raconteur" Nicole Perlroth—who launched the podcast series *To Catch a*

*Thief: China's Rise to Cyber Supremacy*—published a podcast episode discussing TP-Link and falsely and misleadingly asserting that TP-Link pushes software updates out of China to its routers in the United States, is subject to direction from the Chinese government, and is selling its routers at unprofitable levels for the purpose of driving U.S. and other western manufacturers from the Wi-Fi router market.  As a further example, Russ Walker—Vice President of Policy at the Rainey Center—and Chet Love—a member of the Board of Directors and a Fellow at the Rainey Center— falsely and misleadingly suggested that TP-Link is tied to the Chinese Communist Party, that TP-Link's Wi-Fi routers are a national security threat, and that TP-Link's U.S. user data is housed overseas.  The foregoing statements are false and misleading, and do not bear any relation to the truth.

28.    It is independently noteworthy that Netgear has spent at least hundreds of thousands of dollars over at least the last year lobbying both chambers of Congress, the United States Department of Commerce, the United States Department of Homeland Security, and the Federal Communications Commission.  Netgear's extensive lobbying efforts have involved issues related to, among other things, strategic competition with China, federal procurement policy, and cybersecurity.

29.    Netgear has capitalized on its smear campaign by making false and misleading statements about TP-Link and TP-Link's products directly to the public.  For example, Netgear has repeatedly used its earnings calls as a platform to spread falsehoods about TP-Link, sometimes passing along misinformation Netgear had covertly injected into the public through the media and other proxies in the first place.

30.    During a February 5, 2025 earnings call for Netgear investors, media personnel, and networking product partners and consumers, Netgear's Chief Executive Officer C.J. Prober

referred to "TP-Link as a national security risk" and stated that "TP-Link's role in some of these typhoons [*i.e.*, well-known cyberattacks] that the U.S. is facing" had been "exposed" by a "Microsoft blog" post.[10]

31.    Those assertions by Netgear's CEO are false and misleading.  The Microsoft blog post referenced by Mr. Prober reported that multiple Chinese threat actors used "highly evasive password spray attacks" to infiltrate "a network of compromised devices" called "CoverNetwork-1658," also known as "Quad7 (7777)."[11]  While all computing products face some risk of being hacked, and the Microsoft blog reported that certain Wi-Fi routers made by TP-Link were targeted by third-party hackers, the blog post did not attribute any aspect of the attack by Chinese threat actors to TP-Link or suggest that TP-Link had any "role" in the attacks.  Instead, TP-Link was a victim.    Notably,  TP-Link  subsequently  developed  and  released  firmware  patching  the vulnerabilities used by these Chinese threat actors.

32.    Netgear's CEO also failed to mention that Netgear itself has been among the multiple Wi-Fi equipment providers victimized by cyberattacks and security risks.  For example, the U.S. Department of Justice has noted that the "vast majority of routers that comprised the [Volt Typhoon] KV Botnet" were sold by Netgear and another TP-Link competitor.[12]  The Department of Justice even carried out a court-authorized operation to remove malware from infected Netgear routers.[13]  Indeed, the routers targeted in the CovertNetwork-1658 botnet attack discussed in the Microsoft blog post referenced by Netgear's CEO included Netgear routers.[14]

---

[10] Ex. 1 (Netgear Q4 2024 Earnings Call Transcript).

[11]  https://www.microsoft.com/en-us/security/blog/2024/10/31/chinese-threat-actor-storm-0940-uses-credentials-from-password-spray-attacks-from-a-covert-network/.

[12]  https://www.justice.gov/archives/opa/pr/us-government-disrupts-botnet-peoples-republic-china-used-conceal-hacking-critical.

[13] Ex. 2 (Jan. 31, 2024 S.D. Tex. U.S. Attorney's Office Press Release).

[14] *See* https://thehackernews.com/2024/09/quad7-botnet-expands-to-target-soho.html.

33.     Moreover, although Mr. Prober falsely and misleadingly referred to TP-Link's "role" in supposed "typhoons," the Microsoft blog post makes no mention of any "typhoon."[15]  As noted above, Netgear's own routers have been compromised in "typhoon" cyberattacks attributed to Chinese threat actors.  In a January 15, 2025 letter from the Chairman of the United States Senate Committee on the Judiciary to Netgear's CEO, Senator Charles E. Grassley specifically expressed concern over vulnerabilities in Netgear Wi-Fi routers that had been infiltrated by Chinese threat actors.[16]  Senator Grassley noted that the media had reported that a "China-backed hacking group" called "Salt Typhoon" had completed the "worst telecom hack in our nation's history," and that Salt Typhoon's activities had included compromising "routers built by Netgear."[17]  Netgear's disparaging assertions against TP-Link are particularly misleading in the context of Netgear's own security record.

