# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TP-LINK SYSTEMS INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-1396-MN |
| | ) | |
| NETGEAR, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## NETGEAR, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND MOTION TO STRIKE

OF COUNSEL:

Robert K. Hur
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
(202) 737-0500
rhur@kslaw.com

Jennifer S. Recine
Joshua E. Roberts
KING & SPALDING LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 556-2100
jrecine@kslaw.com
jroberts@kslaw.com

Dated: December 8, 2025

Katharine Lester Mowery (# 5629)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
mowery@rlf.com

*Attorneys for Defendant*

**TABLE OF CONTENTS**

Page

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ........................................... 1

STATEMENT OF FACTS ......................................................................................................... 3

    I.      PUBLIC REPORTING OF GOVEERNMENT INVESTIGATIONS OF TP-LINK ......................................................................................................... 3

    II.    SUMMARY OF ALLEGED MISSTATEMENTS ................................................ 6

LEGAL STANDARD ................................................................................................................. 7

ARGUMENT ............................................................................................................................. 8

    I.      TP-LINK FAILS TO STATE A LANHAM ACT CLAIM .................................. 8

        A.    The Alleged Misstatements Were Not Made in "Commercial Advertising or Promotion" ................................................................... 9

        B.    The Alleged Misstatements Are Not False or Misleading ............................... 12

        C.    TP-Link Has Not Identified Specific Statements Attributable to Netgear ...... 14

        D.    TP-Link Fails to Sufficiently Plead Proximate Causation .............................. 16

    II.    TP-LINK FAILS TO STATE A CLAIM FOR DEFAMATION ......................... 17

        A.    TP-Link Is a Limited Purpose Public Figure ................................................... 18

        B.    TP-Link Fails to Sufficiently Plead Actual Malice .......................................... 19

        C.    TP-Link Fails to Adequately Plead That the Allegedly Defamatory Statements Are False Statements of Fact ......................................................... 21

        D.    TP-Link Fails to Adequately Allege Special Damages .................................. 22

        E.    TP-Link Fails to Allege That Netgear Published the Third-Party Statements ........................................................................................................ 22

    III.    TP-LINK FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ........ 22

    IV.    TP-LINK FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT .......... 23

    V.    COUNTS III AND IV SHOULD BE STRICKEN .............................................. 24

        A.    Counts III and IV Arise from the Exercise of Free Speech Rights .................. 24

        B.    TP-Link Cannot Demonstrate a Probability of Success on the Merits ........... 25

CONCLUSION ......................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1st Amend. Praetorian v. New York Times Co.*,
2025 WL 949575 (S.D.N.Y. Mar. 28, 2025) .................................................................... 20

*Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*,
581 F. Supp. 2d 654 (D. Del. 2008) ......................................................... 11, 12, 13

*Aellis O. v. Connor*,
2022 WL 2229421 (S.D. Cal. June 21, 2022) ................................................................. 24

*Allergan, Inc. v. Merz Pharms., LLC*,
2011 WL 13323246 (C.D. Cal. Nov. 14, 2011) ............................................................... 10

*Ampex Corp. v. Cargle*,
128 Cal. App. 4th 1569 (2005) .................................................................. 18, 19

*AmTrust Fin. Servs., Inc. v. Liberty Ins. Underwriters Inc.*,
2025 WL 2720960 (D. Del. Sept. 24, 2025) ....................................................................... 3

*Anti-Defamation League of B'nai B'rith v. Superior Ct.*,
67 Cal. App. 4th 1072 (1998) ...................................................................... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................... 7

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015) ...................................................................... 24

*Avenatti v. Fox News Network, LLC*,
2021 WL 3603035 (D. Del. Aug. 13, 2021) ............................................................. 17, 20

*Boule v. Hutton*,
328 F.3d 84 (2d Cir. 2003) .......................................................................... 15

*Charney v. Standard Gen., L.P.*,
10 Cal. App. 5th 149 (2017) ....................................................................... 22

*City of Costa Mesa v. D'Alession Invs., LLC*,
214 Cal. App. 4th 358 (2013) ..................................................................... 24

*Cooper v. Bellasalma*,
2025 WL 1397004 (D. Del. May 14, 2025) .................................................... 8, 11, 16, 17

*Delux Cab, LLC v. Uber Techs., Inc.*,
2017 WL 1354791 (S.D. Cal. Apr. 13, 2017) ................................................................. 15

*Ditri v. Coldwell Banker Residential Affiliates, Inc.*,
    954 F.2d 869 (3d Cir. 1992)................................................................................. 12

*Eldorado Stone, LLC v. Renaissance Stone, Inc.*,
    2005 WL 5517731 (S.D. Cal. Aug. 10, 2005) ................................................... 22

*Eliott v. Lions Gate Ent. Corp.*,
    639 F. Supp. 3d 1012 (C.D. Cal. 2022) ............................................................ 25

*Fair Wind Sailing, Inc. v. Dempster*,
    764 F.3d 303 (3d Cir. 2014)............................................................................... 17

*Freed v. St. Jude Med., Inc.*,
    364 F. Supp. 3d 343 (D. Del. 2019).................................................................... 3

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)..................................................................................... 18, 20

*Giove v. Holden*,
    2012 WL 2357586 (D. Del. June 19, 2012)....................................................... 22

*Greschner v. Becker*,
    2016 WL 3969941 (D. Ariz. July 25, 2016) ............................................... 18, 19

*Guilfoil v. Correct Care Sols.*,
    2016 WL 5024190 (D. Del. Sept. 15, 2016) ...................................................... 3

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021) ............................................................................. 21

*Incarcerated Ent., LLC v. CNBC LLC*,
    331 F. Supp. 3d 352 (D. Del. 2018)................................................................ 9, 12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)........................................................................................... 17

*Lutz v. Portfolio Recovery Assocs., LLC*,
    49 F.4th 323 (3d Cir. 2022) ................................................................................ 7

*Marfione v. KAI U.S.A., Ltd.*,
    2018 WL 1519042 (W.D. Pa. Mar. 28, 2018) .................................................. 16

*McDowell v. Paiewonsky*,
    769 F.2d 942 (3d Cir. 1985)................................................................... 19, 20, 21

*McGarry v. Univ. of San Diego*,
    154 Cal. App. 4th 97 (2007) ....................................................................... 19, 21

*McNulty v. Citadel Broad. Co.*,
    58 F. App'x 556 (3d Cir. 2003) ......................................................................... 17

*Monsanto Co. v. Syngenta Seeds, Inc.*,
   443 F. Supp. 2d 648 (D. Del. 2006)........................................................................... 11

*Neurvana Med., LLC v. Balt USA, LLC*,
   2020 WL 949917 (Del. Ch. Feb. 27, 2020) ................................................................ 23

*Palm Springs Tennis Club v. Rangel*,
   73 Cal. App. 4th 1 (1999) .......................................................................................... 22

*Paucek v. Shaulis*,
   349 F.R.D. 498 (D.N.J. 2025)..................................................................................... 25

*Peterson v. Sutter Med. Found.*,
   615 F. Supp. 3d 1097 (N.D. Cal. 2022) ...................................................................... 24

*Planet Aid, Inc. v. Reveal*,
   44 F.4th 918 (9th Cir. 2022) ................................................................................. 18, 19

*Power Surv., LLC v. Premier Util. Servs., LLC*,
   2015 WL 12839492 (D.N.J. Mar. 6, 2015).................................................................. 15

*Reader's Dig. Assn. v. Superior Ct.*,
   37 Cal. 3d 244 (1984) ................................................................................................. 21

*Registered Agent Sols., Inc. v. Corp. Serv. Co.*,
   2022 WL 911253 (D. Del. Mar. 28, 2022) ..........................................................*passim*

