## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TP-LINK SYSTEMS INC. | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 25-1396-MN |
| | ) | |
| v. | ) | **REDACTED PUBLIC VERSION** |
| | ) | **FILED: December 15, 2025** |
| NETGEAR, INC. | ) | |
| | ) | |
| Defendant. | ) | |

### EXHIBIT N TO THE DECLARATION OF JOSHUA E. ROBERTS IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS & MOTION TO STRIKE

OF COUNSEL:

Robert K. Hur
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
(202) 737-0500

Jennifer S. Recine
Joshua E. Roberts
KING & SPALDING LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 556-2100

Dated: December 8, 2025

Katharine Lester Mowery (#5629)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
mowery@rlf.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2025, I caused the foregoing document to be filed electronically with the Clerk of Court using CM/ECF which will send notification of such filing to registered participants, and further certify that I caused copies of the foregoing document to be served upon the following as indicated:

**VIA ELECTRONIC MAIL**

Brian Egan
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com

**VIA ELECTRONIC MAIL**

Gregory S. Arovas
Todd M. Friedman
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
Greg.avoras@kirkland.com
Todd.friedman@kirkland.com

Luke Dauchot
David Rokach
Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
Luke.dauchot@kirkland.com
David.rokach@kirkland.com

Yungmoon Chang
Kirkland & Ellis LLP
2049 Century Park East
Suite 3700
Los Angeles, CA 90067
(310) 552-4200
Yungmoon.chang@kirkland.com

Stephen C. DeSalvo
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
Stephen.desalvo@kirkland.com

1

RLF1 34320222v.1

*/s/ Katharine L. Mowery*
Katharine L. Mowery (#5629)

2

# EXHIBIT N

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (this "Agreement") effective as of the last date set forth on the signature page below (the "Effective Date"), is entered into by NETGEAR Inc., a Delaware corporation with a principal place of business at 350 East Plumeria Drive, San Jose, California 95134 ("**NETGEAR**") and TP-Link Systems Inc., f/k/a TP-Link USA Corporation, a California corporation with offices at 10 Mauchly, Irvine, California 92618 ("**TP-Link Inc.**").

WHEREAS, NETGEAR has sued TP-Link for patent infringement of U.S. Patent Nos. 7,936,714 (the "**'714 patent**"); 10,681,698 (the "**'698 patent**"); 10,278,179 (the "**'179 patent**"); 9,468,025 (the "**'025 patent**"); 10,327,242 (the "**'242 patent**"); 10,356,681 (the "**'681 patent**") in the U.S. International Trade Commission ("**ITC**"), *In the Matter of Certain Wi-Fi Routers, Wi-Fi Devices, Mesh Wi-Fi Network Devices, And Hardware And Software Components Thereof,* No. 337-TA-1361 (the "**ITC Case**");

WHEREAS, NETGEAR has sued TP-Link for patent infringement of the '714 patent, '698 patent, '179 patent, '025 patent, '242 patent, and '681 patent in the United States District Court for the Central District of California, *Netgear Inc. v. TP-Link Technologies, Ltd., et al.,* No. 2:23-cv-2540-MSC-AS (the "**Central District Calif. Action**");

WHEREAS, TP-Link has challenged the validity of the '698 patent asserted by NETGEAR in the *inter partes* review proceeding styled as: *TP-Link Corporation Limited f/k/a TP-Link International Ltd. v. Netgear, Inc.*, IPR2023-01469 (the "**IPR Matter**");

WHEREAS, TP-Link has challenged the validity of the '714 patent asserted by NETGEAR in the proposed *ex parte* review proceedings with Reexam Control Nos. 90/019,522 and 90/019,525 (the "**EPR Matters**");

