IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TP-LINK SYSTEMS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-1396 (MN) |
| | ) | |
| NETGEAR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF TP-LINK SYSTEMS INC.'S OPPOSITION TO
DEFENDANT NETGEAR, INC.'S MOTION TO DISMISS AND MOTION TO STRIKE**

OF COUNSEL:

Gregory S. Arovas
Todd M. Friedman
Rachel M. Fritzler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Yungmoon Chang
KIRKLAND & ELLIS LLP
695 Town Center Drive, Suite 1700
Costa Mesa, CA 92626
(310) 552-4200

David Rokach
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000

Stephen C. DeSalvo
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004
(202) 389-5000

December 23, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS.................. 1

II.   SUMMARY OF THE ARGUMENT ................................................................ 2

III.  STATEMENT OF FACTS ........................................................................... 2

IV.   LEGAL STANDARD.................................................................................. 3

V.    ARGUMENT ............................................................................................. 3

     A.    TP-Link Has Sufficiently Pled a Lanham Act Claim. .......................................... 3

     B.    TP-Link Has Sufficiently Pled Defamation. ....................................... 15

     C.    TP-Link Has Sufficiently Pled a Claim for Breach of Contract. ......................... 22

     D.    TP-Link Has Adequately Pled a Claim for Unjust Enrichment........................... 24

     E.    California's Anti-SLAPP Law Does Not Apply to TP-Link's Complaint. .......... 25

VI.   CONCLUSION........................................................................................ 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*,
    581 F. Supp. 2d 654 (D. Del. 2008).................................................................7

*Advanced Fluid Sys., Inc. v. Huber*,
    28 F. Supp. 3d 306 (M.D. Pa. 2014), *aff'd,* 958 F.3d 168 (3d Cir. 2020) ................................5

*Aellis O. v. Connor*,
    C.A. No. 22-200, 2022 WL 2229421 (S.D. Cal. June 21, 2022)......................................24, 25

*Allergan, Inc. v. Merz Pharms., LLC*,
    No. SACV 11-446 AG (EX), 2011 WL 13323246 (C.D. Cal. Nov. 14, 2011)........................6

*Alstrin v. St. Paul Mercury Ins. Co.*,
    179 F. Supp. 2d 376 (D. Del. 2002)...............................................................23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................3

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ................................................................24

*Auluck v. Cnty. of Alameda*,
    C.A. No. 13-5511, 2014 WL 631142 (N.D. Cal. Feb. 18, 2014) ...........................................25

*Baez v. JetBlue Airways*,
    745 F. Supp. 2d 214 (E.D.N.Y. 2010) .........................................................21, 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................3

*Boone v. Newsweek LLC*,
    C.A. No. 22-1601, 2023 WL 2245104 (E.D. Pa. Feb. 27, 2023) ...........................................17

*Boule v. Hutton*,
    328 F.3d 84 (2d Cir. 2003)................................................................11

*Bull. Displays, LLC v. Regency Outdoor Advert., Inc.*,
    448 F. Supp. 2d 1172 (C.D. Cal. 2006) .......................................................25

*CareDx, Inc. v. Natera, Inc.*,
    C.A. No. 19-662-CFC-CJB, 2019 WL 7037799 (D. Del. Dec. 20, 2019), *R&R*
    *adopted*, 2020 WL 401773 (D. Del. Jan. 24, 2020)....................................13, 14, 15

ii

*Carroll v. Trump*,
   680 F. Supp. 3d 491 (S.D.N.Y. July 5, 2023) ........................................................................20

*Cipla USA, Inc. v. Ipsen Biopharmaceuticals, Inc.*,
   C.A. No. 22-552-GBW, 2023 WL 4013542 (D. Del. June 15, 2023) ....................................13

*Cipla USA, Inc. v. Ipsen Biopharmaceuticals, Inc.*,
   C.A. No. 22-552-GBW-SRP, 2024 WL 307699 (D. Del. Jan. 26, 2024)...................4, 5, 6, 12

*Computer Aid, Inc. v. Hewlett-Packard Co.*,
   56 F. Supp. 2d 526 (E.D. Pa. 1999) .....................................................................................16

*Cooper v. Bellasalma*,
   C.A. No. 24-832 (MN), 2025 WL 1397004 (D. Del. May 14, 2025).................................7, 12

*Counterman v. Colorado*,
   600 U.S. 66 (2023) ..............................................................................................................11

*Crawford v. Syngenta Crop Prot., LLC*,
   No. N22C-04-006, 2024 WL 2831554 (Del. Super. Ct. May 31, 2024) ................................25

*Cytotheryx, Inc. v. Castle Creek Biosciences, Inc.*,
   No. 2023-1142-PAW, 2025 WL 3142373 (Del. Ch. Nov. 10, 2025) .....................................15

*Delux Cab, LLC v. Uber Techs., Inc.*,
   C.A. No. 16-3057-CAB-JMA, 2017 WL 1354791 (S.D. Cal. Apr. 13, 2017) .......................11

*Deston Therapeutics LLC v. Trigen Lab'ys Inc.*,
   723 F. Supp. 2d 665 (D. Del. 2010).......................................................................................10

*Est. of Long v. Wilmington Sav. Fund Soc'y, FSB*,
   C.A. No. 25-358 (MN), 2025 WL 2337994 (D. Del. Aug. 13, 2025) .....................................3

*Farmland Partners Inc. v. Rota Fortunae*,
   C.A. No. 18-2351-KLM, 2020 WL 12574993 (D. Colo. May 15, 2020)................................22

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)..................................................................................................22

*In re Gabapentin Pat. Litig.*,
   649 F. Supp. 2d 340 (D.N.J. 2009) .......................................................................................13

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974)..............................................................................................................16

*Gertz v. Robert Welch, Inc.*,
   680 F.2d 527 (7th Cir. 1982) ................................................................................................19

*Giove v. Holden*,
   C.A. No. 11–735–SLR–SRF, 2012 WL 2357586 (D. Del. June 19, 2012)............................22

*Grewal v. Jammu*,
   191 Cal. App. 4th 977 (Cal. Ct. App. 2011) ...........................................................................25

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989)................................................................................................................17

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
   276 F.3d 160 (3d Cir. 2001).......................................................................................................7

*Huckabee v. Time Warner Entm't Co.*,
   19 S.W.3d 413 (Tex. 2000)......................................................................................................18

*Hutchison v. Proxmire*,
   443 U.S. 111 (1979)................................................................................................................18

*Interlink Prods. Int'l, Inc. v. F & W Trading LLC*,
   C.A. No. 15-1340 (MAS) (DEA), 2016 WL 1260713 (D.N.J. Mar. 31, 2016)......................10

*Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer
   Pharms., Inc.*,
   19 F.3d 125 (3d Cir. 1994).........................................................................................................8

*Kanarek v. Bugliosi*,
   108 Cal. App. 3d 327 (Ct. App. 1980).....................................................................................21

*Kimberly-Clark Worldwide, Inc. v. Cardinal Health 200, LLC*,
   C.A. No. 11-1228-RGA, 2012 WL 3063974 (D. Del. July 27, 2012)......................................13

*U.S. ex rel. Knisely v. Cintas Corp.*,
   298 F.R.D. 229 (E.D. Pa. 2014)..................................................................................................5

*La Liberte v. Reid*,
   966 F.3d 79 (2d Cir. 2020).......................................................................................................25

*Marfione v. KAI U.S.A., Ltd.*,
   C.A. No. 17-70, 2018 WL 1519042 (W.D. Pa. Mar. 28, 2018)................................................12

*Masterworks, LLC v. Doe*,
   No. N25C-06-243 FWW, 2025 WL 3515947 (Del. Super. Ct. Dec. 8, 2025) .......................20

*McNulty v. Citadel Broad. Co.*,
   58 F. App'x 556 (3d Cir. 2003) ...............................................................................................14

*MIG Invs. LLC v. Aetrex Worldwide, Inc.*,
   852 F. Supp. 2d 493 (D. Del. 2012).........................................................................................24

*Milkovich v. Lorain J. Co.*,
   497 U.S. 1 (1990) ............................................................................................................ 20

*Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*,
   No. 16 CIV. 3645 (KPF), 2017 WL 3129799 (S.D.N.Y. July 21, 2017) ............................... 9

*Mitchell v. Superior Ct.*,
   37 Cal. 3d 268 (1984) ....................................................................................................... 22

*Mkt. Am., Inc. v. Google, Inc.*,
   No. C.A. 09-494-GMS, 2011 WL 1485616 (D. Del. Apr. 19, 2011) ................................... 15

