# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TP-LINK SYSTEMS INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 25-1396-MN |
| | ) |
| NETGEAR, INC. | ) |
| | ) |
| Defendant. | ) |

## NETGEAR, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND MOTION TO STRIKE

OF COUNSEL:

Robert K. Hur
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
(202) 737-0500
rhur@kslaw.com

Jennifer S. Recine
Joshua E. Roberts
KING & SPALDING LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 556-2100
jrecine@kslaw.com
jroberts@kslaw.com

Dated: January 5, 2026

Katharine Lester Mowery (# 5629)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
mowery@rlf.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

Page

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ........................................1

ARGUMENT ..................................................................................................................................2

    I.    TP-LINK FAILS TO STATE A LANHAM ACT CLAIM ....................................2

        A.    Rule 9(b) Applies to TP-Link's Lanham Act Claim..........................................2

        B.    The Alleged Misstatements Were Not Made in "Commercial Advertising" ....2

        C.    The Alleged Misstatements Are Not False or Misleading.................................4

        D.    The Third-Party Statements Are Insufficient to State a Claim ..........................6

    II.    TP-LINK FAILS TO STATE A CLAIM FOR DEFAMATION ...........................7

        A.    California Law Applies to TP-Link's Defamation Claim.................................7

        B.    TP-Link is a Limited-Purpose Public Figure and Has Failed to Plausibly Allege Actual Malice ........................................................................................8

        C.    The Third-Party Statements Are Not Actionable...............................................9

    III.    TP-LINK FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT........10

    IV.    TP-LINK FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT ..........10

    V.    COUNTS III AND IV SHOULD BE STRICKEN...............................................10

CONCLUSION..............................................................................................................................10

## TABLE OF AUTHORITIES
Page(s)

**Cases**

*Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*,
   581 F. Supp. 2d 654 (D. Del. 2008) ................................................................................. 5

*Advanced Fluid Sys., Inc. v. Huber*,
   28 F. Supp. 3d 306 (M.D. Pa. 2014) ................................................................................. 4

*Ampex Corp. v. Cargle*,
   128 Cal. App. 4th 1569 (2005) ......................................................................................... 8

*Annette F. v. Sharon S.*,
   119 Cal. App. 4th 1146 (2004) ......................................................................................... 9

*Baez v. JetBlue Airways*,
   745 F. Supp. 2d 214 (E.D.N.Y. 2010) .............................................................................. 9

*Cipla USA, Inc. v. Ipsen Biopharmaceuticals, Inc.*,
   2024 WL 307699 (D. Del. Jan. 26, 2024) ........................................................................ 3

*Computer Aid, Inc. v. Hewlett-Packard Co.*,
   56 F. Supp. 2d 526 (E.D. Pa. 1999) .................................................................................. 8

*Costa v. Whirlpool Corp.*,
   2025 WL 885245 (D. Del. Mar. 21, 2025) ....................................................................... 2

*Crestron Elecs., Inc. v. Cyber Sound & Sec. Inc.*,
   2012 WL 426282 (D.N.J. Feb. 9, 2012) ........................................................................... 7

*Cytotheryx, Inc. v. Castle Creek Biosciences, Inc.*,
   2025 WL 3142373 (Del. Ch. Nov. 10, 2025) ................................................................... 7

*Deston Therapeutics LLC v. Trigen Lab'ys Inc.*,
   723 F. Supp. 2d 665 (D. Del. 2010) .................................................................................. 4

*In re Exxon Mobil Corp. Sec. Litig.*,
   500 F.3d 189 (3d Cir. 2007) .............................................................................................. 2

*Genus Lifesciences Inc. v. Lannett Co., Inc.*,
   378 F. Supp. 3d 823 (N.D. Cal. 2019) .............................................................................. 4

*Gilead Scis., Inc. v. Abbott Lab'ys, Inc.*,
   2015 WL 1191129 (D. Del. Mar. 13, 2015) ................................................................... 10

*GOLO, LLC v. HighYa, LLC*,
   310 F. Supp. 3d 499 (E.D. Pa. 2018) ............................................................................ 6, 7