34.     Netgear's CEO continued to make false, disparaging, and misleading remarks about TP-Link on its April 30, 2025 earnings call.  On that call, Mr. Prober feigned surprise that TP-Link had been discussed at a congressional hearing earlier in the year in connection with supposed Chinese cyberthreats to U.S. national security and critical infrastructure.[18]  However, that congressional discussion took place in the wake of extensive public relations efforts by Netgear that, on information and belief, involved the same disparaging subject matter.

---

[15] Known "typhoon" cyberattack groups include at least Volt Typhoon, Salt Typhoon, Flax Typhoon, and Brass Typhoon.  All four of these groups have been labelled Chinese state-sponsored Advanced Persistent Threat groups that seek to exploit global infrastructure and network devices.

[16] Ex. 3 (Jan. 15, 2025 Senator Grassley Letter to Netgear).

[17] *Id.*

[18] Ex. 4 (Netgear Q1 2025 Earnings Call Transcript).

35.    Mr. Prober also referred to TP-Link on the April 30 earnings call as Netgear's "China-based competition," and stated that one of the articles "dropped" by the press "over the last month or so" had "kind of debunk[ed]" the idea that TP-Link is "a US-based company."[19] Mr. Prober used these statements to falsely and misleadingly contrast TP-Link with Netgear's supposed status as "a trusted US-based" company and to falsely and misleadingly suggest illicit ties between TP-Link and China, including the Chinese government.[20]

36.    It is untrue, disparaging, and derogatory for Netgear's CEO to assert that TP-Link should not be viewed as "trusted" because it is "China-based."  TP-Link is based in California, where it is incorporated and headquartered.  TP-Link employs a local workforce of over 500 personnel in California, and its U.S.-based executives and managers exercise global decision-making authority.  Although TP-Link's predecessor company was founded in China in 1996, the company split after its founding into two distinct and separate entities, which today are TP-LINK Technologies Co., Ltd. and Plaintiff TP-Link Systems Inc.  TP-LINK Technologies Co., Ltd. is a Chinese company that sells its products in mainland China, and is not a party to this case.  In contrast, Plaintiff TP-Link Systems Inc. is a separate U.S.-based company incorporated and headquartered in California that does not sell products in mainland China.  U.S.-based personnel who work for TP-Link's U.S. headquarters have decision-making authority over the design of TP-Link's products and TP-Link's data handling.    Although TP-Link—like many U.S.-based technology companies—has subsidiary entities and employees in China that help support its global business, that does not change the fact that TP-Link is a trustworthy company free from illicit Chinese influence and based in California.  Indeed, Netgear labeled itself as a "trusted" and

---

[19] *Id.*

[20] *Id.*

"independent U.S.-based" company[21] even though Netgear has multiple subsidiaries and/or affiliates in mainland China and engages China-linked original design manufacturers ("ODMs") for manufacturing.

37.     Contrary to Mr. Prober's false assertions, these facts about TP-Link's U.S.-based business and its freedom from Chinese government influence have never been "debunked." Netgear's CEO undoubtedly knew that his false and misleading statements on the April 30 earnings call were untrue, including because one of the articles that he referenced during the call stated that TP-Link is based in California.  Netgear also knew that its derogatory statements discussed above were false and misleading based, at a minimum, on disclosures TP-Link made to Netgear during previous litigation between the parties, as well as information available on TP-Link's public website.

38.     On an October 29, 2025 earnings call for Netgear investors, media personnel, and networking product partners and consumers, Netgear's CEO Mr. Prober again made false and misleading statements about TP-Link and TP-Link's products.  For example, Mr. Prober falsely and misleadingly suggested that TP-Link supposedly has "networking equipment that has connected components from the Chinese covered list."[22]  As another example, Mr. Prober falsely and misleadingly suggested that a 60 Minutes piece exists investigating TP-Link.[23]  TP-Link routers sold in the United States do not contain any "components" from any "Chinese covered list."  Nor is there any basis in fact or truth for Mr. Prober's claims about a purported 60 Minutes piece.

---

[21] *Id.*

[22] Ex. 5 (Netgear Q3 2025 Earnings Call Transcript).