*Rei Holdings, LLC v. LienClear - 0001*,
   2020 WL 6544635 (D. Del. Nov. 6, 2020) .................................................................. 23

*Reybold Grp. of Cos., Inc. v. Does 1-20*,
   323 F.R.D. 205 (D. Del. 2017) ............................................................................... 8, 11

*Rivero v. Am. Fed'n of State, Cnty., and Mun. Emps.*,
   105 Cal. App. 4th 913 (2003) .................................................................................... 25

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
   632 F. Supp. 2d 362 (D. Del. 2009)...................................................................... 12, 16

*Shahid Buttar for Congress Comm. v. Hearst Commc'ns, Inc.*,
   2022 WL 1215307 (N.D. Cal. Apr. 25, 2022) ............................................................ 19

*Shahid Buttar for Congress Comm. v. Hearst Commc'ns, Inc.*,
   2023 WL 2065044 (N.D. Cal. Feb. 16, 2023) ....................................................... 20, 21

*Shahid Buttar for Congress Comm. v. Hearst Commc'ns, Inc.*,
   2024 WL 2874154 (9th Cir. June 7, 2024) ........................................................... 19, 22

*SKEDKO, Inc. v. ARC Prods., LLC*,
   2014 WL 585379 (D. Or. Feb. 13, 2014)...................................................................... 8

*In re SoClean, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  2023 WL 8006602 (W.D. Pa. Nov. 17, 2023) ............................................................ 10, 11

*St. Amant v. Thompson*,
  390 U.S. 727 (1968) .................................................................................................. 20, 21

*In re Syngenta AG MIR 162 Corn Litig.*,
  131 F. Supp. 3d 1177 (D. Kan. 2015) ...................................................................... 10, 11

*Synygy, Inc. v. Scott-Levin, Inc.*,
  51 F. Supp. 2d 570 (E.D. Pa. 1999) .................................................................................. 12

*Taus v. Loftus*,
  151 P.3d 1185 (Cal. 2007) ................................................................................................. 18

*ThermoLife Int'l LLC v. Sparta Nutrition LLC*,
  2020 WL 248164 (D. Ariz. Jan. 16, 2020) ....................................................................... 17

*Tigo Energy Inc. v. SMA Solar Tech. Am. LLC*,
  2024 WL 964203 (D. Del. Mar. 5, 2024) ............................................................................ 9

*Travelers Cas. & Sur. Co. of Am. v. Blackbaud, Inc.*,
  2024 WL 1298762 (Del. Super. Ct. Mar. 27, 2024) ......................................................... 23

*Tull v. Higgins*,
  2021 WL 6116971 (N.D. Cal. Dec. 27, 2021) ................................................................. 22

*Van Stelton v. Van Stelton*,
  2014 WL 4898591 (N.D. Iowa Sept. 30, 2014) ............................................................... 21

*Wynn v. Chanos*,
  75 F. Supp. 3d 1228 (N.D. Cal. 2014) ....................................................................... 19, 21

**Statutes & Other Authorities**

10 Del. C. § 6001 ................................................................................................................. 25

15 U.S.C. § 1117 ................................................................................................................. 17

15 U.S.C. § 1125 ........................................................................................................ 8, 9, 11

Cal. Civ. Code § 45a ........................................................................................................... 22

Cal. Civ. Proc. Code § 425.16 ................................................................................... 1, 24, 25

Fed. R. Civ. P. 9 ............................................................................................................. 7, 8, 9

Fed. R. Civ. P. 12 ........................................................................................................ *passim*

Defendant Netgear, Inc. ("Defendant" or "Netgear") hereby respectfully submits this opening brief in support of its motion to dismiss the Complaint (D.I. 1) ("Complaint" or "¶") filed by Plaintiff TP-Link Systems Inc. ("Plaintiff" or "TP-Link") pursuant to Fed. R. Civ. P. 12(b)(6) and motion to strike Counts III and IV pursuant to Cal. Civ. Proc. Code § 425.16.[1]

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

This lawsuit has no place in this or any other court. TP-Link seeks to co-opt the federal judiciary against a single competitor, Netgear, in a futile effort to quell widespread media coverage and U.S. government scrutiny of its links to the People's Republic of China and the implications of those ties on TP-Link's business and market practices. Rather than defend itself in the marketplace of products and ideas, TP-Link seeks to wield a baseless lawsuit against a single competitor in a desperate attempt to silence critics and deflect the maelstrom of negative scrutiny it is currently facing on multiple fronts.

TP-Link's efforts to manufacture a straw man has produced a complaint grounded upon a handful of remarks by Netgear's CEO during quarterly earnings calls, all of which are premised upon, paraphrase, or reference government oversight of and/or reporting by major media outlets related to scrutiny of TP-Link's Chinese ties and potential national security concerns, as well as related matters of geopolitical relevance to Netgear's business. Its remaining allegations concern the utterly speculative notion that "mouthpieces" purportedly working at Netgear's behest provided false information used by journalists and legislators that led to unfavorable coverage of TP-Link. Leaving aside that such discussions—if there were any—with reporters or government officials are protected by the First Amendment and other privileges, TP-Link's theory that Netgear is pulling the strings of an orchestrated plot against it via reputable media outlets, Congress, and multiple federal and state agencies is not backed

_____

[1] All emphasis and alterations are supplied unless otherwise stated. Internal punctuation and citations are omitted from quoted material unless otherwise indicated.

by a single specific factual allegation, requiring dismissal of the Complaint.

The Lanham Act defects are straightforward and incurable. Earnings calls are directed to investors, not consumers, and courts consistently hold they are not "commercial advertising or promotion." TP-Link's contrary assertion rests on conclusory allegations, not facts. Moreover, none of the alleged remarks concern TP-Link's products or services at all; they reference publicly reported government scrutiny and national security implications of TP-Link's connections to China, among other matters. And TP-Link never plausibly alleges falsity or deceit: the remarks either rest on disclosed, reputable sources (*Bloomberg*, *The Wall Street Journal*, Microsoft, congressional letters, agency actions) or convey forward-looking views or opinions on the same. Attempting to relabel unidentified third-party commentary as Netgear's "advertising" underscores the pleading deficiencies; TP-Link alleges no specific content, context, timing, audience, attribution, commercial purpose, or consumer dissemination.

Apparently recognizing the weakness of its Lanham Act claim—and perhaps hoping to avoid the heightened pleading standard it requires—TP-Link supplements that claim with state-law tort and contract claims based on identical allegations. These claims are no stronger.

As to defamation, reliance on public, official reports and reputable media defeats any plausible inference of knowledge of falsity or reckless disregard of the same. Generalized characterizations, hyperbole, and opinions based on public facts are not defamatory. TP-Link is also at least a limited purpose public figure in the ongoing public debate over Chinese ties and U.S. critical infrastructure risk, yet it alleges no facts establishing actual malice. The third-party statements are not pled with the specificity demanded and are not imputable to Netgear. The remaining claims also fail. The Settlement Agreement ("Agreement") resolved patent disputes; it does not turn Netgear into TP-Link's public-relations guarantor. It expressly permits "factually true statements," foreclosing liability for remarks based on public sources.

Finally, Counts III and IV should be stricken and, as such, Netgear is entitled to its fees

and costs. TP-Link's unsupported allegations target core, constitutionally protected speech on matters of public interest made in connection with legislative and executive proceedings.

In short, TP-Link tries to repackage Netgear's reporting on matters relevant to its business based on reputable media and government action during earnings calls—the precise forum in which U.S. public companies are expected to address such matters—into actionable "commercial advertising" and a grab bag of state-law claims. The law does not permit it.

### STATEMENT OF FACTS

**I.    PUBLIC REPORTING OF GOVERNMENT INVESTIGATIONS OF TP-LINK**

In public discourse for the past several years, TP-Link has been ubiquitously described as having material connections to the People's Republic of China.