WHEREAS, TP-Link has sued NETGEAR for patent infringement of U.S. Patent Nos. 7,636,550 (the "**'550 patent**"), 8,176,148 (the "**'148 patent**"), 8,229,357 (the "**'357 patent**"), 7,672,268 (the "**'268 patent**"), and 8,774,008 (the "**'008 patent**") in the ITC, *In the Matter of Certain Wi-Fi Access Points, Routers, Range Extenders, Controllers and Components Thereof,* No. 337-TA-1405 (the "**ITC Matter**");

WHEREAS, TP-Link has sued NETGEAR for patent infringement of the '550 patent, '148 patent, '357 patent, '268 patent, and '008 patent in the United States District Court for the Northern District of California, No. 3:24-cv-02754-TLT (the "**Northern District Calif. Infringement Action**");

WHEREAS, TP-Link has sued NETGEAR for breach of contract and declaratory judgment of an alleged RAND licensing obligation in the United States District Court for the Northern District of California, *TP-Link Corporation PTE Ltd. et al. v. Netgear,* No. 24-cv-3478-PCP (the "**Northern District Calif. SEP Action**"); and

WHEREAS, to avoid the expense and uncertainty of litigation, the Parties have

Docusign Envelope ID: 8A946D8E-5317-4E5D-BPDB-FFAB615CE8E8

agreed to resolve these disputes pursuant to the terms of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises and obligations recited herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. DEFINITIONS

(a) **"Affiliate"** means any entity that at any time during the Term Controls, is Controlled by, or is under common Control with, a Party.

(b) **"Business Day"** means any day Monday through Friday, United States Eastern time, when banks in New York City are open for business.

███████████████████████████████████████████████████████

(d) **"Claims"** means claims, counterclaims, answers, cross-claims and any judicial, administrative or other proceeding of any kind in any jurisdiction, as well as any and all actions, causes of action, defenses, duties, attorneys' fees, costs, damages, debts, demands, expenses, liabilities, losses, obligations, proceedings, and suits of every kind and nature, liquidated or unliquidated, fixed or contingent, in law, equity, or otherwise, whether asserted or unasserted, whether presently known or unknown, whether anticipated or unanticipated, and whether direct or derivative.

(e) **"Control"** means the legal, beneficial, or equitable ownership or control of more than fifty percent (50%) of the voting power, equity, or other ownership interest in an entity.

(f) **"Lawsuits"** means the (i) ITC Case, (ii) the Central District Calif. Action, (iii) the ITC Matter, (iv) the Northern District Calif. Infringement Action, and (v) the Northern District Calif. SEP Action.

(g) **"Licensed Patents"** means all Patents that each Licensor Party or any of its Related Entities owns or controls at any time during the Term with a first effective filing date anywhere in the world on or before the Effective Date, including the Patents asserted in the Lawsuits and the Patent Families of all of the foregoing.

(h) **"Licensee Party"** means a Party in its role being granted a license under Section 5.

(i) **"Licensor Party"** means a Party in its role granting a license under Section 5.

███████████████████████████████████████████████████████



(k) "**Patent Family**" means with respect to any Patent, all Patents claiming priority to any such Patent or from which such Patent claims priority.

(l) "**Patents**" means: (a) all patents and patent applications in any country or supranational jurisdiction worldwide; (b) all applications claiming priority to any such patent or patent application or any substitutions, divisionals, continuations, continuations-in-part, reissues, renewals, registrations, confirmations, re-examinations, extensions, supplementary protection certificates and the like of any such patents or patent applications; and (c) foreign counterparts of any of the foregoing.

(m) "**Related Entities**" means all present and future Affiliates of a Party and their and its respective predecessors, and permitted successors and assigns.

(n) "**Term**" shall mean the period commencing upon the Effective Date and continuing until the expiration of the last-to-expire Patent that is or could be a Licensed Patent or the termination of all of the covenants set forth in Section 6 or Section 8, whichever is later.