*Monsanto Co. v. Syngenta Seeds, Inc.*,
   443 F. Supp. 2d 648 (D. Del. 2006) ..................................................................................... 7

*N. Atl. Imports, LLC v. Loco-Crazy Good Cookers, Inc.*,
   C.A. No. 23-999-GBW-SRF, 2024 WL 245955 (D. Del. Jan. 23, 2024), *R&R
   adopted*, 2024 WL 3342309 (D. Del. Apr. 15, 2024) ................................................... 13, 15

*Neurvana Med., LLC v. Balt USA, LLC*,
   No. 19 Civ. 034, 2020 WL 949917 (Del. Ch. Feb. 27, 2020) ............................................. 23

*NY Mach. Inc. v. Korean Cleaners Monthly*,
   C.A. No. 17-12269, 2018 WL 2455926 (D.N.J. May 31, 2018) ............................................ 7

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000) ............................................................................................... 11

*Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*,
   C.A. No. 20-662-RGA, 2021 WL 2188219 (D. Del. May 28, 2021) ..................................... 4

*Peterson v. Sutter Med. Found.*,
   615 F. Supp. 3d 1097 (N.D. Cal. 2022) .............................................................................. 25

*PlymoVent Corp. v. Air Tech. Sols., Inc.*,
   C.A. No. 05-1023 (JEI), 2007 WL 9782710 (D.N.J. May 4, 2007) ..................................... 10

*Rei Holdings, LLC v. LienClear - 0001*,
   C.A. No. 18-1401 (MN), 2020 WL 6544635 (D. Del. Nov. 6, 2020) ................................... 24

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
   632 F. Supp. 2d 362 (D. Del. 2009) .................................................................................... 12

*Roe v. Patterson*,
   707 S.W.3d 94 (Tex. 2025) ................................................................................................. 22

*Rosado v. eBay Inc.*,
   53 F. Supp. 3d 1256 (N.D. Cal. 2014) ................................................................................ 24

*Ryanair DAC v. Booking Holdings Inc.*,
C.A. No. 20-1191-WCB, 2023 WL 2867476 (D. Del. Apr. 7, 2023)......................................17

*Schiavone Const. Co. v. Time, Inc.*,
847 F.2d 1069 (3d Cir. 1988).................................................................................................19

*Shahid Buttar for Cong. Comm. v. Hearst Commc'ns, Inc.*,
C.A. No. 21-5566-EMC, 2022 WL 1215307 (N.D. Cal. Apr. 25, 2022) ..............................22

*Shure Inc. v. Clearone, Inc.*,
C.A. No. 19-1343-RGA-CJB, 2020 WL 2839294 (D. Del. June 1, 2020), *R&R adopted sub nom*, *Shure Inc. v. Clearone, Inc.*, 2020 WL 8258362 (D. Del.
June 18, 2020)........................................................................................................................3, 9

*Smartmatic USA Corp. v. Newsmax Media, Inc.*,
No. N21C-11-028 EMD, 2023 WL 1525024 (Del. Super. Ct. Feb. 3, 2023).........................17

*SoClean, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2023 WL 8006602 (W.D.
Pa. Nov. 17, 2023) .....................................................................................................................6

*Spence v. Funk*,
396 A.2d 967 (Del. 1978) ........................................................................................................21

*In re Syngenta AG MIR 162 Corn Litig.*,
131 F. Supp. 3d 1177 (D. Kan. 2015)...................................................................................5, 6

*Synygy, Inc. v. Scott-Levin, Inc.*,
51 F. Supp. 2d 570 (E.D. Pa. 1999), *aff'd*, 229 F.3d 1139 (3d Cir. 2000)...............................7

*Technoprobe S.p.A. v. Formfactor, Inc.*,
C.A. No. 23-842-JCG, 2024 WL 2271885 (D. Del. May 20, 2024) .........................................8

*TexasLDPC Inc. v. Broadcom Inc.*,
No. CV 18-1966-RGA, 2020 WL 1285916 (D. Del. Mar. 18, 2020).......................................4

*ThermoLife Int'l LLC v. Sparta Nutrition LLC*,
C.A. No. C19-01715-PHX-SMB, 2020 WL 248164 (D. Ariz. Jan. 16, 2020).......................14

*Time, Inc. v. Firestone*,
424 U.S. 448 (1976)................................................................................................................16

*Toptal, LLC v. Bloomberg L.P.*,
No. N25C-01-266 FJJ, 2025 WL 2172609 (Del. Super. Ct. July 31, 2025)...........................21

*Travelers Cas. & Sur. Co. of Am v. Blackbaud, Inc.*,
No. N22C-12-130 KMM, 2024 WL 1298762 (Del. Super. Ct. Mar. 27, 2024).....................23

*Trevino v. Merscorp, Inc.*,
    583 F. Supp. 2d 521 (D. Del. 2008)............................................................................24

*Tull v. Higgins*,
    C.A. No. 21-1566-DMR, 2021 WL 6116971 (N.D. Cal. Dec. 27, 2021)...............................22

*US Dominion, Inc. v. Fox News Network, LLC*,
    No. N21C-03-257 EMD, 2023 WL 568869 (Del. Super. Ct. Jan. 27, 2023) .........................16

*US Dominion, Inc. v. Newsmax Media, Inc.*,
    No. N21C-08-063 EMD, 2025 WL 1092289 (Del. Super. Ct. Apr. 9, 2025).........................19

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3d Cir. 2007)....................................................................................3

*Walker v. Seyfer*,
    C.A. No. 24-223-DCLC-CRW, 2025 WL 3211223 (E.D. Tenn. Nov. 17,
    2025) ...............................................................................................................20

*Westmoreland v. CBS, Inc.*,
    596 F. Supp. 1170 (S.D.N.Y.1984)............................................................................18

*Woods Servs., Inc. v. Disability Advocs., Inc.*,
    C.A. No.18-296, 2018 WL 2134016 (E.D. Pa. May 9, 2018) ...............................................17

*Wrinkl, Inc. v. Facebook, Inc.*,
    No. 20-CV-1345-RGA, 2021 WL 4477022 (D. Del. Sept. 30, 2021) .....................................10

**Statutes**

15 U.S.C. § 1125(a)(1)(B) .................................................................................................4

**Rules**

Fed. R. Civ. Proc. 8(d)(2) ...............................................................................................24

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Rather than compete fairly with TP-Link in the Wi-Fi router market, Netgear has orchestrated a smear campaign in which it delivers the false and inflammatory message that TP-Link's products are untrustworthy and that consumers should avoid them as security risks. TP-Link's Complaint sets forth detailed allegations regarding Netgear's unsubstantiated assertions, explaining how Netgear has conveyed its disparaging claims about TP-Link both directly—through statements that Netgear's CEO, C.J. Prober, made on multiple earnings calls with the public—and indirectly, by enlisting prominent industry commentators as mouthpieces for its unfounded claims. Netgear's deceptive statements constitute false advertising under the Lanham Act, are defamatory, and violate the express non-disparagement clause in a contract between the parties. Because Netgear's malicious misrepresentations have caused significant harm to TP-Link's business and reputation, TP-Link filed this lawsuit to end Netgear's unfounded smears.

In its motion to dismiss and strike (D.I. 16) ("Mot."), Netgear offers unreasonable arguments to try to escape liability for its damaging statements. For example, Netgear seeks dismissal of TP-Link's Lanham Act claim by asserting that Mr. Prober's disparaging comments were directed at TP-Link's trustworthiness as a company, not the trustworthiness of TP-Link's products. Yet, Netgear's CEO expressly cast doubt on the security of TP-Link's networking equipment and delivered the clear message that consumers should distrust TP-Link's ***products*** due to the company's supposed connections to China. Netgear also seeks to avoid the force of TP-Link's Lanham Act and defamation claims by asserting that Mr. Prober simply repeated information from third-party reports. Yet, Netgear's CEO consistently mispresented the reports' contents. The disconnect between the actual information in these third-party sources and Mr. Prober's repeated mischaracterizations of them confirms both the falsehood of his statements and, (although it is not required) that he acted with actual malice. Regarding TP-Link's breach-of-

1

contract claim, Netgear unconvincingly argues that the broad non-disparagement clause should not be enforced here because the parties' contract was limited to resolving a patent dispute. That implausible argument suggests Netgear recognizes TP-Link has it dead to rights on the contract claim. For these and the other reasons discussed below, TP-Link respectfully asks the Court to deny Netgear's baseless motion.