*Greschner v. Becker*,
  2016 WL 3969941 (D. Ariz. July 25, 2016) .................................................................... 8

*Interlink Prods. Int'l, Inc. v. F & W Trading LLC*,
  2016 WL 1260713 (D.N.J. Mar. 31, 2016) ................................................................. 6, 7

*Marfione v. KAI U.S.A., Ltd.*,
  2018 WL 1519042 (W.D. Pa. Mar. 28, 2018) ................................................................ 7

*Martin v. Wells Fargo Bank*,
  2018 WL 6333688 (C.D. Cal. Jan. 18, 2018) ................................................................ 8

*Masterworks, LLC v. Doe*,
  2025 WL 3515947 (Del. Super. Ct. Dec. 8, 2025) ........................................................ 9

*Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*,
  2017 WL 3129799 (S.D.N.Y. July 21, 2017) ................................................................. 5

*N. Atl. Imports, LLC v. Loco-Crazy Good Cookers, Inc.*,
  2024 WL 245955 (D. Del. Jan. 23, 2024) ...................................................................... 5

*In re NAHC, Inc. Sec. Litig.*,
  306 F.3d 1314 (3d Cir. 2002) ......................................................................................... 2

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
  2017 WL 3021066 (D. Del. July 14, 2017) .................................................................... 6

*Neurvana Med., LLC v. Balt USA, LLC*,
  2020 WL 949917 (Del. Ch. Feb. 27, 2020) ................................................................. 10

*Noble Fiber Techs., LLC v. Argentum Med., LLC*,
  2006 WL 1793219 (M.D. Pa. June 27, 2006) ................................................................ 2

*NY Mach. Inc. v. Korean Cleaners Monthly*,
  2018 WL 2455926 (D.N.J. May 31, 2018) ..................................................................... 5

*Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*,
  2021 WL 2188219 (D. Del. May 28, 2021) .................................................................... 2

*Peterson v. Sutter Med. Found.*,
  615 F. Supp. 3d 1097 (N.D. Cal. 2022) ....................................................................... 10

*Registered Agent Sols., Inc. v. Corp. Serv. Co.*,
  2022 WL 911253 (D. Del. Mar. 28, 2022) ........................................................... 2, 3, 4, 5

*Rei Holdings, LLC v. LienClear-0001*,
  2020 WL 6544635 (D. Del. Nov. 6, 2020) ................................................................... 10

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  2009 WL 3366967 (D. Del. Oct. 19, 2009) .................................................................... 3

*Schiavone Const. Co. v. Time, Inc.*,
    847 F.2d 1069 (3d Cir. 1988) ................................................................................................ 9

*Shure Inc. v. Clearone, Inc.*,
    2020 WL 2839294 (D. Del. June 1, 2020) ............................................................................ 2

*Smartmatic USA Corp. v. Newsmax Media, Inc.*,
    2023 WL 1525024 (Del. Super. Ct. Feb. 3, 2023) ................................................................ 9

*In re Syngenta AG MIR 162 Corn Litig.*,
    131 F. Supp. 3d 1177 (D. Kan. 2015) ................................................................................... 4

*Time, Inc. v. Firestone*,
    424 U.S. 448 (1976) .............................................................................................................. 8

*US Dominion, Inc. v. Fox News Network, LLC*,
    2023 WL 568869 (Del. Super. Ct. Jan. 27, 2023) ................................................................. 8

## Other Authorities

10 Del. C. § 6001 ......................................................................................................................... 10

Cal. Civ. Proc. Code § 425.16 ..................................................................................................... 10

Fed. R. Civ. P. 9 ............................................................................................................................. 2

Fed. R. Civ. P. 12 ......................................................................................................................... 10

Defendant Netgear, Inc. submits this reply brief in further support of its motion to dismiss and motion to strike.[1]

**STATEMENT OF NATURE AND STAGE OF PROCEEDINGS**

TP-Link's Opposition underscores the fact that the Lanham Act does not apply here, and that this case is nothing more than a tactic to distract from, and cast doubt upon, the U.S. media and government scrutiny TP-Link currently faces.