[23] *Id.*

39.   TP-Link sent a letter to Netgear on October 30, 2025, expressing concern over Netgear's repeated false and misleading statements, especially in view of the Netgear-Violated Clause in the 2024 Agreement.  Netgear never responded to TP-Link's letter.

40.   Netgear has made false and misleading assertions, including those discussed above, with an intent to mischaracterize TP-Link and TP-Link's products and commercial operations. Netgear has sought to deceive the consuming public and to damage TP-Link's business in an effort to seize additional market share for Netgear, including by advancing the false and misleading assertions discussed above and false and misleading propositions regarding an alleged government ban of TP-Link products.

41.   Indeed, Netgear's CEO made clear on several of the aforementioned earnings calls that Netgear seeks to benefit from any harm that these false and disparaging allegations about TP-Link cause to TP-Link's business.  On the February 5, 2025 earnings call, Netgear's CEO said that Netgear was looking into investing in its product supply "to be in a better position should an exclusion [of TP-Link products] actually happen."[24]   On the April 30, 2025 earnings call, Netgear's CEO again linking allegations as to TP-Link with "competitive benefits" to Netgear.[25] On the October 29, 2025 earnings call, Netgear's CEO stated immediately after discussing TP-Link that Netgear has—as "one thing kind of related to that"—"been winning some pretty big deals that may have previously not gone [Netgear's] way because of that."[26]  Mr. Prober stated "I think all the messaging out there is actually helping us win with customers."[27]

---

[24] Ex. 1 (Netgear Q4 2024 Earnings Call Transcript).

[25] Ex. 4 (Netgear Q1 2025 Earnings Call Transcript).

[26] Ex. 5 (Netgear Q3 2025 Earnings Call Transcript).

[27] *Id.*

## CLAIMS FOR RELIEF

### COUNT I
### (Commercial Disparagement Under the Lanham Act – 15 U.S.C. § 1125(a))

42.    TP-Link repeats and realleges each and every allegation contained in the paragraphs above as if set forth fully herein.

43.    Both Netgear and TP-Link offer for sale in interstate commerce networking products, including Wi-Fi Internet routers.

44.    Netgear has made and caused to have propagated false and misleading statements, including false and misleading descriptions of fact and misrepresentations of fact in connection with TP-Link's goods and services.  These false and misleading statements include, for example, one or more of the false and/or misleading statements identified above, both individually and collectively.  *See* ¶¶ 25–40, *supra*.  Those exemplary statements are referred to hereinafter as the "Exemplary Netgear False and Misleading Statements."  Each of those statements was widely disseminated to the consuming public, including consumers of TP-Link products.

45.    As set forth above, Netgear knows the Exemplary Netgear False and Misleading Statements are false and misleading.

46.    Netgear made and caused to be propagated these false and misleading statements regarding TP-Link, TP-Link's products, and TP-Link's commercial activities in interstate commerce and in connection with touting the availability for purchase of Netgear's competing products, such as Netgear's Wi-Fi routers.  On information and belief, Netgear made and caused to be propagated these false and misleading statements for the purpose of influencing purchasing decisions, including by improperly encouraging the purchase of networking products from a company or companies other than TP-Link, such as Netgear, including as indicated by Netgear's own statements.

15

47.     Netgear made and caused to be propagated its false and misleading statements deliberately with the intent to deceive the consuming public.  These false and misleading statements are material and are reasonably relied on by the relevant purchasing public, including as indicated by Netgear's own stated plan to benefit at TP-Link's expense and by media coverage of this subject matter.  Netgear's misrepresentations already have caused and/or will cause consumers of TP-Link products to alter their purchasing decisions, including by sourcing networking products such as Wi-Fi routers from TP-Link's competitors.  For example, the misrepresentations made and caused to be propagated by Netgear caused lost sales to TP-Link and likely will cause further lost sales in the future, with consumers instead purchasing products from TP-Link's competitors, including but not limited to Netgear.  TP-Link's competitors would not have made these sales of networking products—including but not limited to Wi-Fi routers—but for Netgear's dissemination of false and misleading information about TP-Link and TP-Link's business.  The statements made and caused to be propagated by Netgear have actually deceived or had the tendency to deceive a substantial segment of the consuming public of TP-Link products.

48.     These false and misleading statements have harmed and will continue to harm TP-Link, including by causing TP-Link to lose sales and profits, causing damage to TP-Link's reputation and goodwill, and burdening TP-Link's commercial relationships.