Beginning in 2024, multiple reports and public statements referenced U.S. government scrutiny of TP-Link's business and market practices. On August 13, 2024, the House of Representatives Select Committee on the Chinese Communist Party issued a bipartisan letter to the then-Secretary of Commerce urging the Commerce Department to investigate TP-Link. The letter described TP-Link as "a technology company based in the People's Republic of China [] that manufactures Wi-Fi routers, Wi-Fi devices, and mesh Wi-Fi network devices, along with hardware and software components and other products." Ex. A at 1.[2] It further noted that open-source information indicated that TP-Link "may represent a serious threat to U.S. [information and communications technology services] security," and explained that "[a]n increasing number of outside researchers and analysts have identified specific concerns about

---

[2] Unless otherwise noted, "Ex." citations reference exhibits to the Declaration of Joshua Roberts filed herewith. The Court can consider the exhibits to the Roberts Declaration because they are expressly referenced in the Complaint, or documents subject to judicial notice because they are official documents or reflect a matter of public knowledge. *See Freed v. St. Jude Med., Inc.*, 364 F. Supp. 3d 343, 349 n.4 (D. Del. 2019) (considering documents integral to or explicitly relied upon in the complaint and matters of public record); *Guilfoil v. Correct Care Sols.*, 2016 WL 5024190, at *3 (D. Del. Sept. 15, 2016) (taking judicial notice of government press release); *AmTrust Fin. Servs., Inc. v. Liberty Ins. Underwriters Inc.*, 2025 WL 2720960, at *5 n.2,*7 n.4 (D. Del. Sept. 24, 2025) (taking judicial notice of the existence of newspaper article).

the risks posed by TP-Link." *Id.* at 1–2. It stated that "Volt Typhoon and other [Chinese] APT groups are able to threaten U.S. critical infrastructure in large part because of their ability to compromise SOHO routers like those manufactured by TP-Link."[3] *Id.* at 3.

In December 2024, *The Wall Street Journal* reported that "U.S. authorities are investigating whether a Chinese company [TP-Link] whose popular home-internet routers have been linked to cyberattacks poses a national-security risk and are considering banning the devices," and explained that "[i]nvestigators at the Commerce, Defense and Justice departments have opened their own probes into the company, and authorities could ban the sale of TP-Link routers in the U.S. next year." Ex. B at 1–2. The article referenced "[a]n analysis from Microsoft [that] found that a Chinese hacking entity maintains a large network of compromised network devices mostly comprising thousands of TP-Link routers," and noted that "TP-Link routers are routinely shipped to customers with security flaws, which the company often fails to address." *Id. Bloomberg* also reported that "[t]he US government has launched a national-security investigation into TP-Link," stating that TP-Link "accelerated an effort to distance itself from its Chinese origin," and that the company is "no longer affiliated with TP-Link Technologies, the company founded in China in 1996 and long co-owned by brothers Zhao Jianjun and Zhao Jiaxing." Ex. C at 1–2. The article reported that Zhao Jianjun and his wife now own TP-Link but cautioned that "investigators fear that TP-Link is using what many US national security professionals refer to as 'the Huawei playbook.'"[4] *Id.* at 3.

During a March 5, 2025 congressional hearing entitled "End the Typhoons: How to Deter Beijing's Cyber Actions and Enhance America's Lackluster Cyber Defenses," multiple

---

[3] Volt Typhoon is a well-known Chinese state-sponsored "Advanced Persistent Threat" ("APT") group. ¶ 33, n.15. A "SOHO" router is a "small office/home office" router. Ex. A.

[4] According to the article, the "Huawei playbook" refers to "claims by the US government and lawmakers that Huawei Technologies Co. is a Chinese government spy tool that became a dominant player in the global networking equipment sector on the back of improper state subsidies." *Id.* at 3.

witnesses referred to TP-Link in their testimony, with one witness referring to TP-Link as a "Chinese-owned manufacturer and creator of a dominant portion of the router market." Ex. D at 30. During the same hearing, Congressman Krishnamoorthi held up a TP-Link router and warned, "don't use this, okay? Don't put it in your critical infrastructure." *Id.* at 25.

On April 11, 2025, *Bloomberg* published an article entitled "Wi-Fi Giant TP-Link's US Future Hinges on Its Claimed Split From China," reporting that "[w]hile TP-Link's recent restructuring split the company into separate US- and China-headquartered businesses, a *Bloomberg News* investigation found" that "much of [TP-Link's] operations … remain in China, entrenched in the country's state-sponsored technology ecosystem." Ex. E at 1–2. The article further noted that "TP-Link confirmed that, aside from components bought in Vietnam that account for 0.5% of the total value of inputs to the plant there, all other components are imported from China." *Id.* at 3. Two weeks later, *Bloomberg* reported that the U.S. was "conducting a criminal antitrust investigation into pricing strategies by TP-Link Systems Inc., a California-based router maker with links to China." Ex. F at 1. A May 14, 2025 letter from members of Congress characterized TP-Link as "a state-sponsored networking equipment company," asserted that it has "deep ties to the Chinese Communist Party," and alleged TP-Link's products had been exploited by Chinese state actors for cyberattacks. Ex. G at 1.

On October 6, 2025, the Texas Attorney General's Office announced that it opened an investigation into TP-Link, examining whether it "misled consumers about the degree of its independence from the Chinese," noting that "questions remain" regarding its ownership structure and the accuracy of its claim that "it is now fully independent of Chinese ties." Ex. H 1–2. The same week, *Bloomberg* reported that the U.S. government was "weighing whether to issue an 'initial determination' that TP-Link poses a national security threat…. The assessment has been ready for some time but in recent weeks there's been a flurry of activity to move it forward, according to the people. Such a finding would put TP-Link one step closer to

potentially having its US operations restricted or banned." Ex. I at 1. Around the same time, the CBS program "60 Minutes" aired a segment entitled "China is hacking America's critical infrastructure," the transcript of which was published on its website, which noted that "China is causing … problems by exploiting vulnerabilities in network equipment." Ex. J at 7. Later that month, the FCC issued a widely covered press release announcing that it had voted in favor of restrictions on networking devices with parts from companies on its "Covered List" and to authorize the agency to bar previously approved equipment in certain cases. Ex. K.

## II.    SUMMARY OF ALLEGED MISSTATEMENTS

TP-Link alleges two general categories of purportedly actionable statements: (1) statements made by Netgear CEO C.J. Prober during earnings calls on February 5, 2025, April 30, 2025, and October 29, 2025 (the "Netgear Statements"), ¶¶ 30–38; and (2) statements made by third parties putatively at Netgear's behest, which fall into two subcategories: (i) unspecified statements made by unidentified members of the media or "other commentators" that Netgear purportedly "facilitated," "contributed to," or "supplied the content for;" and (ii) summarized, unquoted statements attributed to specific third parties (Rob Joyce, Nicole Perlroth, Russ Walker, and Chet Love) allegedly acting as "mouthpieces" for Netgear, ¶¶ 26–27 (the "Third-Party Statements," together with the Netgear Statements, the "Alleged Misstatements"). Each cause of action is based on the Alleged Misstatements.

The Netgear Statements include the following statements, all of which were made during quarterly investor earnings calls:

> Statement 1: On February 5, 2025, Prober stated that "the government scrutiny of TP-Link as a national security risk has been exposed by *Bloomberg* and *The Wall Street Journal*, raising questions about TP-Link's ability to continue to participate in the US market." ¶ 30, D.I. 1-1 at 4.

> Statement 2: On February 5, 2025, in response to an analyst's question, Prober stated that "the CISO of Microsoft posted a blog post on LinkedIn and on the Microsoft blog that really exposed kind of TP-Link's role in some of these typhoons that the US is facing" which "led to *Bloomberg* and *Wall Street Journal* doing fairly thorough reporting on the multiple different angles here from a governmental investigation

6

perspective, Department of Commerce, the DoJ." ¶ 30, D.I. 1-1 at 11.