(o) "**TP-Link**" means TP-Link Systems Inc., f/k/a TP-Link USA Corporation, a California corporation with offices at 10 Mauchly, Irvine, California 92618; TP-Link Corporation PTE Ltd., a Singapore corporation with offices at 7 Temasek Boulevard, #29-03 Suntec Tower One, Singapore 038987; Lianzhou International Co., Ltd., Lianzhou Building, No. 12 Cuixi Road, Science and Technology Park Community, Yuehai Street, Nanshan District, Shenzhen; TP-Link Corporation Limited f/k/a TP-Link International Limited, a Hong Kong corporation with offices located at Room 901, 9/F. New East Ocean Centre, 9 Science Museum Road, Tsim Sha Tsui, Kowloon, Hong Kong; TP-Link Research Institute USA Corp.; TP-Link Research America Corp. 245 Charcot Ave., San Jose, CA 95131; and Diamond Creek Global Limited and Ivy Grove Limited (a subsidiary of Diamond Creek Global Limited), which are British Virgin Islands corporations.

2. PAYMENTS

2.1        License Fee. TP-Link Inc., a California corporation, shall pay to NETGEAR the sum of one hundred thirty-five million U.S. dollars (US $135,000,000) (the "**Settlement Payment**") on or before the tenth Business Day after the Effective Date (the "**Payment Date**").

2.2    Means of Payment. TP-Link Inc. shall make the Settlement Payment via wire transfer in immediately available funds to the following account for the benefit of NETGEAR:

For Wire Transfers:



For ACH Credit:

TP-Link may contact the following person to verify the above information in relation to completing the wiring of the consideration to NETGEAR:



3.  DISMISSALS

Within two (2) Business Days after receipt by NETGEAR of the Settlement Payment: (a) the Parties shall jointly request termination of the IPR Matter, or in the event the Board does not terminate proceedings, TP-Link shall withdraw from the IPR Matter, and shall not participate in the EPR Matters; (b) the Parties shall file appropriate motions to the relevant courts to dismiss all Claims and counterclaims in the Lawsuits with prejudice, including with regard to all asserted patents, Claims, and defenses; and (c) the Parties shall file appropriate motions to terminate the Lawsuits pending in the ITC.

4. RELEASES



A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

5. LICENSE



6.  COVENANT NOT TO SUE.

   6.1    TP-Link Covenant.
   
   Nothing in this Section 6.1 prevents TP-Link or its Related Entities, with respect to any third party activities, from complying with discovery requests, testifying at depositions, serving as a witness, or engaging in other activities in response to the requests of any governmental body or in accordance with applicable laws or regulations or that TP-Link or any of its Related Entities is otherwise legally obligated or compelled to participate in or provide.

   6.2    NETGEAR Covenant.
   
   Nothing in this Section 6.2 prevents NETGEAR or its Related Entities, with respect to any third party activities, from complying with discovery requests, testifying at depositions, serving as a witness, or engaging in other activities in response to the requests of any governmental body or in accordance with applicable laws or regulations or that NETGEAR or any of its Related Entities is otherwise legally obligated or compelled to participate in or provide.

7.  TERMINATION

Neither this Agreement nor any of the rights, licenses, covenants, and releases granted by each Licensor Party (on its own behalf or on behalf of its Related Entities) hereunder may be terminated for any reason, and no Party shall have the right to seek rescission of this Agreement or any other remedy that seeks to invalidate, terminate, void, or undo this Agreement. Notwithstanding the foregoing, if and only if TP-Link does not pay the Settlement Payment by the Payment Date and does not cure such breach within ten (10) Business Days after written notice thereof from

NETGEAR, then NETGEAR shall be entitled to terminate this Agreement upon written notice and in such event the releases will be considered rescinded.

## 8. RESTRICTIVE COVENANTS



Each Party agrees that it (and its successors, assigns, transferees, employees, and agents to the extent acting on behalf of such Party) will not make or publish any disparaging or derogatory statement regarding the other Party (or its successors, assigns, transferees, or employees), including, without limitation, untrue statements about a Party, its structure, its ownership, or its actions that are intended to falsely characterize the nature of a Party's corporate nature and commercial practices. For the avoidance of doubt, nothing in this clause shall restrict any Party from making factually true statements that comply with the Parties' confidentiality obligations under this Settlement Agreement.