## II.    SUMMARY OF THE ARGUMENT

For purposes of evaluating Netgear's motion to dismiss, TP-Link's well-pled factual allegations must be accepted as true. At best, Netgear has raised factual disputes regarding some of the allegations. But resolving such disputes is precisely what discovery is for. They do not constitute grounds for dismissal at the pleading stage, particularly where all reasonable inferences must be made in TP-Link's favor. Netgear's motion to strike pursuant to Cal. Civ. Proc. Code § 425.16 fails for at least the same reason. Because TP-Link has more than met its burden to state each claim set forth in the Complaint (D.I. 1) ("¶"), Netgear's motion should be denied.

## III.    STATEMENT OF FACTS

TP-Link is a U.S.-based company headquartered in California and competes with Netgear in the U.S. market for Wi-Fi routers. TP-Link is the established market leader, offering high-performance, reasonably-priced products with advanced security features. ¶¶ 1–2, 15–21.

In 2024, Netgear and TP-Link entered into a contract (the "2024 Agreement") that, among other provisions, expressly prohibits Netgear from "mak[ing] or publish[ing] any disparaging or derogatory statement regarding [TP-Link], including, without limitation, untrue statements about [TP-Link], its structure, its ownership, or its actions that are intended to falsely characterize the nature of [TP-Link's] corporate nature and commercial practices." D.I. 19 § 11. Nevertheless, in a series of earning calls in 2025, Netgear's CEO, Mr. Prober, repeatedly accused TP-Link of being a Chinese government-controlled company whose products are designed to facilitate Chinese

cyberattacks. ¶¶ 29–41. At the same time, a pattern emerged of prominent industry commentators making similar false statements. ¶¶ 26–27. These statements are consistent with Netgear's disparaging messaging and indicate a coordinated campaign to smear TP-Link. ¶¶ 26–41.

Netgear's CEO expressly acknowledged the harm this negative messaging has inflicted on TP-Link, noting on an earnings call that Netgear was "winning some pretty big deals that may have previously not gone [its] way because of that," and adding, "I think all the messaging out there [regarding TP-Link] is actually helping us win with customers." ¶ 41. Faced with this significant harm to its business and reputation, TP-Link filed the present suit for false advertising, defamation, and breach of contract.

## IV.    LEGAL STANDARD

Under Rule 12(b)(6), a court should deny a motion to dismiss where the pleadings "state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts "accept[] all well-pleaded factual allegations in the Complaint as true and view[] them in the light most favorable to the plaintiff." *Est. of Long v. Wilmington Sav. Fund Soc'y, FSB*, C.A. No. 25-358 (MN), 2025 WL 2337994, at *1 (D. Del. Aug. 13, 2025). A claim is sufficient if it "raise[s] a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact)." *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007), as amended (Nov. 20, 2007).

## V.    ARGUMENT

### A.    TP-Link Has Sufficiently Pled a Lanham Act Claim.

#### 1.    Rule 8(a), Not Rule 9(b), Governs TP-Link's Lanham Act Allegations.

Netgear incorrectly asserts that Rule 9(b)'s heightened pleading standard applies to TP-Link's Lanham Act claim. Yet, "the Third Circuit has never . . . held" that Rule 9(b) applies to Lanham Act false advertising claims. *Shure Inc. v. Clearone, Inc.*, C.A. No. 19-1343-RGA-CJB,

2020 WL 2839294, at *5 n.4 (D. Del. June 1, 2020), *R&R adopted sub nom*, *Shure Inc. v. Clearone, Inc.*, 2020 WL 8258362 (D. Del. June 18, 2020). Moreover, courts in this District have held Rule 9(b) does **not** apply. *See, e.g.*, *Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*, C.A. No. 20-662-RGA, 2021 WL 2188219, at *5 (D. Del. May 28, 2021). In any event, under either standard, TP-Link's Complaint sufficiently alleges false advertising under the Lanham Act.[1]

### 2.    The False Statements Netgear Made During Its Earnings Calls Constitute Commercial Advertising or Promotion.

The Lanham Act prohibits false and misleading statements made in "commercial advertising or promotion," 15 U.S.C. § 1125(a)(1)(B), which is defined as: "(1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy the defendants['] goods or services[;] (4) [that is] disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Cipla USA, Inc. v. Ipsen Biopharmaceuticals, Inc.*, C.A. No. 22-552-GBW-SRP, 2024 WL 307699, at *5 (D. Del. Jan. 26, 2024). Netgear incorrectly disputes that the earnings call statements referenced in the Complaint are commercial speech directed at TP-Link's products.

#### a.    Netgear's Earnings Call Statements Are Commercial Speech.

Relying exclusively on decisions from other districts, Netgear suggests it has free rein to smear its competitors on earnings calls because they are not commercial speech. Mot. at 16–17. Yet, this District has held that statements made on earnings calls can constitute commercial speech

---

[1]    Netgear asserts it will seek fees and costs and argues the Court should decline to exercise supplemental jurisdiction if TP-Link's Lanham Act claim is dismissed. Mot. at 23 n.8–9. TP-Link's Lanham Act allegations are proper, but in the event the Court identifies some shortcoming, TP-Link should be granted leave to amend. *See TexasLDPC Inc. v. Broadcom Inc.*, No. CV 18-1966-RGA, 2020 WL 1285916, at *2 (D. Del. Mar. 18, 2020) ("Motions to amend under Rule 15 are typically granted liberally . . . ."). Thus, any question regarding fees and supplemental jurisdiction is, at best, premature.

under the Lanham Act. *See, e.g.*, *Cipla*, 2024 WL 307699, at *4–8. In *Cipla*, for example, the court denied a motion to dismiss, finding that statements a CEO made on an earnings call could support a Lanham Act claim because they were alleged to have been disseminated to customers with the intent to influence their purchasing decisions. *Id.*

Like the allegations found sufficient in *Cipla*, where the accused statements were alleged to have been made with the intent to influence distributors, insurers, and customers, TP-Link alleges that Netgear's earnings call statements targeted "Netgear investors," "media personnel," and Netgear's "networking product partners and consumers." ¶¶ 30, 38. The Complaint further alleges that Netgear made the statements "for the purpose of influencing purchasing decisions." ¶ 46. The Complaint notes that "numerous listeners heard the false and misleading statements made by Netgear's CEO on those calls." ¶ 62. Although these allegations are sufficient to show that Netgear's false statements were disseminated to consumers, *see Cipla*, 2024 WL 307699, at *4–8, TP-Link also bolsters its allegations by stating that "[t]he false and misleading statements . . . were memorialized in written transcripts . . . that were subsequently publicly disseminated via the Internet." ¶ 62. The Internet is "a broad advertising medium, offering wide-ranging and instantaneous dissemination of [accused] false information." *Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 334 (M.D. Pa. 2014), *aff'd*, 958 F.3d 168 (3d Cir. 2020). TP-Link's factual allegations stand in stark contrast to those considered in *In re Syngenta AG MIR 162 Corn Litig.*, where the plaintiff merely alleged that the false statements were publicly available, not that they were widely disseminated. *See* 131 F. Supp. 3d 1177, 1226 (D. Kan. 2015). At this stage, TP-Link's well-pled factual allegations must be accepted as true and viewed in the light most favorable to TP-Link. *U.S. ex rel. Knisely v. Cintas Corp.*, 298 F.R.D. 229, 242 (E.D. Pa. 2014). At a minimum, TP-Link has pled "enough facts to raise a reasonable expectation that discovery will

reveal evidence" that Netgear's false and misleading statements were disseminated to consumers, which is an inquiry that "ordinarily creates a question of fact inappropriate for resolution on a motion to dismiss." *Cipla*, 2024 WL 307699, at *6. Indeed, Mr. Prober's own statements provide a reasonable inference that his false and misleading assertions on earnings calls are in fact reaching consumers. *See* ¶ 41 (Netgear's CEO touting "winning … deals" due to TP-Link smears).

The cases Netgear itself cites recognize that earnings call statements are actionable. For example, the court in *In re SoClean, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.* stated earnings calls can qualify as commercial speech if the plaintiff alleges—as TP-Link has—that the defendant "intended to influence . . . consumers and the communication was disseminated" to them. 2023 WL 8006602, at *30–31 (W.D. Pa. Nov. 17, 2023); *see also Syngenta*, 131 F. Supp. 3d at 1226 (conference call statements can support Lanham Act claim if plaintiff alleges they were made to influence customers and were sufficiently disseminated); *Allergan, Inc. v. Merz Pharms., LLC*, No. SACV 11-446 AG (EX), 2011 WL 13323246, at *2 (C.D. Cal. Nov. 14, 2011) (noting plaintiff did not allege earnings call statements were made to influence consumers). Unsurprisingly, Netgear cites no authority indicating that the Lanham Act provides a free pass to smear competitors' products if the deception takes place on an earnings call.