The Netgear Statements at issue were made during earnings calls in which Netgear referenced reputable public reporting and government activity related to TP-Link's ties to China, the national security threat it allegedly poses, as well as other relevant geopolitical matters. These statements are not actionable because they were not false, they were not consumer-directed advertising, they were not product claims, and they were not designed to influence purchasing decisions. Public availability of transcripts, conclusory assertions of "wide" dissemination, or speculation that "media personnel" or consumers might have listened is not enough to establish dissemination. The remaining allegations are a fanciful and speculative narrative that Netgear orchestrated a plot against TP-Link by singlehandedly manipulating reputable media outlets, Congress, and numerous federal and state agencies. TP-Link's "third-party mouthpiece" theory fails for lack of factual allegations attributing nonparty statements to Netgear. Accordingly, these allegations are insufficient as a matter of law.

Confronted with these deficiencies, TP-Link tries to manufacture falsity by taking the Netgear Statements and reputable media reporting out of context and blending them with its own narrative disputing the underlying, reputable reports Netgear cited during earnings calls. Properly understood, the Complaint seeks to use this Court to challenge independent media and government scrutiny of TP-Link, rather than to assert any cognizable claim against Netgear.

---

[1] Emphasis and alterations are supplied, and internal punctuation and citations are omitted unless stated. Capitalized terms have the meanings in Defendant's Opening Brief (D.I. 16) ("Motion" or "Mot."). TP-Link's Opposition (D.I. 24) is referred to as "Opposition" or "Opp."

For these and the other reasons discussed below, Netgear's motion should be granted.[2]

## ARGUMENT

**I.  TP-LINK FAILS TO STATE A LANHAM ACT CLAIM**

    **A.  Rule 9(b) Applies to TP-Link's Lanham Act Claim**

TP-Link does not dispute that its Lanham Act claim sounds in fraud, and thus courts within the Third Circuit routinely apply Rule 9(b). *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 197 (3d Cir. 2007) ("[U]nder our precedent, if a claim not otherwise requiring proof of scienter nonetheless sounds in fraud, then [Rule] 9(b)'s heightened pleading standard applies."), *as amended* (Nov. 20, 2007); *Registered Agent Sols., Inc. v. Corp. Serv. Co.*, 2022 WL 911253, at *1–2 (D. Del. Mar. 28, 2022).[3] TP-Link's cited cases are in accord. *Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*, 2021 WL 2188219, at *5 (D. Del. May 28, 2021) (rejecting pre-*Iqbal* "intermediate" pleading standard found "nowhere in Rules 8 or 9 (or elsewhere in the Federal Rules)"); *Shure Inc. v. Clearone, Inc.*, 2020 WL 2839294, at *5 (D. Del. June 1, 2020) (no argument that Rule 9(b) applied to Lanham Act claim).[4]

    **B.  The Alleged Misstatements Were Not Made in "Commercial Advertising"**

        *i.  The Alleged Misstatements Do Not Concern Products or Services*

The Lanham Act is not a vehicle for grievances about a competitor's statements regarding organizational structure or news coverage; it polices product and service claims. Because TP-Link only attempts to argue that <u>one</u> of the eight Netgear Statements (Statement 7) could plausibly concern TP-Link's "products," Opp. 6–7, there is no dispute that Statements

---

[2] Granting leave to amend would be futile, as TP-Link does not—and cannot—provide any additional facts or proposed amendments that would cure the pleading deficiencies identified by the Motion. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).

[3] *Noble Fiber Techs., LLC v. Argentum Med., LLC*, 2006 WL 1793219, at *5 (M.D. Pa. June 27, 2006) (Rule 9(b) applied to Lanham Act claim); *Costa v. Whirlpool Corp.*, 2025 WL 885245, at *3 (D. Del. Mar. 21, 2025) (Rule 9(b) applied to deceptive practices claims "sound[ing] in fraud") (Noreika, J.).