49.     TP-Link is entitled, under the Lanham Act, to an injunction barring Netgear from making or publishing any further false and misleading statements regarding TP-Link or TP-Link's products or commercial activities.  TP-Link also is entitled, under the Lanham Act, to damages in an amount to be determined at trial, including but not limited to damages for loss of sales and profits, harm to TP-Link's reputation and goodwill, injury to TP-Link's commercial relationships, and loss of market share.

## COUNT II
### (Breach of Contract)

50.    TP-Link repeats and realleges each and every allegation contained in the paragraphs above as if set forth fully herein.

51.    The parties' 2024 Agreement is a valid and binding agreement between TP-Link and Netgear.

52.    Netgear materially breached the 2024 Agreement by making and publishing disparaging, derogatory, and untrue statements about TP-Link and TP-Link's business.  These false and misleading statements include, for example, the Exemplary Netgear False and Misleading Statements.

53.    As set forth above, Netgear knows that the false and misleading statements it has made and caused to be propagated about TP-Link, including the Exemplary Netgear False and Misleading Statements, are not true.  Despite knowing the facts that demonstrate these statements are false and misleading, Netgear has intentionally disparaged TP-Link and TP-Link's products in breach of the parties' 2024 Agreement.

54.    Unlike Netgear, TP-Link has complied with its obligations under the 2024 Agreement.  There are no circumstances excusing or justifying Netgear's failure to comply with the 2024 Agreement.

55.    TP-Link has suffered and will continue to suffer damage as a direct and proximate result of Netgear's material breach of the 2024 Agreement.  Netgear's breaches have caused and will continue to cause harm to TP-Link, including by causing TP-Link to lose sales and profits, causing damage to TP-Link's reputation and goodwill, injuring TP-Link's commercial relationships, and causing TP-Link to lose the benefit of the bargain for which TP-Link executed

the 2024 Agreement and made a payment to Netgear, including to lift the cloud of Netgear's disparagement from TP-Link's business.

56.    TP-Link is entitled to damages in an amount to be determined at trial, including but not limited to damages for loss of sales and profits, harm to TP-Link's reputation and goodwill, injury to TP-Link's commercial relationships, loss of market share, and loss of the benefit of the bargain struck via the 2024 Agreement.  Informative of the damages owed to TP-Link is that at least a substantial portion of the $135 million that TP-Link paid Netgear pursuant to the 2024 Agreement was due to Netgear's promise in the Netgear-Violated Clause that it breached.

57.    TP-Link also is entitled to specific performance under the 2024 Agreement, which requires Netgear to refrain from making or publishing disparaging or derogatory statements regarding TP-Link, including but not limited to false and misleading statements regarding TP-Link's structure, ownership, or actions.

## COUNT III
### (Defamation)

58.    TP-Link repeats and realleges each and every allegation contained in the paragraphs above as if set forth fully herein.

59.    Netgear has made and caused to have propagated defamatory statements about TP-Link and TP-Link's products.  These statements include without limitation the Exemplary Netgear False and Misleading Statements.

60.    As set forth above, these assertions by Netgear constitute false statements of fact that are not true or even substantially true.

61.    Netgear's false and misleading statements about TP-Link and TP-Link's products, including the Exemplary Netgear False and Misleading Statements, have no basis in fact.

62.     Netgear published and caused to have propagated each of these false and misleading statements about TP-Link and TP-Link's products.  On information and belief, Netgear published these false and misleading statements to consumers of TP-Link products.  For example, Netgear published its false and misleading statements by orally conveying them on Netgear's February 5, 2025, April 30, 2025, and October 29, 2025 earnings calls.  On information and belief, numerous listeners heard the false and misleading statements made by Netgear's CEO on those calls.  The false and misleading statements by Netgear's CEO also were memorialized in written transcripts of those earnings calls that were subsequently publicly disseminated via the Internet.

63.     On information and belief, Netgear made and caused to be propagated each of the false and misleading statements with actual malice.  As set forth above, Netgear knew with a high degree of certainty that the statements about TP-Link and TP-Link's products were false and misleading.  At the very least, Netgear had reason to have serious doubt regarding the truth of its statements.

64.     Relevant third parties—including but not limited to consumers of TP-Link's products, participants on Netgear's February 5, 2025, April 30, 2025, and October 29, 2025 earnings calls, and media companies and their agents—would understand the statements made and propagated by Netgear regarding TP-Link to be defamatory.  Third parties would understand these statements as inducing the consuming public to view TP-Link and TP-Link's business and products negatively, to fear purchasing TP-Link's products, and to buy networking products from TP-Link's competitors, including but not limited to Netgear, including as indicated by Netgear's own statements.  Among other reasons, the Exemplary Netgear False and Misleading Statements would lead third parties to misunderstand that TP-Link maintains illicit and harmful associations in China, including its government.  Third parties therefore would have understood Netgear's

statements as harmful to TP-Link's reputation, including by lowering TP-Link in the estimation of consumers and deterring consumers and other third persons from associating or dealing with TP-Link.