<u>Statement 3</u>: On April 30, 2025, Prober stated that Netgear's "status as an independent US-based public company[] positions us well to continue to earn the trust of our consumers and benefit from any administrative action focused on our China-based competition" and "[i]n that regard, *Bloomberg* published an article this week reporting on an apparent DOJ criminal investigation into TP-Link." ¶ 35, D.I. 1-1 at 28.

<u>Statement 4</u>: On April 30, 2025, in response to an analyst's question, Prober stated that "a couple of *Bloomberg* articles dropped over the last month or so," one of which "was kind of debunking the position that's been taken [by TP-Link] that they've separated the companies and are now a US-based company." ¶ 35, D.I. 1-1 at 32.

<u>Statement 5</u>: On April 30, 2025, Prober stated that Netgear's "transformation is gaining momentum and we are well-positioned to navigate the current geopolitical situation, given we don't manufacture in China, our products are currently exempt from tariffs and we are a trusted US-based public company." ¶ 35, D.I. 1-1 at 27.

<u>Statement 6</u>: On April 30, 2025, in response to an analyst's question, Prober stated that there was "a big congressional hearing that I don't think was intended to focus on TP-Link, but that ended up being that the focus of the conversation there with some fairly impassioned perspectives on the right action to be taken." ¶ 34, D.I. 1-1 at 32.

<u>Statement 7</u>: On October 29, 2025, in response to an analyst's question about "government activity around TP-Link," Prober stated that "[y]esterday, the FCC voted in favor of restricting networking equipment that has connected components from the Chinese covered list…. So, with all of this activity, I think our confidence is increasing that something is going to eventually drop here." ¶ 38, D.I. 1-1 at 45–46.

<u>Statement 8</u>: On October 29, 2025, in response to the same question, Prober stated that, among other news, "[t]here is a 60 [M]inute[s] piece." ¶ 38, D.I. 1-1 at 46.

## **LEGAL STANDARD**

When ruling on a motion to dismiss under Rule 12(b)(6), the court must dismiss a complaint that lacks sufficient factual allegations, taken as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts within the Third Circuit must "disregard[] allegations . . . that are legal conclusions, speculative, or threadbare" when determining whether a complaint survives such a motion. *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327–28, 330 (3d Cir. 2022). Where a cause of action is predicated on fraud or misrepresentation, the plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Registered Agent Sols., Inc. v. Corp. Serv. Co.*, 2022 WL 911253, at *1–2 (D. Del. Mar. 28, 2022).

## ARGUMENT

### I.    TP-LINK FAILS TO STATE A LANHAM ACT CLAIM

Section 43(a) of the Lanham Act establishes a cause of action for "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that is made "*in commercial advertising or promotion*" and which "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or *another person's goods, services, or commercial activities*." 15 U.S.C. § 1125(a)(1)(B). To establish a claim for false advertising, a plaintiff must sufficiently allege that: (1) "the defendant has made false or misleading statements *as to the defendant's own product or another's*"; (2) "there is actual deception or at least a tendency to deceive a substantial portion of the intended audience"; (3) "the deception is material in that it is likely to influence purchasing decisions"; (4) "the advertised goods traveled in interstate commerce"; and (5) "there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Reybold Grp. of Cos., Inc. v. Does 1-20*, 323 F.R.D. 205, 209–10 (D. Del. 2017).

Where, as here, a Lanham Act claim "sounds in fraud," Rule 9(b)'s heightened pleading standard applies. *Registered Agent*, 2022 WL 911253, at *2. Rule 9(b) requires that a plaintiff "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). As this Court observed, "the policies which underlie Rule 9's requirement that the nature of an alleged misrepresentation be pleaded with specificity are equally applicable" to many Lanham Act claims. *Cooper v. Bellasalma*, 2025 WL 1397004, at *3 n.2 (D. Del. May 14, 2025) (Noreika, J.); *see also SKEDKO, Inc. v. ARC Prods., LLC*, 2014 WL 585379, at *3 (D. Or. Feb. 13, 2014) (collecting cases that Lanham Act claims must satisfy Rule 9(b)). Because TP-Link's allegations "sound in fraud," it must "inject[ ] precision . . . into [its] allegations" by specifying "the date, place or time of the fraud, and by stating who made [the] misrepresentation to whom

and [its] general content." *Registered Agent*, 2022 WL 911253, at *2.[5]

The Complaint spins a conspiratorial tale that Netgear manipulated U.S. government officials, trusted news organizations, and national security experts into spreading false statements about its business rival, and that a few comments during earnings calls to investors and analysts somehow harmed TP-Link with its customers. But this theory falls apart upon even a cursory examination, as TP-Link offers only conclusory allegations in support of its vague conspiracy theory. Because each Alleged Misstatement must satisfy all elements under the Lanham Act, TP-Link's claim fails as a matter of law.

### A.     The Alleged Misstatements Were Not Made in "Commercial Advertising or Promotion"

The Lanham Act applies only to statements made "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). To be considered "commercial advertising or promotion," a representation must be: (1) "commercial speech"; (2) "by a defendant who is in commercial competition with plaintiff"; (3) "for the purpose of influencing consumers to buy defendant's goods or services"; and (4) "disseminated sufficiently to the relevant purchasing public." *Tigo Energy Inc. v. SMA Solar Tech. Am. LLC*, 2024 WL 964203, at *12 (D. Del. Mar. 5, 2024). Courts in the Third Circuit apply a three-factor test to determine "commercial" speech, assessing whether: (1) the speech is an advertisement; (2) it refers to a specific product or service; and (3) the speaker has an economic motivation for the speech. *Incarcerated Ent., LLC v. CNBC LLC*, 331 F. Supp. 3d 352, 359 (D. Del. 2018). Only if all three factors are present will there be "strong support" to conclude that speech is commercial. *Id.* ("[T]he commercial speech doctrine rests heavily on the common sense distinction between speech proposing a commercial transaction ... and other varieties of speech.").

---

[5] TP-Link's claims fail as a matter of law under Rule 9(b) or Rule 8's pleading standard.

9

i.  *The Netgear Statements Are Not "Commercial Speech" Because They Were Made During Earnings Calls*

Each of the Netgear Statements were made by Netgear's CEO, C.J. Prober, during quarterly earnings calls for investors. *See generally* ¶¶ 30–38, 41. But "[s]tatements made during an earnings conference call primarily to influence investors that may have an incidental effect of promoting goods to customers are not within the reach of the Lanham Act." *Allergan, Inc. v. Merz Pharms., LLC*, 2011 WL 13323246, at \*2 (C.D. Cal. Nov. 14, 2011). This is unsurprising, as the "typical function" of these calls is to "influence *investors*," not customers. *In re SoClean, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2023 WL 8006602, at \*31 (W.D. Pa. Nov. 17, 2023). "One would not ordinarily expect," therefore, that an earnings call would be "made for the purpose of influencing customers." *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1226 (D. Kan. 2015). Courts routinely hold that, "without allegations that defendants intended to influence the consumers and the communication was disseminated to the consumers," earnings call statements do not constitute commercial speech. *In re SoClean*, 2023 WL 8006602, at \*30 (collecting cases). Accordingly, Lanham Act claims premised on statements made during earnings calls routinely fail. *See, e.g.*, *id.* at \*31 (statements made "during the normal course of the earnings calls" were not actionable because there were "no allegations . . . that the earnings calls or quarterly report were made primarily to advertise or promote defendants' products" or that "any consumers listened to the earnings calls or read the quarterly report"); *Allergan*, 2011 WL 13323246, at \*2 (striking earnings call statements for failure to allege statements were "intended to influence customers" or that earnings call was "disseminated" to customers).