## 9. VALIDITY CHALLENGES



## 10. CONFIDENTIALITY

The terms of this Agreement are confidential. None of the Parties or their Related Entities or their directors, accountants, legal counsel, tax advisors or other financial and legal advisors may issue a press release or other public announcement (except for the limited exceptions set forth below in this Section 10) or promotion regarding this Agreement, or the transactions contemplated herein. No Party shall, and none of their directors, accountants, legal counsel, tax advisors or other financial and legal advisors shall, disclose the terms of this Agreement without the other Party's written consent (other than to its Related Entities subject to obligations of confidentiality at least as stringent as those contained herein) except:

      (i)     to any governmental body having jurisdiction and specifically requiring such disclosure;

(ii)    in response to a subpoena or as otherwise may be required by law;

(iii)    in confidence, to a Party's directors, accountants, legal counsel, tax advisors and other financial and legal advisors;

(iv)    as required during the course of litigation and subject to a protective order; provided, however, that any production under a protective order would be protected under an "Outside Attorneys' Eyes Only" designation prohibiting disclosure to in-house counsel or higher confidentiality designation, which higher confidentiality designation, for the avoidance of doubt, must be at least as restrictive as "Outside Attorneys' Eyes Only";

(v)    for the purposes of disclosure in connection with the Securities and Exchange Act of 1934, as amended, the Securities Act of 1933, as amended, and any other reports or disclosures filed with the Securities and Exchange Commission or other financial regulatory authorities or securities exchanges, or any other filings, reports or disclosures that may be required under applicable laws or regulations, and answering questions and discussing the same with financial analysts and investors, provided that the Parties agree that such disclosures shall be as narrowly tailored as may be permissible under applicable law as determined by the Party's financial and legal advisors;

(vi)    with obligations of confidentiality at least as stringent as those contained herein, to a counterparty in connection with a proposed merger, acquisition, financing or similar transaction or a proposed exclusive license, sale, or transfer of rights to the Licensed Patents;

(vii)    as required in connection with motions to terminate the Lawsuits; and

(viii)    as required to enforce the terms of this Agreement.

provided, however, that prior to any disclosure pursuant to paragraphs (i), (ii), (iv) or (v) the Party making any such disclosure shall: (a) take reasonable actions in an effort to minimize the nature and extent of such disclosure; and (b) provide at least ten (10) days advance written notice to the other Party of such disclosure pursuant to paragraphs (i), (ii), or (iv), and at least two (2) days advance written notice pursuant to paragraph (v). Nothing in this provision shall impose obligations on the Parties that would be contrary to or impede compliance with their obligations under any applicable law or rule, or shall restrict the Parties, their directors, accountants, legal counsel, tax advisors, and other financial and legal advisors, from disclosing information that is already publicly known through no fault of the disclosing Party, provided that disclosures made under Section 10(v) or (vii) shall not be made the subject of press releases or other public announcements or promotions by the Parties or their Related Entities or their directors, accountants, legal counsel, tax advisors or other financial and legal advisors.

11. ASSIGNMENT

Docusign Envelope ID: 8A946D8F-5317-4E5D-BDDB-FFAB615CE658



## 12. REPRESENTATIONS AND WARRANTIES

12.1     <u>Mutual Representations and Warranties</u>. Each Party represents and warrants that as of the Effective Date: (a) it is duly existing; (b) it has the full corporate power and authority to enter into this Agreement on behalf of itself and its Related Entities and to cause its Related Entities to grant the releases, licenses, and covenants hereunder; (c) there are no other persons or entities whose consent to this Agreement or whose joinder is necessary to make fully effective the provisions of this Agreement; and (d) this Agreement does not and will not violate or conflict with any other agreement to which it is a party. Each Party covenants that it will not enter into any agreement the execution or performance of which would violate or conflict with this Agreement.