> b.    *Netgear's Earnings Call Statements Concern TP-Link's Products.*

Unable to deny that its CEO maligned TP-Link on the earnings calls, Netgear asserts his statements are not actionable because they "do not concern TP-Link's products." Mot. at 18 (emphasis omitted). This ignores TP-Link's allegations that Netgear repeatedly spread false information about TP-Link's ***routers***. ¶¶ 26–27, 38. For example, Netgear's CEO stated TP-Link has "***networking equipment*** that has connected components from the Chinese covered list." ¶ 38.[2]

---

[2]  Unless stated otherwise, all emphasis has been added and internal citations have been omitted.

That is not a vague or passing reference, nor does the statement merely "address TP-Link's organizational structure." Mot. at 18. Rather, Netgear directly accused TP-Link's routers of posing a national security risk due to supposed ties to China. *See NY Mach. Inc. v. Korean Cleaners Monthly*, C.A. No. 17-12269, 2018 WL 2455926, at *2 (D.N.J. May 31, 2018) (statement need not refer to product by name for it to be about the product and to be commercial speech). The prominent industry personalities and commentators whom TP-Link alleges Netgear enlisted in its smear campaign likewise made false and misleading statements about TP-Link's products. ¶ 27.

Again, the cases Netgear cites are inapposite. *See Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 668 (D. Del. 2008) (addressing statements about product development methods); *Cooper v. Bellasalma*, C.A. No. 24-832 (MN), 2025 WL 1397004, at *4 (D. Del. May 14, 2025) (statements about corporate authority); *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 648, 653 (D. Del. 2006) (statements about licensing and product's creation); *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 578 (E.D. Pa. 1999), *aff'd*, 229 F.3d 1139 (3d Cir. 2000) (slide bearing definition of "simulate," plaintiff's company name). Here, Netgear's statements do not merely concern general business practices, corporate authority, internal licensing practices, or veiled references to a competitor. Rather, Netgear specifically and repeatedly contrasted TP-Link's ***products*** with its own, touting Netgear's products as the "trusted US-based" alternative while casting TP-Link's routers as a supposed security risk. *See, e.g.*, ¶ 38 (alleging Netgear suggested TP-Link's "networking equipment . . . has connected components from the Chinese covered list").

### 3. The Netgear Statements Are False and Misleading.

A statement is actionable under the Lanham Act if it is literally false or, if literally true, nevertheless misleading to consumers. *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160 (3d Cir. 2001). When determining the truth or falsity of an alleged misrepresentation, a court must

look at the statement in context. *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994). Where the complaint sufficiently alleges false and misleading statements, whether they are false or misleading in context is a factual question not typically ripe for a Rule 12(b)(6) motion. *See, e.g.*, *Technoprobe S.p.A. v. Formfactor, Inc.*, C.A. No. 23-842-JCG, 2024 WL 2271885, at *9–10 (D. Del. May 20, 2024).

Netgear's assertion that it did not make a single false or misleading statement as a matter of law is meritless. Mot. at 18–20. For example, Netgear contends that accused "Statement 4"— Mr. Prober's assertion that a *Bloomberg* article "kind of ***debunk[ed]***" the idea that TP-Link is "a ***US-based*** company"—"is objectively true and based on disclosed, reputable news sources." Mot. at 13, 19–20. Yet, the articles that Netgear cites as support for Mr. Prober's statement expressly declare the opposite. One refers to "***California-based*** TP-Link," D.I. 17-1 at 100, while the other refers to "TP-Link Systems Inc., ***a California-based*** router maker." D.I. 17-1 at 108.

Indeed, in denying that accused earnings call statements are false and misleading, Netgear blatantly mischaracterizes the accused statements and/or the evidence showing their falsehood, or otherwise improperly strips them of their context. Mot. at 18–20. For instance, Netgear argues that "Statement 2" is true because "[t]he Microsoft blog post stated that TP-Link devices accounted for 'most' of the routers compromised by a 'threat actor located in China.'" *Id.* at 19. Yet, in the accused statement, Netgear's CEO expressly asserted that this blog post "***exposed*** kind of" TP-Link's "role" in "typhoons." D.I. 1-1 at 11; ¶ 30. But nowhere does the Microsoft post refer to "typhoons" or state that TP-Link is responsible for or had a "role" in conducting any aspect of the Chinese threat actor attack. *Id.*; *see also* D.I. 17-1 at 138–52. At most, the post indicates TP-Link was a ***victim***, noting that some TP-Link routers were identified as compromised devices while clarifying that other organizations are also potential targets for such compromises—critical context

Netgear's CEO omitted.[3] Netgear also tries to spin Mr. Prober's mischaracterization of the blog post as his "subjective opinion." Mot. at 19. "Statement 2" is not an opinion, because it can be shown to be false "by way of objectively verifiable facts." *Shure*, 2020 WL 2839294, at *7.

Netgear similarly mischaracterizes "Statement 3." Netgear contends a *Bloomberg* article supports its CEO's statement that Netgear is "an independent US-based public company" benefitting "from any administrative action focused on our ***China-based competition***"—*i.e.*, TP-Link. Mot. at 13. Again, however, far from describing TP-Link as "***China-based***," *Bloomberg* stated TP-Link is "***California-based***"—*i.e.*, a "US-based" company, like Netgear. D.I. 17-1 at 100. "Statement 3" is false and misleading because Netgear's CEO incorrectly indicated that TP-Link is a "China-based" company whose routers therefore cannot be trusted. ¶¶ 35–37.

As illustrated in Exhibit 1 to this brief, simple visual comparisons between TP-Link's allegations (and/or Netgear's "summary" of them) and the evidence incorporated by reference in TP-Link's Complaint show how the evidence supports TP-Link's allegations—and how Netgear has mischaracterized the substance of the accused statements and the basis of their falsity. While Netgear tries to rely on "outside" sources as a shield, its effort fails because TP-Link has pled enough facts to infer that Mr. Prober's statements were false or misleading, including because he misrepresented the purported sources. *See, e.g.*, *Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*, No. 16 CIV. 3645 (KPF), 2017 WL 3129799, at *11 (S.D.N.Y. July 21, 2017) (accused statement that "Grafix has 'demonstrated superior outcomes to EpiFix' may be construed as a false overstatement" of the source). At bottom, by plausibly alleging that at least one accused statement

---

3    By Netgear's logic, if being identified as the victim of an attack is the same as being "exposed" for having a "role" in the attack, then the Department of Justice and the FBI "exposed" ***Netgear's*** "role" in hacks by Chinese threat actors when they concluded that Netgear's and another company's routers accounted for most of the compromised devices—a fact Netgear's CEO knew when he made his false and misleading statement about TP-Link. ¶¶ 32–33.

is false or misleading, TP-Link has sufficiently stated a claim. *See Deston Therapeutics LLC v. Trigen Lab'ys Inc.*, 723 F. Supp. 2d 665, 673–74 (D. Del. 2010) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

### 4. The Third-Party Statements Are Attributable to Netgear.

A party is liable for a third party's false and misleading statements when it directs the third party to make the statements. *See, e.g.*, *Interlink Prods. Int'l, Inc. v. F & W Trading LLC*, C.A. No. 15-1340 (MAS) (DEA), 2016 WL 1260713, at *9 (D.N.J. Mar. 31, 2016) (denying motion to dismiss Lanham Act claim where plaintiff alleged "Defendants purposefully drive up . . . ratings by enlisting inherently biased professional reviewers intending for consumers to rely on the misleading heightened reviews when selecting a product for purchase."). Although Netgear argues it cannot be held liable for third-party statements, Mot. at 20–22, courts have repeatedly recognized that Lanham Act liability attaches to parties who participate in the creation, development, and propagation of false statements. *See, e.g.*, *PlymoVent Corp. v. Air Tech. Sols., Inc.*, C.A. No. 05-1023 (JEI), 2007 WL 9782710, at *4 (D.N.J. May 4, 2007) (collecting cases).