[4] Regardless, under any pleading standard, TP-Link's conclusory allegations are insufficient as a matter of law.

1–6 and 8 are not actionable. Mot. 11–12.[5] TP-Link's assertion that Statement 7, "the FCC voted in favor of restricting networking equipment that has connected components from the Chinese covered list," *id.* at 7, transmutes the earnings call into product-directed advertising and ignores that the statement does not concern TP-Link's products as a matter of law. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 2009 WL 3366967, at *1 (D. Del. Oct. 19, 2009) ("research, development and engineering activities that take place before a product reaches a commercial market" are not commercial activities). TP-Link's own characterization of Netgear's cases supports the conclusion that Statement 7 is not actionable. Opp. 7 (statements about "product development methods," "corporate authority," or "product creation" are not actionable).

        ii.   *TP-Link's Allegations Are Insufficient to Transform Statements Made During Routine Earnings Calls Into "Commercial Speech"*

Despite TP-Link's mischaracterization, Netgear does not assert that earnings call statements are *per se* nonactionable. Opp. 4–6. Instead, TP-Link must—but cannot—plead that the Netgear Statements made during earnings calls were intended to influence and were disseminated to <u>consumers</u>. TP-Link provides no support that the statements made to investors during earnings calls had more than an "incidental effect of promoting goods." Mot. 10–11.

The primary case on which TP-Link relies, Opp. 4–6, is readily distinguishable. *Cipla USA, Inc. v. Ipsen Biopharmaceuticals, Inc.*, 2024 WL 307699 (D. Del. Jan. 26, 2024). There, Ipsen alleged that Cipla's purportedly false statements during an earnings call—that Cipla's product was a generic version of Ipsen's—were disseminated by "multiple distributors" through <u>announcements to customers</u> and by <u>sending Cipla's product to customers</u> as a generic version of Ipsen's branded version. *Id.* at *5–6. *Cipla* is consistent with Netgear's cited cases,

---

[5] TP-Link cannot cobble together portions of different Alleged Misstatements to manufacture a Lanham Act claim. *Registered Agent*, 2022 WL 911253, at *2 ("Each challenged statement must satisfy all the Lanham Act's requirements," and plaintiff "may not mix and match statements, with some satisfying one Lanham Act element and some satisfying others."). Also, there are <u>no</u> allegations that the Third-Party Statements were made in a commercial context.

which uniformly conclude that earnings call statements are only actionable where there are specific factual allegations that the statements were disseminated to customers and intended to influence purchasing decisions. Mot. 10–11. TP-Link's conclusory allegations that the earnings calls were for "consumers" and that the transcripts were "publicly disseminated via the Internet," ¶¶ 30, 38, 62, without fact-based allegations that the statements *reached consumers*, are insufficient. *See, e.g.*, *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 378 F. Supp. 3d 823, 835–36 (N.D. Cal. 2019) (allegation that earnings call statements were made "on websites" is insufficient without "specific allegations" that the statements were "disseminated sufficiently to the relevant purchasing public").[6]

### C. The Alleged Misstatements Are Not False or Misleading

TP-Link attempts to twist the Netgear Statements[7] to "render" them false or misleading by selectively highlighting snippets of *The Wall Street Journal* and *Bloomberg* reporting on which Prober expressly relied. However, as demonstrated by Exhibit 1 filed herewith, the articles confirm that the Netgear Statements are not false or misleading. For the few statements TP-Link addresses in its brief,[8] its arguments fail. For Statement 2, *The Wall Street Journal* stated that TP-Link was "linked to Chinese cyberattacks" and reported that Microsoft "found that a Chinese hacking entity maintains a large network of compromised network devices