65.     TP-Link is not a public figure, even for any limited purpose.

66.     As noted above with respect to TP-Link's other causes of action, Netgear's defamatory statements have caused harm to TP-Link, entitling TP-Link to damages in an amount to be determined at trial, including but not limited to damages for loss of sales and profits, harm to TP-Link's reputation and goodwill, injury to TP-Link's commercial relationships, and loss of market share.

## COUNT IV
### (Unjust Enrichment)

67.     TP-Link repeats and realleges each and every allegation contained in the paragraphs above as if set forth fully herein.

68.     As a result of the conduct alleged herein, Netgear has been unjustly enriched to TP-Link's detriment.  For example, and without limitation, immediately after discussing TP-Link, Netgear's CEO C.J. Prober stated that Netgear has—as "one thing kind of related to that"—"been winning some pretty big deals that may have previously not gone [Netgear's] way because of that."[28]  Mr. Prober stated "I think all the messaging out there is actually helping us win with customers."[29]  On information and belief, Mr. Prober referred to Netgear sales stolen from TP-Link as a result of Netgear's misconduct discussed above.

69.     For at least the reasons set forth above, Netgear has no lawful justification for its enrichment at TP-Link's expense.

---

[28] Ex. 5 (Netgear Q3 2025 Earnings Call Transcript).

[29] *Id.*

70.     To the extent that damages are not available relating to any portion of Netgear's misconduct discussed above and any portion of the harm to TP-Link, then TP-Link has no adequate remedy at law and TP-Link thus seeks an accounting and disgorgement of all ill-gotten gains and profits resulting from Netgear's inequitable, improper, and unjustified conduct.

## PRAYER FOR RELIEF

WHEREFORE, TP-Link respectfully requests the following relief:

A.    That the Court enter a judgment that Netgear violated § 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a);

B.    That the Court enter judgment that Netgear breached its August 28, 2024 contract with TP-Link by making untrue statements that falsely and misleadingly disparage TP-Link and TP-Link's products;

C.    That the Court enter a judgment that Netgear defamed TP-Link;

D.    That the Court enter a judgment that Netgear has been unjustly enriched;

E.    That the Court award such damages as can reasonably be determined resulting from Netgear's violation of § 43(a) of the Lanham Act, breach of contract, and defamation;

F.    That the Court compel specific performance of Netgear's contractual obligations;

G.    That the Court grant injunctive relief to remedy Netgear's breach of contract by entering an order requiring Netgear to formally retract all untrue statements that it made falsely or misleadingly disparaging TP-Link and TP-Link's products;

H.    That the Court preliminarily and permanently enjoin Netgear from engaging in conduct that violates § 43(a) of the Lanham Act and/or Netgear's contractual

obligations, by requiring Netgear to refrain from making and publishing disparaging statements about TP-Link and TP-Link's products;

I.      That the Court issue injunctive relief under § 43(a) of the Lanham Act to provide a just and equitable result in view of Netgear's misconduct, such as requiring Netgear to formally retract all untrue statements that it made falsely or misleadingly disparaging TP-Link and TP-Link's products;

J.      That the Court award Plaintiff its costs and reasonable attorneys' fees as provided for by the Lanham Act and the 2024 Agreement;

K.      That the Court order an accounting and disgorgement of all ill-gotten gains and profits of Netgear resulting from its inequitable conduct;

L.      That the Court award Plaintiff prejudgment and post-judgment interest on any award; and

M.      That the Court award Plaintiff any and all other relief to which Plaintiff may show itself to be entitled and that the Court deems just, equitable, and proper.

## **DEMAND FOR JURY TRIAL**

TP-Link hereby respectfully requests trial by jury under Rule 38 of the Federal Rules of Civil Procedure of all issues in this action so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

OF COUNSEL:

Gregory S. Arovas
Todd M. Friedman
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Luke L. Dauchot
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067
(310) 552-4200

David Rokach
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
(312) 862-2000

Stephen C. DeSalvo
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC  20004
(202) 389-5000

November 17, 2025

Brian P. Egan (#6227)
Ben Yenerall (#7132)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
byenerall@morrisnichols.com

*Attorneys for Plaintiff*