Here, the Complaint alleges in a conclusory fashion that Netgear "capitalized on its smear campaign by making false and misleading statements about TP-Link and TP-Link's products" during earnings calls, ¶ 29, but fails to allege any facts showing that the earnings calls served anything other than the "typical function" of "influenc[ing] investors." *In re*

*SoClean* 2023 WL 8006602, at *31. Absent from the Complaint is any allegation that the earnings call statements were disseminated to customers. *See id.* The best TP-Link can muster are the conclusory allegations that the February 5, 2025 and October 29, 2025 earnings calls (but not the April 30, 2025 call) were "for Netgear investors, media personnel, and networking product partners and consumers," ¶¶ 30, 38, and that the transcripts were available online, ¶ 62. These unsupported statements are insufficient to establish that the Netgear Statements were disseminated to the broader public. *See In re Syngenta*, 131 F. Supp. 3d at 1226 ("Plaintiffs note that the transcript was available on the internet, but . . . have not cited any authority to suggest that public availability may equate with dissemination to the public for this purpose.").

ii. *The Netgear Statements Do Not Concern Products or Services*

Even if statements made during earnings calls were actionable—which they are not— the claims based on the Netgear Statements must be dismissed for the independent reason that they do not concern "goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B); *see also Reybold Grp.*, 323 F.R.D. at 209–10 (plaintiff must allege statement was made "as to the defendant's own product or another's"). "[T]o be commercial speech the statements must, at a minimum, criticize or unfavorably compare [TP-Link's] *products*." *Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 668 (D. Del. 2008); *see also Reybold Grp.*, 323 F.R.D. at 210 (commercial speech must propose a commercial transaction). For instance, in *Accenture*, the Court held that statements critical of a competitor's "product development methods" did not constitute "commercial speech" because they did not "disparage the products themselves." 581 F. Supp. 2d at 668; *see also Cooper*, 2025 WL 1397004, at *4 (dismissing claim where statements concerned "corporate roles, responsibilities, and authority" as opposed to specific products or services); *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 648, 653 (D. Del. 2006) (dismissing claim regarding statements relating to the "origin" of a product, not the "nature, characteristics [or] qualities" of the product). "The

11

Lanham Act is not a cause of action for maligning the company itself, but rather a remedy for misrepresentation in advertising *about a particular product or commercial service*." *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 578 (E.D. Pa. 1999), *aff'd*, 229 F.3d 1139 (3d Cir. 2000). The Netgear Statements are therefore not actionable because they do not concern TP-Link's *products* at all but instead address TP-Link's organizational structure and governmental investigations of the company.

### B.    The Alleged Misstatements Are Not False or Misleading

"In the context of false advertising claims arising under the Lanham Act, the complaint must include sufficiently detailed allegations regarding the nature of the alleged falsehood." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362, 365 (D. Del. 2009); *see also Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir. 1992). A statement is actionable under the Lanham Act only if it is either (i) "literally false" or (ii) "literally true or ambiguous, but has the tendency to deceive consumers." *Incarcerated Ent.*, 331 F. Supp. 3d at 362. Each of the Netgear Statements is either a true statement of fact or nonactionable subjective opinion and, in either case, is not misleading.

Statement 1: This statement is objectively true and based on disclosed, reputable news sources. *The Wall Street Journal* reported that "U.S. authorities are investigating whether a Chinese company [TP-Link ] poses a national-security risk and are considering banning the devices." Ex. B at 1. And *Bloomberg* reported that "The US government has launched a national-security investigation into TP-Link . . . The probe opens a new front in the US push to crack down on China-linked technology firms deemed a possible threat to US networks and data." Ex. C at 1. Statements that accurately paraphrase or summarize disclosed publications are not actionable under the Lanham Act. *See Accenture Glob. Servs.*, 581 F. Supp. 2d at 667 (counterclaimant failed to allege facts "sufficient to make plausible its contention that these statements, when analyzed in context, were literally false" and, to "the extent that these statements are viewed as

paraphrasing the complaint, [counterclaimant] alleges no facts that would suggest that the statements were not accurate paraphrases"); *see also Registered Agent*, 2022 WL 911253, at *3 (dismissing statements concerning allegedly fraudulent filings with the government which the State of California acknowledged existed).

Statement 2: This statement is objectively true and based on reputable news sources. The Microsoft blog post stated that TP-Link devices accounted for "most" of the routers compromised by a "threat actor located in China." Ex. L at 3. *The Wall Street Journal* likewise reported that an "analysis from Microsoft . . . found that a Chinese hacking entity maintains a large network of compromised network devices mostly comprising thousands of TP-Link routers." Ex. B at 2. Moreover, to the extent that this statement is not objectively and verifiably true, it is a statement of Prober's subjective opinion that TP-Link was "exposed[,] *kind of*" by this media reporting. *See Accenture Glob. Servs.*, 581 F. Supp. 2d at 667 ("[T]o the extent that these statements [paraphrasing a complaint] are viewed as statements of belief or opinion or conclusion, Guidewire fails to allege sufficient facts to make it plausible that Accenture did not truly hold these beliefs or opinions or reach these conclusions."); *Registered Agent*, 2022 WL 911253, at *5 ("broad" or "vague" language is not actionable under the Lanham Act).

Statement 3: This statement is objectively true and based on disclosed, reputable news sources. *Bloomberg* reported that the "US [government] is conducting a criminal antitrust investigation into pricing strategies by TP-Link Systems Inc., a California-based router maker with links to China," acknowledged that TP-Link "still has substantial operations in mainland China," and stated that the "Commerce Department is investigating whether TP-Link's China ties pose an unacceptable risk to national security." Ex. F at 1, 3. Months earlier, *The Wall Street Journal* called TP-Link a "Chinese company," Ex. B at 1, and *Bloomberg* previously reported that TP-Link is "entrenched in [China's] state-sponsored technology ecosystem," Ex. E at 2.

Statement 4: This statement is objectively true and based on disclosed, reputable news sources.

13

The referenced article reported that its "investigation" found that TP-Link "still has substantial operations in mainland China" after its restructuring, and that "aside from components bought in Vietnam that account for 0.5% of the total value of inputs to the plant there, all other components are imported from China." *Id.* at 1–3. The April 24, 2025 *Bloomberg* article contained similar statements. Ex. F. Moreover, Prober's statement that the article "*kind of debunk[ed]*" TP-Link's position is a nonactionable opinion.

Statement 5: It is objectively true that Netgear is a U.S.-based company, *see* ¶ 7, and Prober's statement that Netgear is "trusted" is a nonactionable opinion.

Statement 6: It is objectively true that the House Select Committee on the Chinese Communist Party held a hearing on March 5, 2025 during which TP-Link was discussed. Ex. D at 10–11, 22–23, 25, 30, 52, 56–57. TP-Link's contention that Prober "feigned surprise that TP-Link had been discussed at a congressional hearing earlier in the year," ¶ 34; D.I. 1-1 at 32, is a subjective characterization or opinion and therefore not an actionable statement.

Statement 7: The statement regarding the FCC's vote is objectively true based on the FCC's own press release. Ex. K. Prober does not assert that TP-Link fell within the ambit of the FCC's decision, and predictions about future events are not actionable under the Lanham Act. *Registered Agent*, 2022 WL 911253, at *5.

Statement 8: It is objectively true that *60 Minutes* ran a segment entitled "China is hacking America's critical infrastructure." Ex. J. Prober does not state that TP-Link was expressly identified during the segment.

### C.    TP-Link Has Not Identified Specific Statements Attributable to Netgear

Multiple independent grounds preclude the Third-Party Statements from being actionable against Netgear under the Lanham Act.