12.2     <u>Additional Representations and Warranties by Licensor Party</u>. Each Licensor Party represents and warrants that as of the Effective Date: (a) it or a Related Entity is the sole and exclusive owner of all rights, title, and interest in the Licensed Patents, including all rights to recover for alleged infringement of the same; (b) neither it nor any of its Related Entities has sold, assigned, transferred, hypothecated, pledged, or encumbered, or otherwise disposed of, in whole or in part, voluntarily or involuntarily, any Claims purported to be released by this Agreement; and (c) neither it nor any of its Related Entities have participated in any way (directly or indirectly) in any transaction the purpose or effect of which is to avoid or prevent Licensee Party and its Related Entities, or their customers from receiving or enjoying any part of the benefit of any of the rights, licenses, covenants, or releases provided for in this Agreement.

12.3     <u>Limitations</u>. Nothing in this Agreement is or will be construed as: (a) a warranty or representation as to the validity, scope or enforceability of the Licensed Patents; (b) any warranty or representation that anything made, used, sold, offered for sale, or otherwise disposed of under any license granted in this Agreement is or will be free from infringement of patents, copyrights, and other rights of third parties; (c) an obligation on the part to bring or prosecute actions or suits against third parties for infringement; or (d) an obligation to proceed with the prosecution of any pending patent application or maintenance of any patent.

## 13. WARRANTY DISCLAIMERS

13.1     EXCEPT FOR THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN SECTION 12, THE PARTIES MAKE NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED.

13.2     Any warranty made by Licensee Party or any of its Related Entities to its customers or other third parties will be the sole responsibility of that Licensee Party and its Related Entities

Docusign Envelope ID: 8A946D8F-5317-4E5D-BDDB-FFAB615CE658

and will not bind the Licensor Party or be deemed or treated as having been made by the Licensor Party.

## 14. GENERAL PROVISIONS

14.1        <u>Independent Counsel</u>. Each Party warrants to the other Party that it has carefully read this Agreement, knows its contents, and has freely executed it. Each Party, by execution of this Agreement, represents that it has reviewed each term of this Agreement with its legal counsel and that it will not deny the validity of any term of this Agreement on lack of advice of counsel. Each Party represents and agrees that in entering into this Agreement, the Party has relied solely on the terms and conditions expressed within the four corners of this Agreement, the Party's own business judgment, and the Party's own investigation of the facts and circumstances that relate to this Agreement and the Parties' negotiations.  Each Party represents and agrees that it has not relied on and hereby waives any right to rely on any verbal or written representation, understanding, condition, statement, or other communication that is not executed it. No rule of construction to the effect that any ambiguities in this Agreement are to be construed against the drafting Party will apply in the interpretation of this Agreement.

14.2        <u>Notices</u>. Notices under this Agreement will be sent by overnight mail or courier, return receipt or other proof of delivery requested, with a copy of the notice sent by email, to the following:

If to TP-Link:

> TP-Link Systems Inc.
> 10 Mauchly
> Irvine, California 92618
>
> ███████████████████

With a copy, which will not constitute notice, to:

> Kirkland & Ellis LLP
> Attn: Todd Friedman
> 601 Lexington Avenue
> New York, NY 10022
> tfriedman@kirkland.com

If to NETGEAR:

> Netgear
> 350 East Plumeria Drive
> San Jose, CA 95134
>
> ███████████████████████

With a copy, which will not constitute notice, to:

> Latham and Watkins LLP

Attn: Kevin Wheeler
555 Eleventh Street
Washington, DC 20004, USA
kevin.wheeler@lw.com

14.3       Governing Law; Jurisdiction. This Agreement will be interpreted in accordance with and governed by federal law, where applicable, and the laws of the State of Delaware, without giving effect to any choice of law rules. All disputes and litigation regarding this Agreement and matters connected with its performance will be subject to the exclusive jurisdiction of the state and federal courts in the State of Delaware, and each Party irrevocably consents and submits to personal jurisdiction in those courts for purposes of this Agreement. The prevailing Party in any lawsuit to enforce this Agreement shall be entitled to recover its fees and costs.