While TP-Link's allegations regarding the false and misleading statements that Netgear's CEO made on the company's earnings calls are sufficient by themselves to state a claim under the Lanham Act, TP-Link's allegations regarding Netgear's successful effort to enlist third parties to disseminate further false and misleading statements provide additional support for TP-Link's claim. TP-Link alleges "Netgear has fed false and misleading information to third parties such as media personnel, operatives, consultants, and other businesses to act as mouthpieces for Netgear's smear campaign," and "has retained prominent industry personalities and influential commentators to propagate its false messages about TP-Link." ¶ 26; *see also* ¶¶ 27–28. At this stage, these well-pled factual allegations must be accepted as true, and are more than sufficient. *See Wrinkl, Inc. v. Facebook, Inc.*, No. 20-CV-1345-RGA, 2021 WL 4477022, at *6 (D. Del. Sept. 30, 2021).

Contrary to Netgear's suggestion, Mot. at 20–21, the third parties' false statements about TP-Link are not constitutionally protected merely because they were delivered through the media. "False and defamatory statements of fact . . . have 'no constitutional value.'" *Counterman v. Colorado*, 600 U.S. 66, 76 (2023). The cases on which Netgear relies are inapposite, because they address situations where defendants made statements solely in response to journalists' questions. *See Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir. 2003); *Delux Cab, LLC v. Uber Techs., Inc.*, C.A. No. 16-3057-CAB-JMA, 2017 WL 1354791, at *6 (S.D. Cal. Apr. 13, 2017). Here, TP-Link is not alleging that Netgear (or its surrogates) simply responded to reporters' questions concerning a preexisting controversy. Rather, Netgear sought to ignite a controversy by using its surrogates to proactively spread a false and misleading narrative about the supposed security risk posed by TP-Link's products. ¶¶ 26–28. Netgear was not participating in independent media coverage of a matter of public concern, which could be protected by the First Amendment—it was planting stories and generating content as part of a commercially-motivated effort to damage TP-Link.[4] Indeed, the third-party statements at issue were clearly intended to discourage consumers from purchasing TP-Link's products. *See* ¶ 27 (Rob Joyce stating "TP-Link's technologies are controlled by the Chinese Communist Party," Nicole Perlroth podcast stating "TP-Link pushes

---

[4]    In furtherance of its smear campaign, Netgear has also spent hundreds of thousands of dollars lobbying the federal government on "[i]ssues related to technology, cybersecurity, strategic competition with China . . . ." *See* Ex. 2, Q4 2023 Lobbying Report (https://lda.senate.gov/filings/public/filing/778856df-c31a-4cae-90b7-cd9f38371acc/print/); Ex. 3, Q2 2024 Lobbying Report (https://lda.senate.gov/filings/public/filing/f5a0908c-3bcf-4dd6-9f3d-6bba8da57858/print/); Ex. 4, Q3 2024 Lobbying Report (https://lda.senate.gov/filings/public/filing/4e380bc3-db4f-482d-9079-1cd6019e5bec/print/); *see also* Ex. 5, Q3 2025 Lobbying Report (https://lda.senate.gov/filings/public/filing/f516a0d0-f882-4eb9-adb2-b2bc1c9ed674/print/) (lobbying on "[i]ssues related to router security and cybersecurity"). The Court may take judicial notice of these exhibits as public disclosures submitted to the government. *See Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000).

software updates out of China to its routers in the United States," and Russ Walker stating "TP-Link is tied to the Chinese Communist Party" and its routers "are a national security threat"). These statements' commercial motivation distinguishes them from innocent commentary on a public issue and brings them within the Lanham Act's scope. *See Cipla*, 2024 WL 307699, at *6 (finding plaintiff adequately pled statement was commercial advertisement by alleging statement was intended to influence consumers).

Moreover, despite Netgear's argument, Mot. at 20–22, TP-Link's allegations more than adequately identify the third-party statements and establish for pleading purposes that Netgear is responsible for them. The cases that Netgear offers in opposition are unavailing. The court in *Robert Bosch LLC v. Pylon Mfg. Corp.* found statements were not actionable because they included puffery and a false claim of innovation, which are exempt from Lanham Act scrutiny. *See* 632 F. Supp. 2d 362, 365 (D. Del. 2009). Neither type of claim is at issue here. The plaintiff in *Cooper* entirely failed to identify any "specific statements" made by individuals. 2025 WL 1397004, at *4. And in *Marfione v. KAI U.S.A., Ltd.*, the court found the plaintiff did not adequately plead that the defendant was responsible for allegedly defamatory statements published by a third party, because evidence provided with the complaint established that the third party approached the defendant about the article and did not indicate that the defendant supplied the defamatory statements. *See* C.A. No. 17-70, 2018 WL 1519042, at *9 (W.D. Pa. Mar. 28, 2018). Here, no evidence cited in or submitted with the Complaint undercuts the plausibility of TP-Link's allegation that Netgear directed the third parties to make false and misleading statements about TP-Link. On the contrary, the scheme described in the Complaint is entirely consistent with Netgear's regular and repeated use of its earnings calls to sabotage consumers' trust in TP-Link's products.

Finally, Netgear argues in a footnote that its lobbying statements are protected by the

12

*Noerr-Pennington* doctrine. Mot. at 21 n.6. However, the Third Circuit has not ruled on whether this doctrine, which originated in the antitrust context, applies to Lanham Act claims. *See Kimberly-Clark Worldwide, Inc. v. Cardinal Health 200, LLC*, C.A. No. 11-1228-RGA, 2012 WL 3063974, at *2 n.1 (D. Del. July 27, 2012) (collecting cases showing "[i]t is not clear whether the Noerr-Pennington doctrine applies to Lanham Act claims"). Courts in this Circuit have rejected arguments similar to Netgear's and have been reluctant to dismiss Lanham Act claims based on *Noerr-Pennington* immunity. *See Cipla USA, Inc. v. Ipsen Biopharmaceuticals, Inc.*, C.A. No. 22-552-GBW, 2023 WL 4013542, at *4 (D. Del. June 15, 2023) (rejecting defendant's *Noerr-Pennington* argument and finding complaint "properly alleges 'false or misleading statements' . . . and that merely repeating the same statements in communications with federal agencies . . . does not 'immunize [defendant] from liability under the Lanham Act'"); *In re Gabapentin Pat. Litig.*, 649 F. Supp. 2d 340, 363 (D.N.J. 2009) ("Courts have rejected claims of *Noerr-Pennington* immunity made through motions to dismiss"). Even if this Court finds that the doctrine applies, TP-Link's allegations satisfy the "sham petitioning" exception to the *Noerr-Pennington* doctrine, because the Complaint pleads details supporting a reasonable inference that Netgear's petitioning was objectively baseless and resulted from a motivation to interfere with TP-Link's business. *See* ¶ 28; *In re Gabapentin Pat. Litig.*, 649 F. Supp. 2d at 366–67.

### 5.    Netgear's Statements Have Harmed TP-Link.

To allege "likelihood of injury" under the Lanham Act, TP-Link "need only establish 'a reasonable basis for the belief that [it] is likely to be damaged as a result of the false advertising.'" *N. Atl. Imports, LLC v. Loco-Crazy Good Cookers, Inc.*, C.A. No. 23-999-GBW-SRF, 2024 WL 245955, at *3 (D. Del. Jan. 23, 2024), *R&R adopted*, 2024 WL 3342309 (D. Del. Apr. 15, 2024). Allegations of "future lost sales" and reputational harm resulting from the false statements are sufficient. *CareDx, Inc. v. Natera, Inc.*, C.A. No. 19-662-CFC-CJB, 2019 WL 7037799, at *12 (D.

Del. Dec. 20, 2019), *R&R adopted*, 2020 WL 401773 (D. Del. Jan. 24, 2020).

Here, TP-Link has more than adequately pled the requisite harm by alleging that Netgear's false and misleading statements directly resulted in lost sales and market share, as well as injury to TP-Link's reputation, goodwill, and commercial relationships. ¶¶ 40–41, 47–48. Delaware courts have found such allegations sufficient. *See CareDx*, 2019 WL 7037799, at *12. Indeed, TP-Link's Complaint details not only the nature of the harm from Netgear's statements, but demonstrates a nexus between Netgear's conduct and TP-Link's injuries.[5] For example, the Complaint describes how Netgear's CEO himself acknowledged the commercial impact of the negative publicity regarding TP-Link, stating that Netgear was "winning some pretty big deals that may have previously not gone [its] way because of that," and adding, "I think all the messaging out there [regarding TP-Link] is actually helping us win with customers." ¶ 41. This is far from an "artificial" or "attenuated" causal connection. Mot. at 23. Rather, Netgear's own CEO acknowledged that the accused messaging—including both Netgear's false statements and the false statements it directed the media to make—has diverted business from TP-Link to Netgear.