---

[6] TP-Link fails to distinguish Netgear's cited case concluding that a transcript's availability on the internet does not satisfy the dissemination requirement. *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1226 (D. Kan. 2015) ("[P]laintiffs have not cited any authority to suggest that public *availability* may equate with *dissemination* to the public.") (emphasis in original). TP-Link's only authority—which does not address investor earnings calls—is not to the contrary. *Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 334 (M.D. Pa. 2014) (photographs published on defendant's website of plaintiff's hardware "falsely impl[ied]" that defendant designed and installed the hardware, therefore constituting commercial advertising).
[7] TP-Link has not adequately pled that the Third-Party Statements are false or misleading because it does not even allege what specific statements were made. Mot. 15–16.
[8] *Deston Therapeutics LLC v. Trigen Laboratories Inc.*, 723 F. Supp. 2d 665, 673–74 (D. Del. 2010), cited at Opp. 9–10, is inapposite because TP-Link's claim does not rely on alternative pleading, but rather an impermissible conflation of various independent, true statements taken out of context. *See Registered Agent*, 2022 WL 911253, at *2.

mostly comprising thousands of TP-Link routers." D.I. 17-1 at 7–8.[9] For Statement 3, the referenced article noted that TP-Link has "links to China," has "substantial operations in mainland China," and that the "Commerce Department is investigating whether TP-Link's China ties pose an unacceptable risk to national security," Mot. 13; these facts are precisely what Netgear conveyed. Further, TP-Link misrepresents Prober's statement by asserting that he claimed—when he did not—that TP-Link's routers "cannot be trusted." Opp. 9; *see* D.I. 1-1 at 28. For Statement 4, *Bloomberg* reported that "[w]hile TP-Link's recent restructuring split the company into separate US- and China-headquartered businesses," its investigation found that TP-Link "has substantial operations in mainland China." D.I. 17-1 at 99. Despite TP-Link's attempt to invent a factual dispute by misconstruing selective quotations, the underlying sources establish that the Netgear Statements are not false or misleading.[10] *Registered Agent*, 2022 WL 911253, at *4 (granting motion to dismiss where, as "reinforced by context," a "reasonable customer" would not be misled by the statement).[11]

Separately, TP-Link fails to plead causation. No non-conclusory allegations show that any of the Alleged Misstatements caused consumers to withhold trade from TP-Link.[12]

---

[9] TP-Link's semantic quibble with the use of the word "typhoon," Opp. 8, ignores that Prober accurately conveyed the public reporting on concerns relating to TP-Link's cybersecurity and is insufficient to allege a tendency to deceive.

[10] TP-Link's citation to *Mimedx* is unavailing. *See* Opp. 9. *Mimedx* supports Netgear's argument that courts may dismiss claims where the challenged statement, "[u]nderstood in context," correctly characterizes the underlying source. *Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*, 2017 WL 3129799, at *10–11 (S.D.N.Y. July 21, 2017) (statement, when "[u]nderstood in context," is "expressly based on the Study's data and conclusion").

[11] *Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 667 (D. Del. 2008) (plaintiff "failed to allege facts sufficient to make plausible the contention that the relevant public was misled").

[12] TP-Link's own cases demonstrate the necessity of facts showing causation. *N. Atl. Imports, LLC v. Loco-Crazy Good Cookers, Inc.*, 2024 WL 245955, at *3 (D. Del. Jan. 23, 2024) (alleging "the *identity of the stores* in which those products are sold"); *NY Mach. Inc. v. Korean Cleaners Monthly*, 2018 WL 2455926, at *3 (D.N.J. May 31, 2018) (alleging that "numerous existing and prospective customers . . . cancelled orders" for plaintiff's products). TP-Link's

### D. The Third-Party Statements Are Insufficient to State a Claim

When confronted with case law holding that TP-Link must identify specific, actionable advertising statements, Mot. 16, TP-Link attempts to create the false impression that it directly quoted the Third-Party Statements when the Complaint contains only TP-Link's characterizations. *Compare* Opp. 11–12 *with* ¶ 27. This sleight of hand does not change the fact that the Complaint does not contain any specific allegations regarding the content, context, timing, or audience of the Third-Party Statements. Moreover, there are no allegations to support TP-Link's claim that these statements had a "commercial motivation" which—to the extent that Netgear understands them—were made on national security matters. *GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 504, 507 (E.D. Pa. 2018) (reviews offering an "analysis of" plaintiffs' product that neither "promote any competing product" nor "explicitly propose a commercial transaction" are not commercial speech).[13]