### i.    *The Complaint Impermissibly Attempts to Punish Constitutionally Protected Speech on Matters of Public Concern*

Courts have consistently held that statements made to the media and published in a

news article concerning a matter of public importance are not commercial speech and are protected under the First Amendment. *See, e.g.*, *Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir. 2003) (quoted statements which "contribute[d] to reporters' discussion of an issue of public importance" and were "inextricably intertwined" with a matter of public concern were constitutionally protected non-commercial speech); *Delux Cab, LLC v. Uber Techs., Inc.*, 2017 WL 1354791, at *6 (S.D. Cal. Apr. 13, 2017) (statements made to journalists and published in articles were "inextricably intertwined with the reporters' coverage of a matter of public concern, i.e. whether Uber is safe for riders," and were not actionable speech).[6]

To the extent that the allegations in Paragraph 26 of the Complaint are discernable at all—even assuming that they are true—any statement made by Netgear representatives to the media that could have formed the basis of aspects of media coverage of, for example, TP-Link's ties to the Chinese government, is core non-commercial speech that is protected by the First Amendment and cannot be punished as purported "false advertising." *Boule*, 328 F.3d at 91. Similarly, even taking as true TP-Link's allegation that third-party national security experts such as Joyce, Perlroth, Walker, and Love made unspecified, untrue negative statements regarding TP-Link's ties to the Chinese government on behalf of Netgear, ¶ 27,—which Netgear disputes—these statements were clearly made regarding a matter of public concern in a non-commercial context and are not actionable under the Lanham Act.

ii.   *The Third-Party Statements Are Insufficient to State a Claim*

TP-Link also fails to adequately plead that the Third-Party Statements can support a Lanham Act claim in at least three respects.

*First*, TP-Link does not put forth <u>any</u> specific allegations regarding the content, context,

---

[6] Many of TP-Link's grievances arise from or relate to Netgear's lobbying activity. *See* ¶ 28. Of course, such conduct is wholly protected pursuant to the *Noerr-Pennington* doctrine. *See, e.g.*, *Power Surv., LLC v. Premier Util. Servs., LLC*, 2015 WL 12839492, at *2–3 (D.N.J. Mar. 6, 2015) (dismissing Lanham Act claim under *Noerr-Pennington*).

timing, audience, or, in some cases, the speaker of the purportedly disparaging statements. *See* ¶ 26. Such threadbare and conclusory allegations are insufficient under any pleading standard. *Robert Bosch LLC*, 632 F. Supp. 2d at 365 ("[T]he complaint must include sufficiently detailed allegations regarding the nature of the alleged falsehood to allow [the] defendant to make a proper defense."). At most, TP-Link characterizes vague statements made by Joyce,[7] Perlroth, Walker, and Love "on social media, in published interviews, and in other public forums" regarding TP-Link. ¶ 27. But this is also insufficient because TP-Link does not allege the content, context, timing, audience, or the "specific statements" made by these individuals. *Cooper*, 2025 WL 1397004, at *4. TP-Link cannot plead a Lanham Act claim based on statements so unspecific that it is impossible to analyze whether they were part of "commercial advertising or promotion" or whether they were false or misleading.

*Second*, TP-Link fails to sufficiently allege that these third parties were acting on behalf of Netgear when making these statements. *See, e.g.*, *Marfione v. KAI U.S.A., Ltd.*, 2018 WL 1519042, at *9 (W.D. Pa. Mar. 28, 2018) (dismissing Lanham Act claim based on statements made by third party because plaintiff failed to "demonstrate that [defendant] 'made' the allegedly tortious statements").

*Third*, with respect to the alleged statements by Walker and Love, TP-Link simply ignores its obligation to plead that the statements were "disseminated" to customers through some "medium or means." *Registered Agent*, 2022 WL 911253, at *3.

### D.   TP-Link Fails to Sufficiently Plead Proximate Causation

A Lanham Act plaintiff must show "economic or reputational injury" from the alleged

---

[7] To the extent Netgear can intuit what specific statement by Joyce TP-Link claims was false or misleading, the summarized remarks attributed to him appear consistent with the testimony he provided before the House Select Committee on the Chinese Communist Party. *See* Ex. D. TP-Link's allegation therefore seemingly rests on the implicit—and highly implausible— accusation that Joyce, the National Security Agency's former Director of Cybersecurity, committed perjury at Netgear's behest.

false advertising, which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). In other words, "Lanham Act claims require proof of a nexus between the false statement and a third party's decision not to do business with the plaintiff." *McNulty v. Citadel Broad. Co.*, 58 F. App'x 556, 566 (3d Cir. 2003). TP-Link fails to provide non-conclusory allegations that the Alleged Misstatements caused any customers to "withhold trade from" TP-Link. *See* ¶¶ 4–5, 48 (alleging generally that Netgear "harmed" TP-Link's business). "Instead of 'connecting the dots,' the Complaint blankly alleges, without supporting allegations, that Defendant's purported false advertising *must have caused* Plaintiff's injuries" simply "because the two compete." *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, 2020 WL 248164, at *9 (D. Ariz. Jan. 16, 2020). "Such an artificial and attenuated link between Defendant's purported false advertising and Plaintiff's harm . . . defies the reality of business," as there "could be any number of intervening reasons for why Plaintiff's sales decreased." *Id.*

For all the foregoing reasons, TP-Link fails to state a cause of action for violation of the Lanham Act[8] and, accordingly, Count I must be dismissed with prejudice.[9]

## II.    TP-LINK FAILS TO STATE A CLAIM FOR DEFAMATION

To state a claim for defamation under California law,[10] a plaintiff must allege the

---

[8] Should the Court dismiss the Lanham Act claim, Netgear seeks its fees and costs. *See* 15 U.S.C. § 1117(a); *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 313–15 (3d Cir. 2014).

[9] If the Lanham Act claim is dismissed, this Court should decline to exercise supplemental jurisdiction over the remaining claims. *See, e.g.*, *Cooper*, 2025 WL 1397004, at *4–5. To the extent this Court decides to exercise supplemental jurisdiction, it should, for the reasons set forth below, strike Counts III and IV and dismiss Count II.

[10] Under Delaware's approach to conflict of laws, the law of the state that has the "most significant relationship" to the alleged tort applies. *See Avenatti v. Fox News Network, LLC*, 2021 WL 3603035, at *2 (D. Del. Aug. 13, 2021). "In multistate defamation cases, that is typically the state where the injured party is domiciled, so long as the defamatory statements were published there." *Id.* (applying California law). California law applies here, as TP-Link pleads it is incorporated in and has its principal place of business in California. *See* ¶¶ 6, 36. In any event, the Court likely need not choose between the two states' laws because there is no conflict between them regarding the elements of defamation, except for the argument in § II.D.

existence of: (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) "has a natural tendency to injure" or "causes special damage." *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007). A plaintiff who is a public figure must plead that the defendant acted with "actual malice," *i.e.*, that it either knew the allegedly defamatory statement was false or acted with "reckless disregard" for the truth. *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 925 (9th Cir. 2022).

### A.    TP-Link Is a Limited Purpose Public Figure

A limited purpose public figure is one who "voluntarily injects [itself] or is drawn into a particular public controversy." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). California courts have articulated a three-part test to determine if a plaintiff is a limited purpose public figure: (1) "there must be a public controversy," meaning "the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants;" (2) "the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue[; ] it is sufficient that the plaintiff attempts to thrust him or herself into the public eye;" and (3) "the alleged defamation must be germane to the plaintiff's participation in the controversy." *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577 (2005).

A "public controversy" must be a "real dispute, the outcome of which affects the general public or some segment of it." *Planet Aid*, 44 F.4th at 925. Courts routinely conclude that disputes involving matters of national security, geopolitics, and international relations (such as TP-Link's ties to China) are public controversies. *See, e.g.*, *Anti-Defamation League of B'nai B'rith v. Superior Ct.*, 67 Cal. App. 4th 1072, 1089–90 (1998) (holding that by engaging in the Israeli-Palestinian controversy, plaintiffs became limited purpose public figures); *Greschner v. Becker*, 2016 WL 3969941, at *3 (D. Ariz. July 25, 2016) ("A public controversy existed over the use of HDSI technology in matters relating to national security.").