14.4       Injunctive Relief. The Parties acknowledge and agree that: (a) any breach of this Agreement or any infringement may result in immediate and irreparable injury for which there is no adequate remedy available at law; and (b) in addition to any other remedies available, specific performance and injunctive relief are appropriate remedies to compel performance of this Agreement or cease infringement, as applicable, without the necessity of posting a bond or making a showing of irreparable harm.

14.5       Entire Agreement. This Agreement contains all the agreements, representations, and understandings of the Parties and supersedes any previous understandings, commitments, representations or agreements, verbal or written, with respect to the subject matter of this Agreement.

14.6       Modification. This Agreement may not be modified or amended except in a written document signed by a duly authorized representative of each Party that expressly states the sections of this Agreement to be modified; no other act, usage, or custom will be deemed to amend or modify this Agreement. Each Party hereby waives any right it may have to claim that this Agreement was subsequently modified other than in accordance with this Section.

14.7       No Waiver. No failure to exercise, and no delay in exercising, any right will operate as a waiver; nor will any single or partial exercise of a right preclude any further exercise of that right or the exercise of any other right. The waiver by a Party of a breach of this Agreement will not constitute a waiver of any other breach.

14.8       Remedies Cumulative. Each remedy of a Party is cumulative with each other remedy contained in this Agreement and with all other remedies available to that Party at law, in equity, and otherwise, and no pursuit of any particular remedy will constitute an exclusive election of any particular remedy.

14.9       Severability. The Parties intend that if a court holds that any provision or part of this Agreement is invalid or unenforceable, the court will modify that provision or part to the minimum extent necessary to make it valid and enforceable, or if it cannot be made valid and enforceable, will sever and delete that part. That modification or severance will not affect the validity or enforceability of the remainder of this Agreement, which will continue in full force and

Docusign Envelope ID: 8A946D8F-5317-4E5D-BDDB-FFAB615CE658

effect. The Parties agree to negotiate in good faith an enforceable substitute provision for any invalid, illegal, or unenforceable provision that most nearly achieves the intent of the provision.

14.10      Construction of this Agreement. The word "including" is not intended to be exclusive and means "including, but not limited to." The word "or" is not intended to be exclusive unless the context clearly requires otherwise.

14.11      Successors to Licensed Patents. The Licensed Patents will be burdened by the terms contained in this Agreement, including the release, licenses, and covenant not to sue, and these terms will apply to, and be binding on, any successor, assignee, or transferee of any of the Licensed Patents and will continue to be enjoyed by the Party (and its Related Entities) that enjoyed and benefitted from them prior to the assignment or transfer, notwithstanding any future assignment or transfer of any of the Licensed Patents.

14.12      No Admissions. The terms and conditions of the Agreement, including any payments made hereunder, are for the purpose of settlement only. Neither the fact of a Party's entry into this Agreement nor the terms hereof nor any acts undertaken pursuant hereto shall constitute an admission or concession by either Party of liability or wrongdoing on the part of such Party. Neither the fact of a Party's entry into this Agreement nor the terms hereof nor any acts undertaken pursuant hereto shall be offered or admitted in evidence in any legal proceeding against any Party other than one to enforce rights and obligations arising out of this Agreement.

14.13      Counterparts; Electronic Copies. This Agreement may be signed in one or more counterparts, each of which is an original, and all of which together constitute only one agreement between the Parties. Delivery of an executed counterpart by facsimile, electronic mail in portable document format (.pdf), or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, has the same effect as delivery of an executed original of this Agreement.

[Signature Page Follows]

**Netgear Inc.**



Date: 8-27-24

**TP-Link Systems Inc., f/k/a TP-Link USA Corporation**

Date: 8/28/2024