Netgear's reliance on *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, C.A. No. C19-01715-PHX-SMB, 2020 WL 248164 (D. Ariz. Jan. 16, 2020), to argue that TP-Link alleges injury "simply 'because [TP-Link and Netgear] compete,'" misconstrues TP-Link's allegations. Mot. at 23. The plaintiff in *ThermoLife* failed to plead actual damages, and there was "no indication that Plaintiff's upstream positioning as an ingredient licensor [wa]s directly tied to Defendant's downstream point of sale positioning as a retailer in any way." 2020 WL 248164, at *9. Here, in contrast, TP-Link has clearly identified Netgear as a direct market competitor, ¶ 20, and has alleged

---

[5]    For this reason, Netgear's cited summary-judgment case is inapposite. *See McNulty v. Citadel Broad. Co.*, 58 F. App'x 556, 566 (3d Cir. 2003) (granting summary judgment where plaintiff presented no evidence showing nexus between defendant's statements and plaintiff's injuries).

that as a direct result of Netgear's false statements, "consumers instead purchas[e] products from TP-Link's competitors, including but not limited to Netgear"—sales that would not have occurred "but for Netgear's dissemination of false and misleading information about TP-Link and TP-Link's business." ¶ 47.[6] TP-Link's Complaint identifies specific damages to TP-Link's reputation and sales that flow from Netgear's deception, not just because they compete.

### B.    TP-Link Has Sufficiently Pled Defamation.

#### 1.    Delaware Law Applies to TP-Link's Defamation Claim.

Delaware law, not California law, governs TP-Link's defamation claim. To argue the contrary (presumably because California law requires an extra element), Netgear improperly disregards the choice-of-law provision in the parties' 2024 Agreement, which states that the contract "will be interpreted in accordance with and governed by . . . the laws of the State of Delaware, without giving effect to any choice of law rules." D.I. 19 § 14.3. TP-Link's defamation claim is based on the same underlying facts as its breach-of-contract claim (discussed below), because in defaming TP-Link, Netgear also violated the 2024 Agreement's non-disparagement clause. *Id.* § 8. Delaware courts routinely interpret broad choice-of-law provisions as encompassing related tort claims. *See, e.g., Cytotheryx, Inc. v. Castle Creek Biosciences, Inc.*, No. 2023-1142-PAW, 2025 WL 3142373, at *5 (Del. Ch. Nov. 10, 2025) (applying Merger Agreement's choice-of-law provision to defendant's defamation counterclaim); *Mkt. Am., Inc. v. Google, Inc.*, No. C.A. 09-494-GMS, 2011 WL 1485616, at *3 (D. Del. Apr. 19, 2011).

---

[6]  TP-Link need not identify individual customers who withheld trade. It is sufficient to allege, as TP-Link has, that the false statements were material, were widely disseminated, and were likely to influence purchasing decisions, resulting in cognizable harm. *See N. Atl. Imports*, 2024 WL 245955, at *3 (allegations "that sales of Plaintiff's products have been directly diverted to Defendant due to Defendant's false advertising" were sufficient); *CareDx*, 2019 WL 7037799, at *12 (allegations of lost sales and reputational harm were sufficient).

Accordingly, the 2024 Agreement's choice-of-law provision governs TP-Link's related defamation claim, and the Court should reject Netgear's attempt to engage in "law-shopping" for what Netgear ostensibly perceives as a more favorable standard.

**2.      TP-Link Has Properly Stated a Claim for Defamation.**

*a.      TP-Link Is Not a Limited Purpose Public Figure.*

Netgear contends TP-Link made itself a limited purpose public figure by "actively seeking attention from the press" and "cultivat[ing its] public image." Mot. at 25. Yet, a person becomes "a public figure by virtue of his ***purposeful*** activity amounting to a thrusting of his personality into the 'vortex' of an important public controversy." *US Dominion, Inc. v. Fox News Network, LLC*, No. N21C-03-257 EMD, 2023 WL 568869, at * 1 (Del. Super. Ct. Jan. 27, 2023); *Computer Aid, Inc. v. Hewlett-Packard Co.*, 56 F. Supp. 2d 526 (E.D. Pa. 1999) (limited purpose public figure "'voluntarily thrusts himself into' a particular public controversy" (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)). TP-Link did not purposefully or voluntarily inject itself into issues regarding cybersecurity concerns posed by China—quite the opposite. Unlike the affirmative press releases issued by plaintiffs in the cases Netgear cites, *see* Mot. at 24–25 (citing *Ampex Corp. v. Cargle*, *Planet Aid, Inc. v. Reveal*, *Anti-Defamation League of B'nai B'rith v. Superior Ct.*, *McDowell v. Paiewonsky*, and *Greschner v. Becker*), the Complaint shows that TP-Link at most ***responded*** to press—which was necessitated by Netgear's misconduct in propagating the false and defamatory statements. ¶¶ 25–31, 34–38. Imposing an actual malice standard in these circumstances would unfairly force victims of defamation to refrain from speaking up in their own defense lest they become subject to a higher evidentiary burden. *See, e.g.*, *Computer Aid*, 56 F. Supp. 2d at 537 (determining that despite issuing press releases and other materials, plaintiff was not a public figure because it did not engage in extensive media campaign); *Time, Inc. v. Firestone*, 424 U.S. 448, 454 (1976) (mere association with matters or "controversies of interest to the public"

16

does not by itself make one a public figure).

At a minimum, whether TP-Link is a limited purpose public figure is a fact question inappropriate for resolution on a motion to dismiss. *See Ryanair DAC v. Booking Holdings Inc.*, C.A. No. 20-1191-WCB, 2023 WL 2867476, at *7 (D. Del. Apr. 7, 2023) (deferring determination of public figure status to later stage, after development of complete factual record, and not requiring counterclaimant to allege actual malice to survive motion to dismiss); *Woods Servs., Inc. v. Disability Advocs., Inc.*, C.A. No.18-296, 2018 WL 2134016, at *6 (E.D. Pa. May 9, 2018) (collecting similar cases). The Complaint's allegations squarely rebut the notion that TP-Link has purposefully injected itself into the controversy, and adequately plead TP-Link is not a public figure. ¶¶ 25–31, 34–38, 65. If TP-Link's allegations are properly accepted as true and all reasonable inferences are made in its favor, TP-Link should not be required to allege actual malice.

> ### b.   *TP-Link Has Adequately Alleged Actual Malice.*

Even assuming for the sake of argument that the actual malice standard applies, TP-Link has sufficiently pled actual malice. Actual malice exists when a defendant publishes false information about a plaintiff "with knowledge that it was false or with reckless disregard of whether it was false or not." *Smartmatic USA Corp. v. Newsmax Media, Inc.*, No. N21C-11-028 EMD, 2023 WL 1525024, at *15 (Del. Super. Ct. Feb. 3, 2023). Reckless disregard exists where the defendant "entertained serious doubts as to the truth of [the] publication or . . . had a high degree of awareness [of its] falsity." *Id.* The "purposeful avoidance of the truth" satisfies this standard. *Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 692 (1989). At the pleading stage, a plaintiff need only show facts from which "th[e] Court can draw a reasonable inference of actual malice." *Smartmatic USA Corp.*, 2023 WL 1525024, at *16; *see also Boone v. Newsweek LLC,* C.A. No. 22-1601, 2023 WL 2245104, at *4 (E.D. Pa. Feb. 27, 2023). Because "proof of actual malice calls a defendant's state of mind into question," the question "does not readily lend

itself to summary disposition." *Hutchison v. Proxmire*, 443 U.S. 111, 120 n.9 (1979).