TP-Link does not rebut Netgear's argument that the Complaint contains only conclusory allegations that the Third-Party Statements were made on behalf of Netgear. Mot. 16. TP-Link's reliance on *Interlink Prods. Int'l, Inc. v. F & W Trading LLC*, 2016 WL 1260713 (D.N.J. Mar. 31, 2016) is misplaced. There, the defendant allegedly sent "excessive quantities of free samples of products to *professional reviewers* so that the Amazon reviews for those

---

conclusory allegations that the Alleged Misstatements "caused lost sales," ¶ 47, are insufficient as a matter of law. *See Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 2017 WL 3021066, at *4 (D. Del. July 14, 2017) (allegations of "lost sales, loss of business opportunities, and loss of goodwill" due to allegedly misleading study published on website were insufficient where there were "simply no facts pled that plausibly allege a link between" them).

[13] TP-Link's assertions that the Third-Party Statements did not concern a "preexisting controversy" or involve "participati[on] in independent media coverage of a matter of public concern" are not borne out. Opp. 11. TP-Link cannot dispute that (1) independent media coverage and governmental scrutiny of TP-Link's Chinese ties and national security concerns existed (D.I. 17-1); or (2) TP-Link's own characterizations of the Third-Party Statements establish that any such comments were made concerning important matters of public concern. *See* Mot. 14–15. Similarly, TP-Link pleads no facts to support its claim that Netgear's lobbying activity falls within *Noerr-Pennington*'s "sham petitioning" exception. Opp. 12–13.

products [would be] flooded with professional reviews." *Id.* at *8. Here, in contrast, TP-Link baldly alleges that Netgear "fed false and misleading information to third parties" and "retained prominent industry personalities and influential commentators" who purportedly made negative statements about TP-Link on, *e.g.*, social media and podcasts, as part of a clandestine effort to help Netgear sell routers. ¶¶ 26–27. Such allegations are insufficient.[14] *Crestron Elecs., Inc. v. Cyber Sound & Sec. Inc.*, 2012 WL 426282, at *11 n.3, *13 (D.N.J. Feb. 9, 2012) (dismissing claim based on "vague and imprecise" allegations lacking "specificity regarding the speaker, recipient, and content of the[] statements" which "offer[ed] no explanation as to why" statements made "with and through" third parties "should be attributed to" defendant); *GOLO*, 310 F. Supp. 3d at 505–07 & n.7 ("generalized" and "conclusory" allegations that third-party product reviews were "in reality stealth operations intended to disparage a competitor's product while posing as a neutral third party" are insufficient).

For all these reasons, Count I should be dismissed with prejudice.

## II.     TP-LINK FAILS TO STATE A CLAIM FOR DEFAMATION

### A.     California Law Applies to TP-Link's Defamation Claim

TP-Link mischaracterizes the scope of the Agreement's choice of law provision, which states that "*[t]his Agreement* will be interpreted in accordance with and governed by federal law, where applicable, and the laws of the state of Delaware." D.I. 19 at 15. The provision in *Cytotheryx* was "paradigmatically broad": "all claims and causes of action based upon, arising out of <u>or in connection herewith</u> shall be governed by, and construed in accordance with, [Delaware law]." *Cytotheryx, Inc. v. Castle Creek Biosciences, Inc.*, 2025 WL 3142373, at *2, *4 (Del. Ch. Nov. 10, 2025); Opp. 15. TP-Link cannot use its breach of contract claim to

---

[14] TP-Link mischaracterizes *Marfione v. KAI U.S.A., Ltd.*, 2018 WL 1519042 (W.D. Pa. Mar. 28, 2018). That the third party there initially "approached the defendant about the article," Opp. 12, is irrelevant to whether the statements were made on the defendant's behalf, particularly where, as here, there are no allegations of affiliation with the third parties. *Marfione*, 2018 WL 1519042, at *7.

7

expand the choice-of-law clause beyond its plain terms.[15] Regardless, the result is the same under Delaware law because TP-Link must—but cannot—plead falsity[16] and actual malice.