A plaintiff voluntarily injects itself into a public controversy by "engag[ing] in a course of conduct that foreseeably put[s itself] at risk of public scrutiny with respect to a limited range

of issues." *Planet Aid*, 44 F.4th at 926; *see also McDowell v. Paiewonsky*, 769 F.2d 942, 950 (3d Cir. 1985). TP-Link has done that by "actively seeking attention from the press" and "cultivat[ing its] public image" regarding the impact that its purported ties to China has on its Wi-Fi business in the United States.[11] *Planet Aid*, 44 F.4th at 927; *Ampex*, 128 Cal. App. 4th at 1578 (plaintiffs "insert[ed] themselves into the controversy . . . by way of press releases and letters posted on their Web site"); *Greschner*, 2016 WL 3969941, at *3–4 (plaintiff who had business relationships with the U.S. and Chinese governments and issued press releases and quotes for news articles voluntarily injected himself into public controversy). Finally, the Alleged Misstatements are "germane" to TP-Link's participation in the controversy regarding its ties to the Chinese government. TP-Link, a limited purpose public figure regarding the issues raised in the Alleged Misstatements, therefore must plead actual malice.

### B.    TP-Link Fails to Sufficiently Plead Actual Malice

A complaint must set forth "specific allegations" of actual malice, *Shahid Buttar for Congress Comm. v. Hearst Commc'ns, Inc.*, 2022 WL 1215307, at *6 (N.D. Cal. Apr. 25, 2022); *see also Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014) (failure to provide "specific allegations that would support a finding that [defendant] harbored serious subjective doubts as to the validity of his assertions" is "insufficient to satisfy the demanding burden for pleading actual malice"), which must be established by clear and convincing evidence, *Shahid Buttar for Congress Comm. v. Hearst Commc'ns, Inc.*, 2024 WL 2874154, at *2 (9th Cir. June 7, 2024); *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 114 (2007). TP-Link fails in this endeavor, relying on legal conclusions and bald recitations of the standard, which need not be credited, and, in any event, do not withstand a motion to dismiss. TP-Link does not—and

---

[11] *See, e.g.*, Ex. E at 1–2 (TP-Link owner interviewed by *Bloomberg* regarding, among other things, company's corporate structure); Ex. B at 2 (TP-Link spokesperson provided comment regarding security risks for *The Wall Street Journal* article); Ex. M (statements from TP-Link spokesperson regarding ties to China in a *New York Post* article).

cannot—allege facts showing that Netgear knew that any of the Alleged Misstatements (which, at most, characterized statements made by *The Wall Street Journal*, *Bloomberg*, or members of the U.S. government), were false or that Netgear recklessly disregarded their falsity. For instance, TP-Link asserts that Prober "undoubtably knew" that his statement that the *Bloomberg* article "kind of debunk[ed]" the idea that TP-Link "separated" from its China-based affiliate and is "now a US-based company" was false. ¶ 37, D.I. 1-1 at 32. Yet the referenced article stated that TP-Link "has substantial operations in mainland China," and is "entrenched in the country's state-sponsored technology ecosystem." Ex. E. at 1–2.

TP-Link also suggests that Netgear "knew" that unspecified "statements discussed above" were false based on unspecified "disclosures" by TP-Link. ¶ 37. This falls well short of pleading actual malice by clear and convincing evidence. *See 1st Amend. Praetorian v. New York Times Co.*, 2025 WL 949575, at *9–10 (S.D.N.Y. Mar. 28, 2025) (allegations that defendants "knew that [plaintiff] had been thoroughly investigated," "cleared of any wrongdoing," and "knew from their examination of a [previous] defamation lawsuit" that plaintiff contended the statements were false were "wholly conclusory" and "fail[ed] to allege any specific facts" evidencing actual malice); *see also Shahid Buttar for Congress Comm. v. Hearst Commc'ns, Inc.*, 2023 WL 2065044, at *11 (N.D. Cal. Feb. 16, 2023) (dismissing claim where complaint had "no evidence" of "direct knowledge of . . . falsity"); *Avenatti*, 2021 WL 3603035, at *4 (allegations defendants "knew these statements to be false when they were made" and still "made them maliciously" were insufficient).

TP-Link fares no better in alleging that Netgear recklessly disregarded the truth of the Alleged Misstatements. "Reckless disregard" exists where "the defendant 'in fact entertained serious doubts as to the truth' of the statement… or [] the defendant had a 'subjective awareness of probable falsity.'" *McDowell*, 769 F.2d at 951 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) and *Gertz*, 418 U.S. at 334 n.6). Reckless disregard also "may be found where

20

there are obvious reasons to doubt the veracity of the informant or the accuracy of [the defendant's] reports." *Reader's Dig. Assn. v. Superior Ct.*, 37 Cal. 3d 244, 257 (1984) (quoting *St. Amant*, 390 U.S. at 732). A "failure to investigate," without more, however, is insufficient to establish reckless disregard for the truth. *Shahid Buttar*, 2023 WL 2065044, at *11.

Courts have declined to find actual malice where a defendant relies on official reports and news accounts in publishing allegedly defamatory statements. *See, e.g.*, *Wynn*, 75 F. Supp. 3d at 1239 (plaintiff failed to allege actual malice where challenged speech was based, in part, on "reliable" "[a]ctions taken by the SEC and the DOJ"); *McDowell*, 769 F.2d at 951 ("To some extent, defendant relied on the official reports and news accounts of the various construction projects. While it arguably may have been negligent not to have checked independently the veracity of this information, any fault does not rise to the level of actual malice."); *Van Stelton v. Van Stelton*, 2014 WL 4898591, at *21 (N.D. Iowa Sept. 30, 2014). The Netgear Statements expressly rely on official reports or news accounts; TP-Link provides no allegations that Netgear had "obvious reasons" to doubt their veracity. *See Shahid Buttar*, 2023 WL 2065044, at *11. The Complaint contains no facts showing that Netgear acted with reckless disregard with respect to the Third-Party Statements.

### C.    TP-Link Fails to Adequately Plead That the Allegedly Defamatory Statements Are False Statements of Fact

A statement must "contain a provable falsehood" to be defamatory. *McGarry*, 154 Cal. App. 4th at 112.[12] The Netgear Statements are true statements of fact, nonactionable statements of opinion based on disclosed facts, or nonactionable rhetorical hyperbole. *See supra* at 12–14; *see also Shahid Buttar*, 2023 WL 2065044, at *9 (plaintiff failed to allege falsity where the

---

[12] A totality of the circumstances test determines whether speech is a nonactionable opinion: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021).

challenged article "accurately identified" information plaintiff alleged was "misleadingly portrayed"); *Charney v. Standard Gen., L.P.*, 10 Cal. App. 5th 149, 157 (2017) ("rhetorical hyperbole" that "cannot be reasonably interpreted as stating actual facts" is not actionable).

### D. TP-Link Fails to Adequately Allege Special Damages

Where, as here, a plaintiff does not allege that the contested statements are defamatory *per se*, ¶ 64, TP-Link must <u>*precisely*</u> plead that it has suffered special damages. *Palm Springs Tennis Club v. Rangel*, 73 Cal. App. 4th 1, 5 (1999); Cal. Civ. Code § 45a ("Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof."); *id.* at § 48a(d)(2) ("Special damages" are those suffered "in respect to his or her property, business, trade, profession, or occupation."). TP-Link's failure to plead with particularity how its business was harmed by the allegedly defamatory statements is another basis for dismissal. *See supra* at 16–17.