Given this standard, TP-Link's allegations easily suffice to plead actual malice. TP-Link alleges that "Netgear made and caused to be propagated each of the false and misleading statements with actual malice" because Netgear knew with a "high degree of certainty that the statements about TP-Link and TP-Link's products were false and misleading" or, at the very least, "had reason to have serious doubt regarding the truth of its statements." ¶ 63. TP-Link has pled enough facts to establish a reasonable inference that Netgear ***knew*** its statements were false. For example, the fact that Mr. Prober purported to rely on specific publications that do not say what he attributed to them (and even say the opposite) supports a reasonable inference that he acted with a reckless disregard for the truth. TP-Link alleges, in particular, that Netgear knew its statement that TP-Link's "role" in Chinese "typhoon" cyberattacks had been "exposed" by a "Microsoft blog [post]" was false because the referenced blog post did not attribute any aspect of the attacks' origin to TP-Link or suggest TP-Link had any hand in the attacks. ¶¶ 31, 33. As noted above, the blog post described TP-Link only as a victim—not an originator—of the attacks. Netgear's assertion that Mr. Prober "paraphrase[d]" this and other sources confirms that he had read the materials before discussing them on the earnings calls. Mot. at 7. One therefore can reasonably infer that Mr. Prober knew the Microsoft blog post did not suggest—explicitly or even implicitly—that TP-Link helped perpetrate the typhoons. *See, e.g.*, *Westmoreland v. CBS, Inc.*, 596 F. Supp. 1170, 1174 (S.D.N.Y.1984) (inference of actual malice may arise where speaker "knowingly or recklessly misstates . . . evidence to make it seem more convincing or condemnatory than it is"); *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 426 (Tex. 2000) (omission of facts show actual malice if defendant acted with "awareness that the omission could create a substantially false impression"). As such, TP-Link has pled facts that plausibly support that Mr. Prober made

statements with actual knowledge of falsity or, at the very least, reckless disregard for the truth.

TP-Link has also alleged that Netgear falsely referred to TP-Link as "China-based competition" and stated that articles "kind of debunk[ed]" the idea that TP-Link is a "US-based company." ¶ 35. TP-Link alleges that Netgear's CEO knew these statements were false because the very articles he was purporting to discuss expressly state that TP-Link is California-based. ¶ 37. Netgear nevertheless argues that there can be no actual malice because Mr. Prober was "expressly rely[ing]" on the cited news reports. Mot. at 27. But that is not what he did—Netgear cannot misrepresent a source and defend the misrepresentation by saying it "relied" on the source. Mr. Prober's conduct reflects the very essence of actual malice, because he knew what the articles reported, yet chose to convey a different message. *See Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 538 (7th Cir. 1982) ("a publisher cannot feign ignorance or profess good faith when there are clear indications present which bring into question the truth or falsity of defamatory statements").

Moreover, TP-Link previously told Netgear that TP-Link is a U.S-based company. *See* ¶ 37. This further supports the inference that Netgear acted with actual malice. *See Schiavone Const. Co. v. Time, Inc.*, 847 F.2d 1069, 1090 (3d Cir. 1988) (defendant may act with reckless disregard when it knows of "internal inconsistencies or apparently reliable information that contradicts its libelous assertions, but nevertheless publishes those statements anyway"); *US Dominion, Inc. v. Newsmax Media, Inc.*, No. N21C-08-063 EMD, 2025 WL 1092289, at *21 (Del. Super. Ct. Apr. 9, 2025) (circumstantial evidence of actual malice may include "(i) . . . 'failure to pursue the most obvious available sources of possible corroboration or refutation'; . . . (v) financial motive to lie about the plaintiff; [and] (vii) 'other credible information contradicting the information'"). TP-Link's well-pled allegations more than satisfy the standard for actual malice.

c.    *TP-Link Has Adequately Alleged That Netgear Made False Statements of Fact.*

For the same reasons explained above in connection with TP-Link's Lanham Act claim, Netgear's identical assertions that the defamatory statements identified in the Complaint were true statements of fact or nonactionable statements of opinions miss the mark. *See* Mot. at 18–20, 27; § V(A)(3), *supra*. Netgear's argument that its defamatory statements constitute rhetorical hyperbole is similarly unavailing. Mot. at 27–28. Statements qualify as rhetorical hyperbole only if they "cannot reasonably [be] interpreted as stating actual facts about an individual." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 16–17, 20 (1990). Netgear's defamatory statements—such as its statement that the Microsoft blog post "exposed [TP-Link's] role in the [Chinese] cyber-attacks" and its claim that TP-Link is "China-based"—are concrete, verifiable propositions that can be proven true or false. *See, e.g.*, *Masterworks, LLC v. Doe*, No. N25C-06-243 FWW, 2025 WL 3515947, at *6 (Del. Super. Ct. Dec. 8, 2025) (finding statements that plaintiff was "basically a fee scam," operated "like a Ponzi scheme," charged "obscene fees," created "faux demand," and engaged in "shady business practices" were assertions of fact, not rhetorical hyperbole, because they constituted verifiable allegations of fraudulent misconduct). As discussed above, TP-Link has properly alleged that TP-Link is a U.S.-based company and that the Microsoft blog post did not attribute any "role" in any Chinese "typhoons" to TP-Link. TP-Link therefore has adequately alleged that Netgear made false statements of fact.

> ### d.  TP-Link Was Not Required to Plead Special Damages, But Has Done So Anyway.

As discussed above, Delaware law governs TP-Link's defamation claim.[7] "[U]nder

---

[7]  Because Netgear's oral statements were later reduced to writing and published, TP-Link also has a cause of action for libel. *See Carroll v. Trump*, 680 F. Supp. 3d 491, 510 (S.D.N.Y. July 5, 2023) ("Where a defamatory statement is oral, but is expected by the speaker to be reduced to writing and published, and is subsequently communicated in written form, such statement constitutes a libel."); *Walker v. Seyfer*, C.A. No. 24-223-DCLC-CRW, 2025 WL 3211223, at * 2 (E.D. Tenn. Nov. 17, 2025) (similar).

Delaware law, there is no . . . requirement to plead special damages." *Toptal, LLC v. Bloomberg L.P.*, No. N25C-01-266 FJJ, 2025 WL 2172609, at *3 (Del. Super. Ct. July 31, 2025); *see also Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978). Nevertheless, TP-Link has adequately done so, alleging that Netgear's defamatory statements caused TP-Link to "lose sales and profits," "cause[d] damage to TP-Link's reputation and goodwill," "burdened[ed] TP-Link's commercial relationships," and "injured and threaten[] injury to well over a billion dollars in [TP-Link] sales." ¶¶ 47–49, 66. As the Complaint explains, Netgear's CEO observed that Netgear has "been winning some pretty big deals that may have previously not gone [its] way because of" the subject matter of its defamatory statements regarding Netgear, and added, "I think all the messaging out there [about TP-Link] is actually helping us win with customers." ¶¶ 41, 68. By alleging that it lost business due to Netgear's defamatory statements, which were memorialized in written transcripts and published on the Internet, TP-Link has sufficiently pled special damages. *See, e.g.*, *Kanarek v. Bugliosi*, 108 Cal. App. 3d 327, 337 (Ct. App. 1980) (alleging loss of current clients and reduction in new clients was sufficient to plead special damages for purposes of Civil Code § 48a).

e.    *TP-Link Has Adequately Alleged That Netgear Published the Third-Party Statements.*

TP-Link has properly alleged that Netgear published the accused third-party statements. While Netgear attempts to dismiss TP-Link's allegations as "conclusory," Mot. at 22, the Complaint tells a different story. TP-Link's Complaint identifies the actionable third-party statements and alleges that Netgear directed the third parties to make them. ¶¶ 26–27. This is more than sufficient. *See Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 225 (E.D.N.Y. 2010) (denying motion to dismiss, because plaintiff adequately pled defamation claim where she alleged defendant "provided false and misleading information to various news and/or media outlets," without identifying statements' specific recipients or how they were communicated). Netgear's cited cases

are inapposite. The complaints addressed in *Shahid Buttar for Cong. Comm. v. Hearst Commc'ns, Inc.*, C.A. No. 21-5566-EMC, 2022 WL 1215307, at *2 (N.D. Cal. Apr. 25, 2022), and *Tull v. Higgins*, C.A. No. 21-1566-DMR, 2021 WL 6116971, at *10 (N.D. Cal. Dec. 27, 2021), did not identify any specific false statements. Here, TP-Link identified the third-party speakers and their specific false statements. *See* ¶ 27; pages 10–12, *supra*; *Baez*, 745 F. Supp. 2d at 225.

TP-Link also adequately alleges that Netgear is responsible for the accused third-party statements. A source who provides defamatory material to others for publication can be liable for defamation if they intend for it to be published. *See Roe v. Patterson,* 707 S.W.3d 94, 96 (Tex. 2025); *Mitchell v. Superior Ct.*, 37 Cal. 3d 268, 281 (1984). TP-Link's allegations are readily distinguishable from the case law Netgear cites. Mot. at 28. In *Giove v. Holden*, C.A. No. 11–735–SLR–SRF, 2012 WL 2357586, at *3 (D. Del. June 19, 2012), the plaintiffs did not plead any facts imputing the defamatory statements to the defendants or describing the defendants' involvement in publishing them. In contrast, TP-Link alleges that Netgear orchestrated the dissemination of false statements via third parties as part of its smear campaign against TP-Link. ¶¶ 26–28. At this stage, well-pled factual allegations must be accepted as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). This includes TP-Link's limited number of allegations made on information and belief. *See Farmland Partners Inc. v. Rota Fortunae*, C.A. No. 18-2351-KLM, 2020 WL 12574993, at *22 (D. Colo. May 15, 2020) ("At this juncture of the case, before discovery, [plaintiff's] assertions made 'on information and belief' must be accepted as true.").