### B. TP-Link is a Limited-Purpose Public Figure and Has Failed to Plausibly Allege Actual Malice

TP-Link's claim that it is not a public figure rests on the mistaken view that a public figure must initiate a public controversy. *Id.* at 16. Yet its own cited cases establish that a limited purpose public figure is one who "*is drawn into* a particular public controversy," even if it did not initiate that controversy.[17] *US Dominion, Inc. v. Fox News Network, LLC*, 2023 WL 568869, at *1 (Del. Super. Ct. Jan. 27, 2023) (company "drawn into" controversy over 2020 presidential election considered public figure); *accord Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577 (2005).[18] *Greschner v. Becker*, 2016 WL 3969941 (D. Ariz. July 25, 2016), is on point. Mot. 18–19. There, the plaintiff's security software business was the subject of media and governmental scrutiny—which the plaintiff undoubtedly did not initiate—regarding the national security implications of the company's technology concerning, *inter alia*, its Chinese ties, and therefore the plaintiff was a limited purpose public figure regarding the "use of [the company's] technology in connection with government security" by issuing press releases and providing quotes for articles. *Greschner*, 2016 WL 3969941, at *3–4.

Because TP-Link is a limited purpose public figure, it must—but cannot—plead actual

---

[15] TP-Link cannot allege special damages under California law with "requisite particularity." *Martin v. Wells Fargo Bank*, 2018 WL 6333688, at *2 (C.D. Cal. Jan. 18, 2018).

[16] The Netgear Statements are true statements of fact, nonactionable statements of opinion, or nonactionable rhetorical hyperbole. *See supra* at 4–5; Mot. 21–22.

[17] The public controversy regarding TP-Link's ties to China exists independently of Netgear's involvement, *supra* note 13, and TP-Link has taken on a role in the debate. D.I. 17-1 at Ex. E.

[18] TP-Link's other cited cases are inapposite. Opp. 16–17; *Computer Aid, Inc. v. Hewlett-Packard Co.*, 56 F. Supp. 2d 526, 536–37 (E.D. Pa. 1999) (counterclaimants not public figures where acquisition of "private, small company" did not raise "concerns of crucial importance to the general public"); *Time, Inc. v. Firestone*, 424 U.S. 448, 454–55 (1976) ("[d]issolution of a marriage through judicial proceedings" to wealthy person did not make ex-wife public figure).

malice.[19] TP-Link has not pled facts supporting a reasonable inference that it can establish by clear and convincing evidence that Netgear knew the Alleged Misstatements were false or acted with reckless disregard for their falsity. Reliance on reputable media and official reports or proceedings negates an inference of actual malice,[20] and conclusory pleadings about "serious doubts" as to the truth are insufficient.[21] None of TP-Link's cited cases are to the contrary. *Smartmatic USA*, 2023 WL 1525024, at *16 (actual malice sufficiently pled where defendant republished "improbable claims that either *had no support* or were from *unreliable sources*"); *Schiavone Const. Co. v. Time, Inc.*, 847 F.2d 1069, 1090 (3d Cir. 1988) ("erroneous interpretation of the facts" does not constitute actual malice). In any event, TP-Link does not sufficiently allege that the Alleged Misstatements are false statements of fact, *supra* at 4–5, and its cited authority is inapposite. *Masterworks, LLC v. Doe*, 2025 WL 3515947, at *6 (Del. Super. Ct. Dec. 8, 2025) ("[a]ccusations of criminal-fraud-like schemes and dishonest practices are classic defamation when false").

      **C.**    **The Third-Party Statements Are Not Actionable**

For the reasons above, *supra* at 6–7, the Third-Party Statements fail to state a defamation claim. TP-Link's reliance on *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 219 (E.D.N.Y. 2010), a New York case, is contrary to the applicable California cases cited in Netgear's brief. Mot. 22. TP-Link does not refute that it lacks specific, non-conclusory allegations that Netgear contributed to the vaguely defined Third-Party Statements. Further,

---

[19] Courts routinely decide a plaintiff's public figure status as a matter of law. *See, e.g.*, *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1164–65 (2004); Opp. 17 (citing *Smartmatic USA Corp. v. Newsmax Media, Inc.*, 2023 WL 1525024, at *13–14 (Del. Super. Ct. Feb. 3, 2023) (concluding that a plaintiff was a limited purpose public figure upon Rule 12(c) motion)).