### E. TP-Link Fails to Allege That Netgear Published the Third-Party Statements

TP-Link's defamation claim based on the Third-Party Statements fails for the same reasons its Lanham Act claim failed. *See supra* at 15–16. *First*, TP-Link sets forth no specific allegations. *Shahid Buttar*, 2024 WL 2874154, at *2 ("Generalized allegations are not enough. Specific false statements must be identified."); *see also Tull v. Higgins*, 2021 WL 6116971, at *10 (N.D. Cal. Dec. 27, 2021). "At a minimum, necessary defamation allegations must identify the time and place of publication as well as the speaker, the recipient of the statement, [and] the substance of the statements." *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, 2005 WL 5517731, at *3 (S.D. Cal. Aug. 10, 2005). *Second*, as set forth above, the Complaint does not contain any non-conclusory allegations that the Third-Party Statements were made by Netgear. *See supra* at 16. *See, e.g.*, *Giove v. Holden*, 2012 WL 2357586, at *3 (D. Del. June 19, 2012).

## III.    TP-LINK FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

TP-Link's breach of contract claim asserts that the primary purpose of the parties'

Agreement was to "end [Netgear's] disparagement crusade" of TP-Link. To the contrary, its purpose was to resolve the parties' patent disputes. *See* Ex. N. It contains no reference to any "campaign of disparaging assertions," nor does it suggest any portion, much less "a substantial portion," ¶ 22, of the $135 million payment TP-Link made to Netgear was tied to a promise by Netgear not to disparage TP-Link. Instead, the Agreement expressly characterizes TP-Link's $135 million payment as a "License Fee" in connection with patent disputes. Ex. N § 2.1.

TP-Link also fails to allege any disparaging or derogatory statements Netgear made or how the statements breached the Agreement. *Travelers Cas. & Sur. Co. of Am. v. Blackbaud, Inc.*, 2024 WL 1298762, at *10–11 (Del. Super. Ct. Mar. 27, 2024). TP-Link makes the conclusory claim that Netgear breached the Agreement by encouraging, facilitating, contributing to, and supplying "the content for disparaging statements made about TP-Link by others." ¶ 26. The speculative allegation that Netgear somehow fed false information to "media personnel, operatives, consultants, and other businesses to act as mouthpieces for Netgear's smear campaign," is insufficient under Rule 12(b)(6). *See supra* at 15–16. TP-Link's attempt to cure this deficiency by alleging "on information and belief" falls short of the pleading requirement. *See Neurvana Med., LLC v. Balt USA, LLC*, 2020 WL 949917, at *23 (Del. Ch. Feb. 27, 2020). In any event, the Agreement expressly carves out factually true statements: "Nothing in this clause shall restrict any Party from making factually true statements[.]" Ex. N § 8. As explained *supra* at 12–14, each of the Netgear Statements is true.[13]

## IV.    TP-LINK FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

TP-Link fails to allege its unjust enrichment claim. If the claim is based on an alleged breach of the Agreement, Delaware courts "refuse[] to permit a claim for unjust enrichment when the alleged wrong arises from a relationship governed by contract." *Rei Holdings, LLC*

---

[13] In the event this Court dismisses TP-Link's action and/or its breach of contract claim, Netgear is entitled to its fees and costs in defending this action. Ex. N § 14.3.

*v. LienClear - 0001*, 2020 WL 6544635, at *10 (D. Del. Nov. 6, 2020) (Noreika, J.). If it stems

from Netgear's alleged defamatory conduct, California does not recognize a standalone claim

for unjust enrichment. *See, e.g.*, *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th

Cir. 2015). If the claim is quasi-contract, TP-Link "has not pleaded sufficient facts to state [its]

other claims, and [its] unjust enrichment claim is derivative of those same [deficient] facts."

*See Aellis O. v. Connor*, 2022 WL 2229421, at *8 (S.D. Cal. June 21, 2022).

## V.  COUNTS III AND IV SHOULD BE STRICKEN

This Court should strike Counts III and IV pursuant to California's Anti-SLAPP Act

because: (1) Netgear has made a *prima facie* showing that "the lawsuit arises from an act in

furtherance of its First Amendment right to free speech" and (2) TP-Link will not be able to

meet its burden to "show a reasonable probability that it will prevail on its claim." *Peterson v.*

*Sutter Med. Found.*, 615 F. Supp. 3d 1097, 1107 (N.D. Cal. 2022).

### A.  Counts III and IV Arise from the Exercise of Free Speech Rights

Netgear satisfies its burden to show that Counts III and IV arise from alleged acts in

furtherance of its free speech rights for three independent reasons.

*First*, Netgear meets § 425.16(e)(2), which protects "any written or oral statement or

writing made in connection with an issue under consideration or review by a legislative,

executive, or judicial body, or any other official proceeding authorized by law." Cal. Civ. Proc.

Code § 425.16(e)(2). Whether communication is covered by (e)(2) may "be broken down into

three components: (a) was there an 'issue under consideration or review by a legislative,

executive, or judicial body'; (b) were [Netgear's] statements made 'in connection with' this

issue; and (c) [does] the cause[ ] of action pleaded by [TP-Link] 'aris[e] from' [Netgear's]

statements?" *City of Costa Mesa v. D'Alession Invs., LLC*, 214 Cal. App. 4th 358, 372–73

(2013). Counts III and IV arise from the Alleged Misstatements, which were made in

connection with an issue under consideration by legislative (congressional hearing) and

executive bodies (investigations by Department of Justice and Department of Commerce).

*Second*, Netgear meets § 425.16(e)(3), which protects "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," and *third*, it meets § 425.16(e)(4), which includes "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." The Alleged Misstatements are both written and oral statements, which TP-Link concedes are available to the public. *See, e.g.*, ¶ 62 (alleging that statements during earnings calls were "disseminated via the Internet"). Further, the Alleged Misstatements concern a public issue because they focus on a "topic of widespread, public interest" and address an "entity in the public eye." *Eliott v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d 1012, 1024 (C.D. Cal. 2022); *Rivero v. Am. Fed'n of State, Cnty., and Mun. Emps.*, 105 Cal. App. 4th 913, 919–24 (2003); *see also* ¶ 44.

**B.      TP-Link Cannot Demonstrate a Probability of Success on the Merits**

Since the Alleged Misstatements are protected by § 425.16, TP-Link must demonstrate that Counts III and IV survive the Rule 12(b)(6) standard. *See* § 425.16(b)(1); *Eliott*, 639 F. Supp. 3d at 1023 ("[T]o harmonize California's anti-SLAPP statute with the Federal Rules of Civil Procedure," district courts must conduct their "analysis under a Rule 12(b)(6) standard"). For the reasons above, TP-Link cannot demonstrate a likelihood of success.[14]

## <u>CONCLUSION</u>

For the foregoing reasons, Netgear respectfully requests the Court grant its motion.

---

[14] Netgear is "entitled to recover [its] attorney's fees and costs." § 425.16(c)(1). Even if this Court does not apply § 425.16, Delaware law entitles Netgear to its fees and costs on Counts III and IV, 10 Del. C. § 6001 *et seq.*; *see also Paucek v. Shaulis*, 349 F.R.D. 498, 513-14 (D.N.J. 2025).

OF COUNSEL:

Robert K. Hur
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
(202) 737-0500
rhur@kslaw.com

Jennifer S. Recine
Joshua E. Roberts
KING & SPALDING LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 556-2100
jrecine@kslaw.com
jroberts@kslaw.com

Dated: December 8, 2025

*/s/ Katharine L. Mowery*
  Katharine Lester Mowery (#5629)
  RICHARDS, LAYTON & FINGER, P.A.
  920 North King Street
  Wilmington, Delaware 19801
  (302) 651-7700
  mowery@rlf.com

  *Attorneys for Defendant*