### C.    TP-Link Has Sufficiently Pled a Claim for Breach of Contract.

As noted above (and set forth in the Complaint), Netgear and TP-Link entered into a contract in 2024 in which each party agreed that it "will not make or publish any disparaging or derogatory statement regarding the other Party . . . ." D.I. 19 § 8. TP-Link alleges in detail that

Netgear made disparaging and derogatory statements about TP-Link and its products.[8] *See* ¶¶ 25–41; § V(A)(3), *supra*. Under any reasonable interpretation of the 2024 Agreement, Netgear's statements violate the agreement's non-disparagement clause.

Netgear nevertheless contends TP-Link cannot state a claim for breach of contract because TP-Link and Netgear entered into the contract "to resolve the parties' patent disputes." Mot. at 29. While that may have been one purpose of the agreement, it in no way negates the express non-disparagement clause found in the same contract. *See Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376, 394 (D. Del. 2002) ("The only reasonable reading of a contract is that which gives meaning and effect to each of the clauses and which does not render any contract clause superfluous in view of the [contract] as a whole."). Unsurprisingly, Netgear fails to cite any term of the contract or any case law to support its remarkable suggestion that parties are not bound by agreed-upon contract terms if those terms do not relate to the contract's supposed initial purpose.

Further, while Netgear argues that TP-Link cannot tie any disparaging or derogatory statements to Netgear itself, it tellingly stops short of disputing that the statements identified in the Complaint ***are*** disparaging and derogatory. Mot. at 29. In any event, TP-Link has alleged that Netgear itself made disparaging and derogatory remarks, both directly—on the earnings calls—and by using the third parties identified in the Complaint as mouthpieces. ¶¶ 25–41. Accordingly, *Neurvana Med., LLC v. Balt USA, LLC* is inapposite, because in that case, ***all*** of the plaintiff's breach-of-contract allegations were made "[u]pon information and belief." No. 19 Civ. 034, 2020 WL 949917, at *23 (Del. Ch. Feb. 27, 2020). Netgear also overreaches when it asserts that "the

---

[8]    Netgear's cited case, in which the plaintiff failed to plead any details regarding the alleged breach of contract, therefore is distinguishable. *See Travelers Cas. & Sur. Co. of Am v. Blackbaud, Inc.*, No. N22C-12-130 KMM, 2024 WL 1298762, at *10–11 (Del. Super. Ct. Mar. 27, 2024) (complaint failed to specify allegedly breached contract sections and any actions purportedly constituting breach).

Agreement expressly carves out factually true statements." Mot. at 29. As discussed in § V(A)(3), *supra*, Netgear's statements about TP-Link are false—hence, they breach the agreement.

### D. TP-Link Has Adequately Pled a Claim for Unjust Enrichment.

TP-Link's Complaint pleads unjust enrichment as an alternative to its claim for damages based on breach of contract. *See* ¶ 70 (seeking unjust enrichment "[t]o the extent that damages are not available relating to any portion of Netgear's misconduct discussed above"). Again, Delaware law governs TP-Link's breach-of-contract and related claims. *See* § V(B)(1), *supra*. As the cases Netgear itself cites make clear, Delaware law permits a plaintiff to plead breach of contract and unjust enrichment in the alternative at this stage. *See Rei Holdings, LLC v. LienClear - 0001*, C.A. No. 18-1401 (MN), 2020 WL 6544635, at *10 (D. Del. Nov. 6, 2020) ("both a breach of contract and an unjust enrichment claim may survive a motion to dismiss when pled as alternative theories of recovery"); *MIG Invs. LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493, 513 (D. Del. 2012) (same); *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 534 (D. Del. 2008) (same).

Even under California law, the result is the same. California courts "have held that claims for unjust enrichment survive the pleading stage when pled as an alternative avenue of relief, though the claims, as alternatives, may not afford relief if other claims do." *Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256, 1268 (N.D. Cal. 2014). Indeed, in a case Netgear cites, the Ninth Circuit held that a quasi-contract or unjust enrichment claim may be pled in the alternative, and the fact that it may be "duplicative of or superfluous to [plaintiff's] other claims . . . is not grounds for dismissal." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762–63 (9th Cir. 2015) (citing Fed. R. Civ. Proc. 8(d)(2)). Netgear also cites *Aellis O. v. Connor*, C.A. No. 22-200, 2022 WL 2229421, at *8 (S.D. Cal. June 21, 2022), to argue that TP-Link "has not pleaded sufficient facts to state [its] other claims, and [its] unjust enrichment claim is derivative of those same [deficient] facts." Mot. at 30. However, unlike the *Aellis* plaintiff, who failed to "plead any benefit unjustly received by [the

defendant]," 2022 WL 2229421 at *8, TP-Link has identified benefits that Netgear unjustly received at TP-Link's expense. *See* ¶ 68.

### E.    California's Anti-SLAPP Law Does Not Apply to TP-Link's Complaint.

California's Anti-SLAPP statute—a procedural rule—conflicts with the Federal Rules of Civil Procedure and does not apply in federal court. *La Liberte v. Reid*, 966 F.3d 79, 85–88 (2d Cir. 2020). Alternatively, regardless of which state's substantive law applies to TP-Link's defamation and unjust enrichment claims, because procedural matters are generally controlled by the law of the forum state, Delaware law applies. *See Crawford v. Syngenta Crop Prot., LLC*, No. N22C-04-006, 2024 WL 2831554, at *3 (Del. Super. Ct. May 31, 2024); *Bull. Displays, LLC v. Regency Outdoor Advert., Inc.*, 448 F. Supp. 2d 1172, 1178–82 (C.D. Cal. 2006). Even if California's Anti-SLAPP Act applied, as discussed above, TP-Link has demonstrated a probability of prevailing on its causes of action. *See Auluck v. Cnty. of Alameda*, C.A. No. 13-5511, 2014 WL 631142, at *4 (N.D. Cal. Feb. 18, 2014) (to survive anti-SLAPP motion, plaintiff "need only have stated and substantiated a legally sufficient claim"); *Grewal v. Jammu*, 191 Cal. App. 4th 977, 989 (Cal. Ct. App. 2011) (noting plaintiff's burden is "not high," as it must show only that its case is of "minimal merit"). Netgear's citation to *Peterson v. Sutter Med. Found.*, Mot. at 30, misses the mark because there, the plaintiff opposing a motion to dismiss failed to address the defendant's arguments that the allegedly defamatory statements were true and did not allege facts supporting actual malice. 615 F. Supp. 3d 1097, 1115 (N.D. Cal. 2022). Here, TP-Link has thoroughly pled all required elements of its claims and has directly addressed each of Netgear's arguments.

## VI.    CONCLUSION

For the reasons set forth above, Netgear's motion should be denied. In the alternative, because Netgear's arguments relate to the sufficiency of TP-Link's factual allegations, TP-Link should be given leave to amend its Complaint to cure any deficiency the Court might find.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____

OF COUNSEL:

Gregory S. Arovas
Todd M. Friedman
Rachel M. Fritzler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Luke L. Dauchot
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067
(310) 552-4200

Yungmoon Chang
KIRKLAND & ELLIS LLP
695 Town Center Drive, Suite 1700
Costa Mesa, CA  92626
(310) 552-4200

David Rokach
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
(312) 862-2000

Stephen C. DeSalvo
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC  20004
(202) 389-5000

December 23, 2025

Brian P. Egan (#6227)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 23, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 23, 2025, upon the following in the manner indicated:

Katharine L. Mowery                                    *VIA ELECTRONIC MAIL*
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
*Attorneys for Defendant*

Robert K. Hur                                                 *VIA ELECTRONIC MAIL*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW Suite 900
Washington, DC 20006
*Attorneys for Defendant*

Joshua Eric Roberts                                       *VIA ELECTRONIC MAIL*
Jennifer S. Recine
KING & SPALDING LLP
1290 Avenue of the Americas 14th Floor
New York, NY 10104
*Attorneys for Defendant*


                                                        */s/ Brian P. Egan*
                                                        _____
                                                        Brian P. Egan (#6227)