[20] Like its Lanham Act argument, TP-Link relies on selective quotations to manufacture an inference of actual malice, overlooking that the statements accurately summarize the sources.

[21] As set forth in the Motion at 12–14 and 21–22, the Netgear Statements do not "misstate[]" or "create a substantially false impression," Opp. 18, of the reports on which those statements relied. Nor can the allegation that TP-Link purportedly "told" Netgear that it considered itself to be a U.S. company, *id.* at 19, establish actual malice. Mot. 20.

TP-Link implicitly acknowledges it lacks specific, non-conclusory allegations of a conspiracy for third parties to act as Netgear's mouthpieces. The lone, non-binding case TP-Link cites does not support basing a claim <u>*solely*</u> on allegations made on "information and belief."

### III.   TP-LINK FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

The sole clause TP-Link invokes preserves the right to make "factually true statements," which bars any theory predicated on Netgear's accurate references to published investigations, hearings, and agency actions. *Supra* at 4–5; Mot. 12–14. Further, TP-Link's speculative allegations on "information and belief" that Netgear "encouraged" or "facilitated," ¶ 26, the Third-Party Statements are insufficient under Delaware law and must be dismissed. *Neurvana Med., LLC v. Balt USA, LLC*, 2020 WL 949917, at *23 (Del. Ch. Feb. 27, 2020).

### IV.   TP-LINK FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

A plaintiff can only plead both unjust enrichment and breach of contract when the "contracts at issue <u>*do not*</u> comprehensively govern the parties' relationship." *Rei Holdings, LLC v. LienClear-0001*, 2020 WL 6544635, at *10 (D. Del. Nov. 6, 2020). Accordingly, TP-Link's claim for unjust enrichment, even if pled in the alternative, fails.

### V.   COUNTS III AND IV SHOULD BE STRICKEN

California's anti-SLAPP law applies in the Third Circuit. *Gilead Scis., Inc. v. Abbott Lab'ys, Inc.*, 2015 WL 1191129, at *6 (D. Del. Mar. 13, 2015).[22] TP-Link does not dispute that Netgear established *prima facie* that "the lawsuit arises from an act in furtherance of its First Amendment right to free speech." *Peterson v. Sutter Med. Found.*, 615 F. Supp. 3d 1097, 1107 (N.D. Cal. 2022). The burden then shifts to TP-Link to show that Counts III and IV survive Rule 12(b)(6), which it cannot do. *See* § 425.16(b)(1); *Peterson*, 615 F. Supp. 3d at 1115.

### CONCLUSION

For the foregoing reasons, Netgear respectfully requests that the Court grant its motion.

---

[22] Alternatively, Netgear is entitled to fees and costs under 10 *Del. C.* § 6001. Mot. 25 n.14.

| | |
|---|---|
| OF COUNSEL:<br><br>Robert K. Hur<br>KING & SPALDING LLP<br>1700 Pennsylvania Avenue, NW<br>Suite 900<br>Washington, D.C. 20006<br>(202) 737-0500<br>rhur@kslaw.com<br><br>Jennifer S. Recine<br>Joshua E. Roberts<br>KING & SPALDING LLP<br>1290 Avenue of the Americas<br>New York, New York 10104<br>(212) 556-2100<br>jrecine@kslaw.com<br>jroberts@kslaw.com<br><br>Dated: January 5, 2026 | /s/ Katharine L. Mowery<br>Katharine Lester Mowery (# 5629)<br>RICHARDS, LAYTON & FINGER, P.A.<br>920 North King Street<br>Wilmington, Delaware 19801<br>(302) 651-7700<br>mowery@rlf.com<br><br>*Attorneys for Defendant* |

11